# Exhibit E



December 1, 2023

Peter Tomlinson
Partner
(212) 336-2977
pwtomlinson@pbwt.com

**By FedEx & Email Attachment**

Ms. Amy Maxner
CRE Loan Administration
Team Leader, Flagstar Bank
68 South Service Road, Suite 250
Melville, NY 11747
amaxner@signatureny.com

Ms. Alexis Kremen
General Counsel
The Related Companies
30 Hudson Yards
New York, NY 10001-2170
akremen@related.com

Mr. Salvatore D'Avola
Executive Director
Neighborhood Restore HDFC
150 Broadway, Suite 2101
New York, New York 10038
sdavola@neighborhoodrestore.org

Ms. Andrea Gladstone
General Counsel
Community Preservation Corporation
220 East 42nd Street, 16th Floor
New York, NY 10017
agladstone@communityp.com

Signature Bank, CRE Lending Officer
68 South Service Road
Melville, NY 11747

Re:   **Enforcement of Black Spruce Management ROFR Rights**

Dear Sirs & Madams:

      We represent Black Spruce Management ("Black Spruce") in connection with the threatened sale of dozens of Signature Bank loans in blatant violation of our client's unambiguous contractual rights. As previously advised, the contracts for each loan require that our client receive a Right of First Refusal Notice ("ROFR Notice") and opportunity to meet the terms of any contemplated sale of a subject loan. We understand that Signature Bank[1] nevertheless intends to breach these contracts by selling the loans at issue to Related Companies ("Related"), Community Preservation Corporation ("CPC"), and Neighborhood Restore, without affording our client with the requisite ROFR Notice. This not only infringes our client's legal rights, but also undercuts the purported altruistic objectives of the sale by threatening significant harm to a company that has long promoted affordable housing in New York City.

      **We include the prospective purchasers on this communication given the legal liability that they too will face if such a sale proceeds in violation of our client's rights.**

---

[1] Inclusive of the FDIC as Receiver to Signature Bank, N.A., Signature Bridge Bank, N.A., and any other direct or indirect successors of interest, assignees, or agents thereof.

December 1, 2023
Page 2

       We attach for reference our client's prior letter dated November 27, 2023 (Exhibit 1), with the list of subject loans appended as Exhibit A thereto, as well as the FDIC's response dated November 30, 2023 (Exhibit 2).

       As detailed in the November 27 letter, our client secured these contractual ROFR rights as an integral part of transactions whereby it acquired properties that were in default of Signature Bank loans during the Covid-19 pandemic, and undertook to rehabilitate the underlying properties and qualify them for affordable housing. Our client upheld its end of the bargain, and all properties have since returned to full performance. Moreover, through our client's significant efforts, most of these properties have already been converted to affordable housing and others are well along in the conversion process. Indeed, our client has an established record of expanding affordable housing in New York City. Since 2019, Black Spruce and its affiliates have acquired, managed, and converted to affordable housing ***over 3,500 units*** in New York City. Our client's efforts were particularly critical during the pandemic as it worked closely with city officials to navigate the downturn and advance affordability for the benefit of numerous tenants, including for properties at issue here.

      When our client agreed to undertake these significant efforts to benefit Signature Bank, including by assuming loan obligations at face value despite existing defaults, a critical and material term of these transactions was that the guarantor(s) of the loan would have a Right of First Refusal on any subsequent sale of the loans. This term is memorialized as follows in the loan documents for each of the subject properties:

> (c) Notwithstanding anything contained herein or in the other Loan Documents, in the event that the Bank elects to sell, assign, transfer or negotiate this Note and the Loan Documents to a bona fide third party unrelated and unaffiliated with the Bank (hereinafter, a "Sale") by its acceptance of this Note the Bank agrees to provide the Guarantors (or their affiliated entity) a right of first option by providing the Guarantors with notice of the intended Sale which states the material terms and conditions upon which the Bank has agreed to accept for the Sale (the "ROFR Notice"). The Guarantors shall notify the Bank within three (3) Business Days of receipt of said ROFR Notice, that they (or their affiliated entity) will meet the terms of the Sale and purchase the Note and Loan Documents on the same terms contained therein, provided that the Guarantors shall have at least thirty (30) days to close upon the Sale. If the Bank has not received notice within said three (3) Business Days that the Guarantors (or their affiliated entity) will enter into the Sale, the Bank will have no further obligation to enter into any Sale with the Guarantors (or their affiliated entity). In addition, if the Guarantors (or their affiliated entity) have notified the Bank within said three (3) Business Day period that they intend to enter into said Sale and such Sale is not consummated in accordance with said thirty (30) days, the Bank will have no further obligation to enter into the Sale with the Guarantors (or their affiliate). In the event that the Guarantors decline to enter into the proposed Sale and the Bank attempts to proceed with the Sale to a third party but prior to closing the Sale the proposed

December 1, 2023
Page 3

purchase price is reduced by greater than five percent (5%) from that price proposed in said ROFR Notice, then, in such event, the Bank will be required to provide the Guarantors with a new ROFR Notice and opportunity to exercise the Guarantors' rights hereunder. The term "Sale" shall not include any transfer or assignment of this Note due to the sale of the Bank or merger of the Bank with another financial institution.

This material term ensured that Signature Bank could not later undercut our client's significant efforts and investments by selling any or all of the loans at a discount, without first providing our client with notice of the sale and the opportunity to meet its terms.

