# Exhibit F


Reed Smith LLP<br>
599 Lexington Avenue<br>
New York, NY 10022-7650<br>
+1 212 521 5400<br>
Fax +1 212 521 5450<br>
reedsmith.com

**Casey D. Laffey, Esq.**
Direct Phone:  +1 212 549 0389
Email:  claffey@reedsmith.com

December 13, 2023

<u>**VIA ELECTRONIC MAIL**</u>

Peter W. Tomlinson, Esq. (pwtomlinson@pbwt.com)
Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas
New York, New York 10036

   Re: <u>Black Spruce Management December 1, 2023 Letter</u>

Dear Mr. Tomlinson:

  This firm represents the Federal Deposit Insurance Corporation as receiver for Signature Bridge Bank, N.A. ("FDIC-R") in the above-referenced matter. I write on behalf of FDIC-R in response to Black Spruce Management's ("Black Spruce") December 1, 2023 demand letter to the FDIC-R and other entities[1] ("Letter") with respect to what Black Spruce characterizes as a "threatened sale of dozens of Signature Bank loans" in violation of Black Spruce's contractual rights. Because none of Black Spruce's loans are being sold and they will in fact be contributed to an entity related to and affiliated with the FDIC-R, your demands are groundless.

  In the Letter, Black Spruce asserts that as guarantor on 51 loans, it has a right of first refusal ("ROFR") if "the Bank elects to sell, assign, transfer or negotiate this Note and the Loan Documents to a bona fide third party unrelated and unaffiliated with the Bank (hereinafter, a 'Sale') …." Black Spruce claims that the FDIC-R "must honor" the ROFR by providing it with a ROFR Notice and the "opportunity to meet the terms of any contemplated sale of the subject loans before those loans are sold to another party."

  In September 2023, the FDIC-R commenced marketing efforts related to a $33 billion Commercial Real Estate loan portfolio retained by the Signature Bridge Bank receivership. As Black Spruce should be aware, because it had access to the "bid room" containing marketing materials, bid instructions, and an investor guide for the contemplated transaction, Black Spruce's loans were part of the "C" pool, representing approximately 660 rent-controlled and rent-stabilized multifamily properties.

---

[1] The Letter was addressed to Flagstar Bank's CRE Loan Administrator, The Related Companies' General Counsel, Neighborhood Restore HDFC's Executive Director, Community Preservation Corporation's General Counsel, and Signature Bank's CRE Lending Officer.

As plainly set forth in the bid room materials that Black Spruce had access to, the C pool loans are NOT being sold. Instead, the FDIC-R will contribute the C pool loans to the SIG RCRS C MF Venture LLC ("Venture"), with the FDIC-R initially holding a 100% interest in the Venture. The marketing effort consisted of selling a five percent equity stake in the Venture (not the loans), with the purchaser of that equity stake also assuming the obligation to service, manage, and liquidate the Venture's assets subject to the terms of the transaction and strict oversight by the FDIC-R.[2]

Because the contemplated transaction is not a loan sale, the ROFR is not triggered. Even if it were a loan sale—and it is not—the Venture is not a "bona-fide third party unrelated and unaffiliated" with the FDIC-R. The FDIC-R is currently the 100% owner of the Venture and will be retaining a 95% equity and ownership interest in the Venture after the contemplated transaction is completed. Therefore, the Venture is related to and affiliated with the FDIC-R. For all of these reasons, the transaction does not implicate the ROFR.

To the extent you believe you have a claim against the FDIC-R with respect to the FDIC-R's contribution of any Black Spruce-guaranteed loans to the Venture, you must file an administrative claim. The FDIC-R's contractor previously supplied you with the link to file a claim. The FDIC-R will send you a Notice of Discovered Creditor that provides further detail regarding the FDIC-R's mandatory and exclusive administrative claims process.

Any effort by Black Spruce to interfere with the contemplated transaction or FDIC-R's agents will constitute a tortious interference with contractual rights and an unlawful restraint on the FDIC-R's statutory powers. This letter is sent without prejudice to, or waiver of, the FDIC-R's rights and remedies, all of which are expressly reserved.

We remain available to discuss any questions you may have but we hope that this letter clarifies the transaction and the inapplicability of the ROFR.

Very truly yours,

*Casey Laffey*
Casey D. Laffey

cc:   [see next page]

---

[2] The results of those marketing efforts have not yet been publicly announced.

Amy Maxner, CRE Loan Administration
Team Leader, Flagstar Bank
amaxner@signatureny.com

Alexis Kremen, General Counsel
The Related Companies
akremen@related.com

Salvatore D'Avola, Executive Director
Neighborhood Restore HDFC
sdavola@neighborhoodrestore.org

Andrea Gladstone, General Counsel
Community Preservation Corporation
agladstone@communityp.com

John Howley, Newmark
john.howley@nmrk.com

Joshua A. King, Newmark
josh.king@nmrk.com

Daniel M. Newell, FDIC's RAS Contractor
danienewell@FDIC.gov