This term remains binding on Signature Bank, as well as its successors and assignees. The FDIC's receivership of Signature Bank likewise does not extinguish our client's pre-receivership contractual rights. While the FDIC in its capacity as receiver may repudiate certain contracts of banks placed into receivership—within a reasonable time, and for appropriate compensation—it may not simply disregard individual provisions of pre-receivership contracts that otherwise remain in effect. *See, e.g.*, *Bank of New York v. FDIC*, 453 F. Supp.2d 82, 92 (D.D.C. 2006) (holding that FDIC power to "disaffirm or repudiate a contract" as a whole does not entitle it to ignore individual contract provisions); *FDIC v. Ernst & Young*, 374 F.3d 579, 584 (7th Cir. 2004) (holding that FDIC as receiver is not empowered to line-item veto individual contract terms).

To be sure, the FDIC has not to our knowledge repudiated the entire mortgage notes on the subject properties and thereby relieved our client of any further payment obligations—though if so, please do let us know. Otherwise, Signature Bank (and the FDIC as receiver) cannot continue to enforce the notes and seek to benefit through a sale of the loans without abiding by the terms of the underlying loan documents.

While the FDIC's November 30 response suggests that it somehow has the authority to simply disregard our client's ROFR, multiple cases expressly hold otherwise.

In *Bank of Manhattan, N.A. v. F.D.I.C.*, 778 F.3d 1133 (9th Cir. 2015), the Ninth Circuit held the FDIC, as receiver to First Heritage Bank, committed a breach of contract when it sold a partial participation interest in a commercial loan to a third party without affording the other partial owner of the loan the right to purchase the remaining interest—as required by a pre-receivership contract that remained in effect and had not been repudiated by the FDIC. The court expressly rejected a claim that the FDIC's limited authority to repudiate entire contracts enabled it to ignore individual provisions within contracts it otherwise sought to enforce.

Similarly, in *Waterview Management Co. v. F.D.I.C.*, 105 F.3d 696, 699 (D.C. Cir. 1997), the D.C. Circuit held that the FDIC as receiver breached a contract when it sought to sell a parcel of land without honoring an exclusive purchase option held by the counterparty to the pre-receivership contract through which the bank had acquired the property. This appellate

December 1, 2023
Page 4

ruling expressly rejected earlier lower court rulings that had erroneously interpreted the FDIC's statutory authority as superseding such contractual provisions.

If Signature Bank nevertheless proceeds with the sale in disregard of our client's rights, we intend to pursue relief against not only the Signature Bank (and the FDIC, as receiver) for breach of contract, but also against each of the buyers for tortious interference. While we understand that the FDIC has already advised the prospective purchasers of our client's contractual claims, let this letter remove any doubt as to our client's position on the matter. Since each of the prospective purchasers is now fully aware of our client's valid and ongoing contractual rights, proceeding to close the sale of any of the subject loans without affording our client a ROFR Notice as required by the underlying contracts will constitute tortious interference with our client's contractual rights.

The First Department reached this very result in *330 Acquisition Co., LLC v. Regency Sav. Bank, F.S.B.*, 19 A.D.3d 174 (1st Dept. 2005). There, 330 Acquisition acquired a partial interest in a property that included a right of first refusal to purchase the remaining interest—which was held by a bank that thereafter entered receivership. The FDIC, as receiver, put the interest up for sale. Despite being informed of 330 Acquisition's ROFR, the buyer instructed the FDIC to proceed with the sale. Consistent with the above federal court rulings, the First Department held that the right of first refusal remained in effect such that the FDIC as receiver had breached the contract through the sale—***and moreover***, that the **buyer was liable for tortious interference** for its role in knowingly procuring the breach.

Finally, we note the blatant hypocrisy inherent in any sale of these loans to third parties in violation of our client's contractual rights. According to various reports, the FDIC seeks to justify its selection of the Related bid, even over other **higher bids**, based on the participation of CPC and Neighborhood Restore and commitments to promote and maintain affordable housing in the underlying properties. These lofty commitments even garnered the support of Mayor Adams, with a statement by City Hall that "providing safe, high-quality, affordable housing" is the administration's "north star as the FDIC determines the future of Signature Bank's rent-regulated housing portfolio." Contrary to this public posturing, the FDIC now refuses to honor contractual commitments made to our client in exchange for its actual efforts to convert these properties to affordable housing. Rather than offer to sell the subject loans to our client *at the same price* as contractually required, the FDIC—with the backing of Mayor Adams—apparently prefers to trample our client's rights in order sell the loans at a steep discount to a multi-billion-dollar real estate private equity fund. Such hypocrisy will be laid bare if we are forced to litigate these matters.

In short, Signature Bank and the FDIC as receiver must honor our client's contractual rights and provide the requisite ROFR Notice and opportunity to the meet the terms of any contemplated sale of the subject loans before those loans are sold to another party. Otherwise, we intend to pursue all available relief from all involved parties, including any buyer who closes on the purchase of our client's loans in violation of the ROFR.

December 1, 2023
Page 5


        Please advise as to your position as soon as possible, and in no event later than **close of business on Wednesday, December 6**.

        Regards,

        Peter W. Tomlinson


cc:    Joshua Gotlib, Black Spruce Management
       Muhammad Faridi, Esq.
       Jason Vitullo, Esq.
       John Howley (Newmark) (john.howley@nmrk.com)
       Joshua A. King (Newmark) (josh.king@nmrk.com)
       Daniel M. Newell (danienewell@fdic.gov)