# Exhibit G

**Execution Version**

# ASSET TRANSFER AGREEMENT

## BY AND BETWEEN

## THE FEDERAL DEPOSIT INSURANCE CORPORATION IN ITS CAPACITY AS RECEIVER

## AND

### SIG RCRS C MF 2023 VENTURE LLC

## Dated as of December 15, 2023

TABLE OF CONTENTS

Article I        Definitions and Construction ................................................................................1

       Section 1.1.    Definitions.................................................................................................1
       Section 1.2.    Construction..............................................................................................1

Article II       Contribution of Assets .........................................................................................2

       Section 2.1.    Assets Acquired by the Company................................................................2
       Section 2.2.    Liabilities Assumed by the Company.........................................................2
       Section 2.3.    Allocation of Payments; Interim Servicing Expenses and Pre-
                      Approved Charges; Offsets Against Accounts at the Failed Bank .............3
       Section 2.4.    Adjustments ..............................................................................................4
       Section 2.5.    Rebates and Refunds .................................................................................5
       Section 2.6.    Interest Conveyed .....................................................................................5
       Section 2.7.    Retained Claims ........................................................................................6
       Section 2.8.    Transfer Taxes ..........................................................................................6
       Section 2.9.    Assets Subject to Existing Agreements .....................................................6
       Section 2.10.   [Intentionally Omitted] .............................................................................6
       Section 2.11.   Exempt Taxes ...........................................................................................7

Article III      Transfer of Assets, Collateral Documents and Interim Servicing ..........................8

       Section 3.1.    Delivery of Documents ..............................................................................8
       Section 3.2.    Recordation of Documents .......................................................................13
       Section 3.3.    Transfer of Servicing ...............................................................................14
       Section 3.4.    Grant of Power of Attorney by Company...................................................17

Article IV       Covenants, Duties and Obligations of the Company ............................................17

       Section 4.1.    Servicing of Assets ..................................................................................17
       Section 4.2.    Collection Agency/Contingency Fee Agreements.....................................17
       Section 4.3.    Insured or Guaranteed Assets ..................................................................17
       Section 4.4.    Reporting to or for the Applicable Taxing Authorities..............................18
       Section 4.5.    Assets in Litigation ..................................................................................18
       Section 4.6.    Assets in Bankruptcy ...............................................................................23
       Section 4.7.    Asset-Related Insurance...........................................................................23
       Section 4.8.    Loans with Escrow Accounts....................................................................24
       Section 4.9.    Transferor as Lead Lender in Loan Participations.....................................24
       Section 4.10.   Contracts for Deed ...................................................................................24
       Section 4.11.   Acquired Property ....................................................................................24
       Section 4.12.   Leases ......................................................................................................25
       Section 4.13.   Notice to Borrowers .................................................................................25
       Section 4.14.   Notice of Claims ......................................................................................25
       Section 4.15.   Use of the FDIC's Name and FDIC Legal Powers....................................25
       Section 4.16.   Prior Servicer Information .......................................................................25

Section 4.17. Release of Transferor, FDIC and Failed Bank ...........................................25

Article V       Assets Conveyed "As Is" and Without Recourse ...................................26

Section 5.1.   Assets Conveyed "As Is" ...............................................................26
Section 5.2.   No Warranties or Representations with Respect to Escrow Accounts ...........26
Section 5.3.   No Warranties or Representations as to Amounts of Unfunded Principal ........26
Section 5.4.   Disclaimer Regarding Calculation or Adjustment of Interest on any Asset ......27
Section 5.5.   No Warranties or Representations With Regard to Information ...............27
Section 5.6.   Intervening or Missing Assignments ...................................................27
Section 5.7.   No Warranties or Representations as to Documents ...............................27
Section 5.8.   No Warranties or Representations as to Real Estate Taxes or Other Potential Liens Affecting Collateral ....27
Section 5.9.   No Warranties or Representations as to Assets or Liabilities of Ownership Entities ...........28

Article VI      Repurchase by Transferor ...........................................................28

Section 6.1.   Repurchases at Company's Option ...............................................28
Section 6.2.   Notice to Transferor ...........................................................30
Section 6.3.   Repurchases at Transferor's Option ...........................................30
Section 6.4.   Re-delivery of Notes, Files and Documents ...................................31
Section 6.5.   Waiver of Company's Repurchase Option ...................................32

Article VII     Miscellaneous Provisions ...........................................................32

Section 7.1.   Common Terms ...............................................................32
Section 7.2.   Waivers; Amendment and Assignment ...................................33
Section 7.3.   Entire Agreement ...........................................................33
Section 7.4.   Right to Specific Performance ...........................................33
Section 7.5.   Indemnity ...................................................................34

ii

Attachments and Schedules

| | | |
|---|---|---|
| Attachment A | — | Asset Schedule and Loan Performance at Cut-Off Date Report |
| Attachment B | — | Private Owner Interest Asset Value Schedule |
| Attachment C | — | Ownership Entity and Receiver Acquired Property Schedule |
| Attachment D | — | Affidavit and Assignment of Claim |
| Attachment E | — | Allonge |
| Attachment F | — | Assignment and Lost Instrument Affidavit |
| Attachment G-1 | — | Assignment of Real Estate Mortgage |
| Attachment G-2 | — | Assignment of Real Estate Deed of Trust |
| Attachment G-3 | — | Omnibus Loan Assignment |
| Attachment H | — | Assignment of Assignment of Leases and Rents and Other Loan Documents |
| Attachment I | — | Assignment and Acceptance of Limited Liability Company Interest |
| Attachment J-1 | — | Receiver's Deed |
| Attachment J-2 | — | Omnibus Property Assignment |
| Attachment J-3 | — | Receiver's Quitclaim Deed |
| Attachment K | — | Limited Power of Attorney |
| Attachment L | — | Form of Litigation Substitution Report |

# ASSET TRANSFER AGREEMENT

THIS ASSET TRANSFER AGREEMENT (as the same may be amended or supplemented, this "**Agreement**") is made and entered into as of December 15, 2023 by and between the Federal Deposit Insurance Corporation, as Receiver (the "**Transferor**"), and SIG RCRS C MF 2023 Venture LLC, a Delaware limited liability company (the "**Company**").

## RECITALS

WHEREAS, the Transferor owns the Assets described on the Asset Schedule attached to this Agreement as <u>Attachment A</u> (the "**Asset Schedule**");

WHEREAS, the Transferor has determined to liquidate the Assets;

WHEREAS, the Transferor has formed the Company and holds the sole membership interest in the Company;

WHEREAS, the Transferor desires to transfer the Assets to the Company as a capital contribution, in the manner and on the terms and conditions more fully set forth in this Agreement;

WHEREAS, immediately following the execution and delivery hereof, pursuant to the Private Owner Interest Sale Agreement, the Transferor will sell and transfer the Private Owner Interest (as defined therein) to the Private Owner for the Private Owner Interest Sale Price; and

WHEREAS, the Transferor and the Company desire to memorialize their agreement relating to the contribution of the Assets to the Company and certain other matters as set forth in this Agreement;

NOW, THEREFORE, in consideration of the foregoing and the mutual promises and agreements hereinafter contained, and for other good and valuable consideration the receipt and sufficiency of which are hereby acknowledged, the Transferor and the Company hereby agree as follows:

## ARTICLE I

### Definitions and Construction

Section 1.1.    <u>Definitions</u>.  For purposes of this Agreement, terms used herein (including in the preamble and recitals hereto), to the extent the same are defined in, or by reference in, that certain Agreement of Common Terms and Definitions dated as of the date hereof, by and among the parties hereto and certain others (as the same may be amended from time to time) (the "**Agreement of Common Terms and Definitions**"), and are not otherwise defined herein, have the respective meanings and definitions given, or referred to, in such Agreement of Common Terms and Definitions.

Section 1.2.    <u>Construction</u>.  The Rules of Construction apply to this Agreement.

# ARTICLE II

## Contribution of Assets

Section 2.1.    <u>Assets Acquired by the Company</u>.  The Transferor hereby conveys to the Company, and the Company hereby acquires and accepts from the Transferor, in each case effective as of the Closing Date, without recourse, as a capital contribution, all right, title and interest of the Transferor in and to:

(a)    the Assets, including all future advances made with respect thereto, and all rights in the Collateral pursuant to the Collateral Documents;

(b)    all amounts payable to the Transferor pursuant to the Asset Documents, and all obligations owed to the Transferor in connection with the Assets and the Asset Documents, in each case after the Closing Date;

(c)    all claims, suits, causes of action or other rights of the Transferor, whether known or unknown, against a Borrower or any Obligor or any of their respective Affiliates, agents, representatives, contractors or advisors or any other Person arising in connection with or pursuant to the Assets or the Asset Documents or that are in any way based on or related to any of the foregoing, including contract claims, tort claims, malpractice claims, statutory claims and all other claims at law or in equity arising pursuant to or in connection with the Asset Documents or the transactions related thereto or contemplated thereby;

(d)    all cash, securities or other property received or applied after the Closing Date by or for the account of the Transferor related to the Assets, including all distributions received through redemption, consummation of a plan of reorganization, restructuring, liquidation or otherwise of a Borrower or Obligor pursuant to or with respect to the Assets, and any securities, interest, dividends or other property that may be distributed or collected with respect to any of the foregoing;

(e)    to the extent (but only to the extent) specified in the first sentence of <u>Section 4.7</u> below, rights of the Transferor under insurance policies with respect to the Assets; and

(f)    all distributions on, or proceeds or products of or with respect to, any of the foregoing, and the rights to receive such distributions, proceeds or products thereof;

<u>provided</u>, however, that such conveyance is subject to the express exclusions set forth in the last sentence of <u>Section 2.6</u>, in <u>Section 2.7</u> and in <u>Section 4.7</u>, and further excludes any contract or other instrument that is not a Transferred Contract, and any portion of the Transferor's limited liability company interest in the Company and right, title or interest under the Organizational Documents of the Company.  The Transferor and the Company agree that the conveyance and transfer contemplated by this <u>Section 2.1</u> and the other provisions of this Agreement is intended to be an absolute conveyance and transfer of ownership of the Assets by capital contribution.

Section 2.2.    <u>Liabilities Assumed by the Company</u>.  As of the Cut-Off Date, the Company (i) assumes the Obligations, and agrees to perform and pay the Obligations when due, and (ii) in

2

SIG RCRS C MF 2023 Venture LLC
Asset Transfer Agreement
Version 08-2022 (Standard)

addition to and without limitation of <u>clause (i)</u>, must indemnify and hold harmless the Transferor and the Prior Transferor from and against all costs and expenses (including attorneys' fees and litigation and similar costs, and other out-of-pocket expenses, actually incurred in investigating, defending, asserting or preparing the defense of any Action), judgments, awards, fines, amounts paid in settlement or penalties incurred by the Transferor and/or the Prior Transferor (at any time after the Cut-Off Date) arising out of, resulting from or otherwise in connection with any Assumed Closing Date Asset Litigation. Without limitation of the preceding sentence, the Company must make such payments to the Transferor or the Prior Transferor (as applicable) as necessary to give effect to the assumption of the Obligations by the Company as of the Cut-Off Date (as if this Agreement had been executed and delivered at, and the "Obligations" determined (for purposes of this sentence) as of, the Cut-Off Date (and the Closing Date and the Cut-Off Date were the same date)), including reimbursing the Transferor and/or the Prior Transferor (as applicable) for any payments made by the Transferor and/or the Prior Transferor between the Cut-Off Date and the Closing Date in respect of the Obligations (as so determined). If there arises any question as to whether a Liability arising or becoming due or payable pursuant to or in accordance with any Transferred Contract was, in accordance with the FDIC Legal Powers legally binding on and valid against the Receiver, the Transferor's determination in this regard will be conclusive and binding on the Company.

Section 2.3.    <u>Allocation of Payments; Interim Servicing Expenses and Pre-Approved Charges; Offsets Against Accounts at the Failed Bank</u>.

(a)    All payments and other amounts received on account of any of the Assets or Collateral on or before the Cut-Off Date must be retained by and must belong to the Transferor (subject to <u>Section 2.3(d)</u> below). However, notwithstanding that the Assets are conveyed to the Company only on the Closing Date, any and all Asset Proceeds received at any time after the Cut-Off Date must be allocated and distributed to and must belong to the Company.

(b)    The Transferor must be paid or reimbursed by the Company as soon as practicable after each Servicing Transfer Date for Interim Servicing Expenses and Pre-Approved Charges that an Existing Servicer pays after the Cut-Off Date through the Servicing Transfer Date out of its own funds (rather than withdrawing such funds from the Collection Account or the Working Capital Reserve Account or otherwise using Asset Proceeds to pay for the respective Interim Servicing Expenses or Pre-Approved Charges). Any such amounts for Interim Servicing Expenses or Pre-Approved Charges paid after the Cut-Off Date through the Servicing Transfer Date owed to but not reimbursed to the Transferor on the Servicing Transfer Date for the respective Asset will be reimbursed by the Company to the Transferor on demand.

(c)    Without limitation of, and subject to, the other provisions of this Agreement (including <u>Sections 2.3(b)</u>, and <u>3.3(e)</u>, and the last sentence of <u>Section 3.3(d)</u>), the Transferor will be responsible for reimbursing each third party Existing Servicer for any payments made by such third party Existing Servicer to fund Interim Servicing Expenses or Pre-Approved Charges with respect to an Asset, as well as for any advances of principal or interest or any other advances with respect to an Asset made by such third party Existing Servicer. Without limitation of, and subject to, the other provisions of this Agreement (including <u>Sections 2.3(b)</u>, and <u>3.3(e)</u>, and the last sentence of <u>Section 3.3(d)</u>) the Transferor also will be responsible for paying any fee owing to an

3

Existing Servicer in connection with the termination of any servicing agreement with such Existing Servicer.

(d)     With respect to any Loan, Transferor reserves the right to permit or require offsets against such Loan on account of, and with funds in, any applicable deposit account (of any related Borrower or other Obligor) held with the Failed Bank.  If allowed by Transferor (and to the extent so allowed), such offsets will be retroactive to the date that the FDIC was appointed Receiver for the Failed Bank.  To the extent that such offset is not already reflected in the Cut-Off Date Unpaid Principal Balance, (i) the Transferor will give notice to the Company of such offset and transfer the amount of such offset (not already reflected in the Cut-Off Date Unpaid Principal Balance) to the Company to be treated as Asset Proceeds relating to such Loan and deposited into the Collection Account (and such offset will be disregarded for purposes of determination of the Adjusted Unpaid Principal Balance of such Loan and any adjustments pursuant to Sections 2.4(c) or 2.4(d), but will be taken into account for purposes of determination of the Unpaid Principal Balance of such Loan for all other purposes), and (ii) the Company will (for purposes of the applicable Note(s) and other Asset Documents) and all calculations as between the Company and the applicable Borrower (or other Obligor) with respect to the amounts owing under such Loan), credit the amount of such offset (on a dollar-for-dollar basis) to such Loan according to the terms and conditions of the applicable Note(s) (and other Asset Documents) as of the date that the FDIC was appointed Receiver for the Failed Bank.

Section 2.4.     Adjustments.

(a)     The Private Owner must, and must cause the Servicer to, cooperate with the Transferor in reconciling the amounts of advances made with respect to each Asset through the Servicing Transfer Date for such Asset to fund Interim Servicing Expenses, Pre-Approved Charges or otherwise.  As soon as practicable after the respective Servicing Transfer Date, the Transferor must provide the Company with a statement setting forth, for each Asset that is transferred on such Servicing Transfer Date, the amount of all advances made with respect to such Asset prior to the Servicing Transfer Date for such Asset and the amount of any reimbursement of advances that the Transferor has received from the respective Borrower or other Obligor.

(b)     As soon as practicable after each respective Servicing Transfer Date, the Transferor must provide the Company with a statement setting forth, for each Asset that is transferred on such Servicing Transfer Date, the Adjusted Unpaid Principal Balance, Adjusted Escrow Balance and the Unpaid Principal Balance as of the Servicing Transfer Date.  Each such statement must be accompanied by an explanation of the reasons for any adjustment to any Cut-Off Date Unpaid Principal Balance or Escrow Balance.  In addition, an amount equal to the positive balance of any Escrow Accounts with respect to the relevant Group of Assets as of each Servicing Transfer Date will be remitted to the Servicer (and will not be considered to constitute Asset Proceeds).

(c)     If the Adjusted Unpaid Principal Balance of any Asset exceeds the Cut-Off Date Unpaid Principal Balance of such Asset (such excess, the "**Excess Principal**"), the Private Owner will be liable to the Transferor for an amount equal to the Adjustment Percentage multiplied by the Excess Principal.  If the Cut-Off Date Unpaid Principal Balance of any Asset exceeds the Adjusted Unpaid Principal Balance of any Asset (such deficiency, the "**Principal Deficiency**"),

4

the Transferor will be liable to the Private Owner for an amount equal to the Adjustment Percentage multiplied by the Principal Deficiency. No adjustment will be made for any miscalculation of interest on any Asset.

(d)    As soon as practicable after the final Servicing Transfer Date, the aggregate amount owed by the Private Owner to the Transferor pursuant to Section 2.4(c) (excluding the amount of any Interim Servicing Expenses or Pre-Approved Charges due to the Transferor) will be subtracted from the aggregate amount owed to the Private Owner by the Transferor pursuant to Section 2.4(c). If the resulting amount is a positive number, the Transferor must pay such amount to the Private Owner, and if the resulting amount is a negative number, the Private Owner must pay the absolute value of such amount to the Transferor, in each case as soon as practicable after the final Servicing Transfer Date. The Company will adjust its records to reflect the Adjusted Unpaid Principal Balances, the Adjusted Escrow Balances and the Unpaid Principal Balances with respect to the Assets.

Section 2.5.    Rebates and Refunds. The Company is not entitled to any rebates or refunds from the Transferor or the Failed Bank from any pre-computed interest Loan regardless of when the Note matures. Further, on pre-computed interest Loans, neither the Transferor nor the Failed Bank will refund any unearned discount amounts to the Company.

Section 2.6.    Interest Conveyed. In the event a foreclosure on Collateral for any Loan occurs after the Cut-Off Date, or occurred on or before the Cut-Off Date but the Redemption Period had not expired on or before the Cut-Off Date, the Transferor will convey to the Company all of the Transferor's right, title and interest as of the Closing Date in and to such Loan and the related Deficiency Balance, if any, together with the net proceeds, if any, of such foreclosure sale. With respect to any Receiver Acquired Property (including where the Transferor was the purchaser thereof at any such foreclosure sale pursuant to the preceding sentence), the Transferor will convey to the Company all right, title and interest of the Transferor as of the Closing Date in and to the related Underlying Loan and any Deficiency Balance with respect thereto, together with a Receiver's Deed and Omnibus Property Assignment (in the case of Receiver Acquired Property other than Potentially Defectively Foreclosed Receiver Acquired Property) or a Receiver's Quitclaim Deed (in the case of Potentially Defectively Foreclosed Receiver Acquired Property), as applicable, conveying such Receiver Acquired Property to an Ownership Entity, as specified on the Ownership Entity and Receiver Acquired Property Schedule (unless the Receiver Acquired Property was purchased by an Ownership Entity, in which case the Transferor will convey to the Company all equity interests in such Ownership Entity pursuant to an Assignment and Acceptance of Limited Liability Company Interest). The Company acknowledges and agrees that the Company is not (directly or indirectly through any Ownership Entity) acquiring any interest in or to (a) any Collateral that was foreclosed by the Transferor or any of its predecessors-in-interest on or before the Cut-Off Date and for which the Redemption Period, if any, had expired on or before the Cut-Off Date (other than Receiver Acquired Property (x) expressly described as "Owned Real Estate" on the Ownership Entity and Receiver Acquired Property Schedule, or (y) held as of the Closing Date by an Ownership Entity set forth in the Ownership Entity and Receiver Acquired Property Schedule); (b) [intentionally omitted]; or (c) any performance or completion bond or letter of credit or other assurance filed with any Governmental Authority with respect to any Asset for the purpose of ensuring that improvements constructed or to be constructed are completed in

5

accordance with any governmental regulations or building requirements applicable to the proposed or completed improvement to the extent that any such performance or completion bond or letter of credit or other assurance constitutes a promise or obligation of the Transferor or the Failed Bank to make any payment or otherwise provide any performance or satisfaction.

Section 2.7.    <u>Retained Claims</u>.    Notwithstanding anything to the contrary in this Agreement, the Company and the Transferor agree that the contribution by the Transferor pursuant to this Agreement will exclude the transfer to the Company of any right, title and interest of the Transferor, the Failed Bank and any predecessors-in-interest thereto in and to any and all claims of any nature whatsoever that now may exist or hereafter may arise, whether known or unknown, that the Transferor, the Failed Bank or predecessors-in-interest thereto have or had or that any may have or may have had, regardless of when any such claim is discovered, against any of the following:  (a) officers, directors, employees, insiders, accountants, attorneys, other Persons employed by the Transferor, the Failed Bank or any of its predecessors-in-interest, underwriters or any other similar Persons who may have caused a loss to the Transferor, the Failed Bank or any of its predecessors-in-interest in connection with the initiation, origination, servicing or administration of an Asset; (b) any appraisers, accountants, auditors, attorneys, investment bankers or brokers, loan brokers, deposit brokers, securities dealers or other professional individuals or Persons who performed services for the Transferor, the Failed Bank or any of its predecessors-in-interest relative to the initiation, origination, servicing or administration of an Asset; (c) any third parties for alleged fraud, misrepresentation or other misconduct in connection with the initiation, origination or servicing of an Asset; or (d) any appraiser or other Person with whom the Transferor, the Failed Bank or any of their predecessors-in-interest or any servicing agent contracted for services or title insurance or closing protection coverage in connection with the initiation, origination, insuring or servicing of an Asset, <u>provided</u>, <u>however</u>, that claims under and pursuant to a title insurance policy will not constitute excluded or retained claims pursuant to this <u>Section 2.7</u>.

Section 2.8.    <u>Transfer Taxes</u>.    Except as otherwise provided in this Agreement, the Company must pay, indemnify and hold  harmless the Transferor and its Related Persons from and against any Transfer Taxes and must file timely any returns required to be filed with respect to such Transfer Taxes; <u>provided</u>, <u>however</u>, that the Transferor will pay (and will not be entitled to be reimbursed for) any Transfer Taxes in the nature of mortgage recording Taxes and will file timely any returns required to be filed with respect to such Transfer Taxes required to complete the conveyance of any mortgage under <u>Section 2.1</u>.  Transfer Taxes paid by the Company pursuant to this <u>Section 2.8</u> will constitute Pre-Approved Charges.

Section 2.9.    <u>Assets Subject to Existing Agreements</u>.    Notwithstanding any provision of this Agreement to the contrary, the Company acknowledges and agrees that each Asset is conveyed, contributed and sold to the Company subject to any and all contracts and agreements to which the Transferor or any predecessor-in-interest is a party with respect to such Asset as of the Closing Date, including any settlement agreements, restructuring agreements or sale and purchase agreements (other than any Transferor Loan-Servicing Contract).

Section 2.10.    [<u>Intentionally Omitted</u>].

6

Section 2.11.   Exempt Taxes.

(a)      As soon as reasonably practicable, but in no event later than twenty-five Business Days after the Closing Date, the Company will provide a schedule of any Taxes that the Company believes are Exempt Taxes with respect to the Receiver Acquired Property, indicating, with respect to each such Exempt Tax, the payment due date, tax period, payee and amount thereof, and whether any Governmental Authority has purported to assess such Exempt Tax (in whole or in part) and specifying the relevant Governmental Authority, if applicable.   To the extent meeting the requirements of Section 2.11(b) and specifically noted therein, such schedule may also constitute an Assessed Exempt Tax Notice.

(b)      Subject to (i) the last sentence of this Section 2.11(b) and the Transferor's right of contest pursuant to Section 2.11(c) and (ii) the Company providing written notice to the Transferor of the payment due date, tax period, payee and amount of any assessed Taxes with respect to any Receiver Acquired Property that the Transferor believes are Exempt Taxes ("**Assessed Exempt Taxes**"), and indicating the date upon which each of the applicable Trigger Events (as defined below) is likely to occur (the "**Assessed Exempt Tax Notice**"), the Transferor will pay such Assessed Exempt Taxes directly to the applicable taxing authority prior to the earliest of the date (each of the following dates to be determined taking into account the effect thereon of any relevant proceeding conducted as described in Sections 2.11(c) and (d), including, for example, any suspension of the obligation to pay such Assessed Exempt Taxes) upon which (w) such Assessed Exempt Taxes are subject to late charges, or interest, accruing thereon, (x) the relevant Receiver Acquired Property or any portion thereof is in imminent danger of being sold, forfeited, terminated, canceled or lost, (y) the payment of such Exempt Taxes is necessary to release a lien or other encumbrance, the release of which is a necessary condition to the consummation of a sale of any Receiver Acquired Property, or (z) the Company is likely to be subject to civil or criminal damages due to the failure to pay such Assessed Exempt Taxes (clauses (w), (x), (y) and (z), collectively, the "**Trigger Events**"); provided that the Transferor's payment of any Assessed Exempt Taxes as required hereunder will not be deemed an admission that such Assessed Exempt Taxes are in fact valid, due or payable and the Transferor may make such payment under protest and use any legal means available to challenge the amount or validity of such Assessed Exempt Taxes and seek reimbursement from the applicable taxing authority.  To the extent that all or any portion of any challenged Assessed Exempt Taxes are reimbursed, such reimbursed amounts will be the property of the Transferor, and the Company will have no rights or interest in such amounts (and the Company will hold in trust for the Transferor, and promptly pay over to the Transferor, any such reimbursed amount that may be paid to the Company in the first instance).   Notwithstanding anything to the contrary set forth herein and irrespective of any Trigger Event, the Transferor will not be required to pay any Assessed Exempt Taxes sooner than thirty days after its receipt of the related Assessed Exempt Tax Notice.  If the Transferor determines that any Assessed Exempt Taxes do not constitute Exempt Taxes, (A) the Transferor will have no obligation to pay such Assessed Exempt Taxes and (B) the Transferor will provide notice of such determination to the Company, provided that the Transferor will have no liability for any failure to provide such notice or any obligation to pay such Assessed Exempt Taxes if it fails to provide such notice.

(c)      The Transferor (in its sole discretion) may protest, challenge or otherwise contest the amount or validity of any Assessed Exempt Taxes in any manner that it desires, both before

7

and after paying such Assessed Exempt Taxes, including by seeking to recover any such Assessed Exempt Taxes that it has paid, provided that nothing in this Section 2.11(c) relieves the Transferor of its obligation to pay any particular Assessed Exempt Tax (including under protest) prior to the applicable Trigger Date as set forth in Section 2.11(b).

(d)    The Company must fully cooperate as requested by the Transferor from time to time with respect to any protest, challenge or other contest by the Transferor of any Assessed Exempt Taxes, including in any proceeding to recover any such Assessed Exempt Taxes that it has paid. Such cooperation will include the Company granting to the Transferor the authority or other rights necessary for it to commence a formal Action in the name of the Company, or assigning to the Transferor any rights the Company may have to protest, challenge or otherwise contest any Assessed Exempt Taxes.

(e)    The Transferor's determination as to whether or not, and the extent to which, a particular Tax constitutes an Exempt Tax will be conclusive and binding for all purposes with respect to this Agreement.

## ARTICLE III

### Transfer of Assets, Collateral Documents and Interim Servicing

Section 3.1.    Delivery of Documents. The Company and the Transferor agree to execute and deliver to one another the following:

(a)    On the Closing Date (or within a reasonable period of time thereafter as specified by the Transferor by written notice to the Company delivered on the Closing Date), the Transferor will deliver to the Company such Transfer Documents executed by the Transferor and/or the Prior Transferor, as applicable, as the Transferor elects to deliver to the Company, it being understood that the Transferor may, in its sole discretion (but without any obligation to do so) and at the expense of the Company (which expense will constitute a Pre-Approved Charge), prepare (or cause the preparation of), execute and deliver to the Company any such Transfer Documents with respect to any or all Assets in such form determined by the Transferor as suitable for any required recording or filing in applicable jurisdictions within the United States. For avoidance of doubt, delivery of any such Transfer Documents will not result in any liability or further obligation of the Transferor (including on account of any errors or omissions in such Transfer Documents), and the Company will be responsible for (i) confirming the form and content of any such Transfer Documents (and correcting any such errors or omissions therein), and (ii) preparing, pursuant to Section 3.1(d) hereof below, all additional Transfer Documents not so delivered by the Transferor (including any applicable UCC financing statements (and assignments), any documents to be filed under, or otherwise relating to, the Laws of any Foreign Jurisdiction, and any Transfer Documents with respect to (x) any Collateral other than real property Collateral, and (y) any Acquired Property other than Acquired REO Property and related Ownership Entities).

(b)    Subject to the provisions of the LLC Operating Agreement and Section 3.1(d) hereof below in relation to the Transfer Documents, the Transferor will deliver or cause to be delivered, at the expense of the Company (which expense will constitute a Pre-Approved Charge),

8

to the extent they are in the possession of the Transferor or any of its employees or contractors (and have actually been located and separately collected as of the Closing Date, or at the discretion of the Transferor after the Closing Date, for delivery to the Custodian pursuant to this Agreement), (i) the Custodial Documents to the Custodian as soon as is practicable after the Closing Date and (ii) the Asset Files with respect to each Asset to either the Company or the Servicer (as directed by the Company), in either case on or within a reasonable period of time after the Servicing Transfer Date with respect to such Asset; provided (A) any Custodial Documents or Asset Files in electronic format may be delivered by the Transferor by making the same available for download, for a limited period of time determined by the Transferor, through a secure website or electronic sharing platform selected by the Transferor (in which case, the Transferor may further require that the Company download and deliver such electronic format Custodial Documents to the Custodian, and any applicable electronic Asset Files to the Servicer), and (B) any Custodial Documents or Asset Files separately located or collected by the Transferor after the Closing Date will be delivered as soon as reasonably practicable after being separately located and collected.

(c)    [intentionally omitted].

(d)    (i)    To the extent that the Transferor does not deliver all the Transfer Documents on the Closing Date, (A) as soon as is practicable following the Closing Date but in any event by the Transfer Documents Preparation/Submission Deadline, the Company will properly prepare on behalf of the Transferor all Transfer Documents not delivered by the Transferor to the Company on the Closing Date (including, as applicable, for purposes of reflecting the transfer of the Assets by the Prior Transferor to the Transferor) and (B) on or within a reasonable time following the Closing Date, the Transferor will execute and deliver one or more Limited Powers of Attorney to selected representatives of the Company for the purpose of executing on behalf of the Transferor and, as applicable, the Prior Transferor such Transfer Documents prepared by the Company pursuant to Section 3.1(d)(i)(A). Reasonable and customary expenses paid to third parties actually incurred by the Company (or the Manager or the Servicer for the benefit of the Company) in preparing and executing the Transfer Documents on behalf of the Transferor and the Prior Transferor (as applicable) and otherwise complying with the obligations set forth in the preceding sentences will constitute Pre-Approved Charges; provided, however, that any such expenses with respect to a Transfer Document that is not properly prepared and submitted for recordation or filing by the Transfer Documents Preparation/Submission Deadline will not constitute Pre-Approved Charges (and will constitute Excluded Expenses) and must be borne by the Private Owner alone. The Company hereby releases the Transferor and the Prior Transferor from any loss or damage incurred by the Company due to the contents or form of any documents prepared by the Company pursuant to this Section 3.1(d).

(ii)    The Company must use the forms set forth in Attachment E to Attachment J-3, inclusive, in preparing the Transfer Documents, in each case with such changes as may be necessary in order to render such document to be in a form so that it will be accepted for recordation or filing in the relevant jurisdiction and/or otherwise sufficient under applicable Law to reflect the transfer intended to be effected thereby (including, as applicable, for reflecting the transfer by the Prior Transferor to the Transferor). If, with respect to any particular property included in the Assets, a document of assignment, conveyance or transfer is required to be filed or recorded pursuant to any applicable Law to evidence the transfer thereof from the Transferor to the

Company (and, as applicable, from the Prior Transferor to the Transferor) but none of the forms specified in the preceding sentence (even with such changes as are described in the preceding sentence) will be accepted for recordation or filing in the relevant jurisdiction, the Company will prepare, and submit to the Transferor for its approval (and, upon such approval, will use), a form of document of assignment, conveyance or transfer that will so be accepted for recordation or filing in the relevant jurisdiction. The Transfer Documents (except (x) Receiver's Deeds, Omnibus Property Assignments and Receiver's Quitclaim Deeds, which in each case will contain the warranty set forth in the form attached hereto, but no other warranties or representations, and (y) special warranty deeds with respect to any Contract for Deed delivered pursuant to <u>Section 4.10</u>, which may contain a special warranty of title, but no other warranties, consistent with the form of Receiver's Deed), must contain the following sentence: "This assignment is made without recourse, and without representation or warranty, express, implied or by operation of law, of any kind or nature whatsoever, by the Federal Deposit Insurance Corporation in its capacity as Receiver for [*insert one or both of Signature Bridge Bank, N.A. and/or Signature Bank, New York, New York, based on applicable transferor(s) in such Transfer Document*]"

        (iii)    The Company must provide a report to the Transferor on the progress and status of the preparation, execution, recording and/or filing and delivery of the original documents to the Custodian as required by this Agreement, and of the resolution of (and measures being taken to resolve) any Exceptions identified by the Custodian in any Asset Schedule and Exception List, in each case promptly following a request therefor from the Transferor and in any event upon each of (A) the first day of the month following the Transfer Documents Preparation/Submission Deadline, (B) the first anniversary of the Closing Date and (C) if any Exceptions remain or additional documents remain to be delivered as of such first anniversary, on a quarterly basis until all such remaining original documents have been delivered and no Exceptions exist, with confirmation of the same having been provided to the Transferor by the Company (or the Custodian), as applicable.

        (iv)    For the avoidance of doubt, each Limited Power of Attorney (and any similar power of attorney that the Transferor in its discretion may provide to the Company or representatives of the Company (including the Manager or representatives of the Manager)) may be used solely to effect the transfer described in <u>Section 2.1</u> hereof (including, as applicable, to reflect and/or perfect the transfer of the Assets by the Prior Transferor to the Transferor so as to reflect full chain of title from the Prior Failed Bank), and may not be used for any other purpose (including to exercise, or otherwise in connection with any exercise of, any rights or remedies under any Collateral Document). In addition, each FDIC Power of Attorney must be used strictly in accordance with (A) all applicable terms of (including all relevant restrictions set forth in) the Transaction Documents and (B) all applicable Laws (including compliance with any applicable notarization requirements and requirements for verification of any facts stated in any instrument or other document executed pursuant to such FDIC Power of Attorney. The Company must adopt written procedures (which the Company must memorialize in its books and records) concerning the use of any FDIC Power of Attorney and the selection of the specific individuals that from time to time may be named therein, or otherwise authorized thereby, to act in the name of, or otherwise on behalf of, the Transferor , the Prior Transferor or the FDIC, including procedures to ensure that each such individual (x) is a person that is well-known to the Company, whose background (including absence of any criminal record involving fraud or dishonesty or involving any other

10

matter that might reflect adversely on the Transferor , the Prior Transferor or the FDIC), reputation in the loan servicing and/or asset management industries, and credentials have been investigated by the Company and who is regarded by the Company as competent, reputable, honest and trustworthy, (y) is selected with due regard to preserving the reputation and integrity of the FDIC, and (z) is selected with at least the same degree of care as the Company would apply in the context of granting such individual a similar power to act on behalf of the Company.

(v)    Prior to executing and recording a Receiver's Deed and Omnibus Property Assignment with respect to a Receiver Acquired Property (other than a Potentially Defectively Foreclosed Receiver Acquired Property) or a Receiver's Quitclaim Deed with respect to a Potentially Defectively Foreclosed Receiver Acquired Property), the Company must obtain (A) a commitment in favor of the applicable Ownership Entity to issue an owner's title insurance policy with respect to the Receiver Acquired Property, in the amount of the Appraised Value of the Receiver Acquired Property, with such deletions and endorsements as are reasonable and customary under the circumstances (taking into account the nature and use of the Receiver Acquired Property) and as are consistent with the Servicing Standard, upon completion of the conveyance (and which owner's title insurance policy must be so obtained immediately following completion of the conveyance), (B) a current survey of the applicable Receiver Acquired Property (i.e., a survey, such as an ALTA survey, that is sufficient to delete the survey exception under the owner's title insurance policy), to the extent that (x) a current survey is not contained in the Asset Files and (y) obtaining a current survey of the applicable Receiver Acquired Property would be appropriate under the Servicing Standard, and (C) the insurance coverages and coverage amounts with respect to the Company, the Ownership Entity, the Servicer and the Receiver Acquired Property as are required under the Transaction Documents. Reasonable and customary expenses paid to independent third parties actually incurred by the Company (or the Manager or Servicer for the benefit of the Company) in complying with the obligations set forth in this <u>clause (v)</u> will constitute Pre-Approved Charges; <u>provided</u>, however, that any such expenses with respect to any Receiver Acquired Property for which the Transfer Documents have not been properly prepared and submitted for recordation or filing by the Transfer Documents Preparation/Submission Deadline will not constitute Pre-Approved Charges and must be borne by the Private Owner alone.

(vi)    Any right, title or interest of the Transferor in a Potentially Defectively Foreclosed Receiver Acquired Property will be assigned to an Ownership Entity pursuant to a Receiver's Quitclaim Deed, and the Transferor's right, title and interest in the Underlying Loan (including any related Deficiency Balance and Deficiency Judgment Claim) will be transferred to the Company in accordance with, and subject to, the other provisions of this Agreement, including, without limitation, <u>Sections 2.6</u>, <u>2.7</u> and <u>4.5</u>.

(e)    As to Foreign Assets (if any), the Company, at its own expense, must retain counsel licensed in the appropriate Foreign Jurisdictions. Such foreign counsel must draft the documents necessary to assign the Foreign Assets to the Company. Reasonable and customary expenses paid to third parties and actually incurred by the Company (or the Manager or the Servicer for the benefit of the Company) in complying with the obligations set forth in the preceding sentence will constitute Pre-Approved Charges. Documents presented to the Transferor to assign Foreign Assets, directly or indirectly, to the Company must be accompanied by a letter on the foreign counsel's letterhead, signed by the foreign counsel preparing those documents, certifying that

11

those documents conform to the Law of the Foreign Jurisdiction. Each such document and instrument must be delivered to the Transferor in the English language; provided, however, that any document required for its purposes to be executed by the Transferor in a language other than the English language will be delivered to the Transferor in such language, accompanied by a translation thereof in the English language, certified as to its accuracy by an executive officer or general counsel of the Company and, if such executive officer or general counsel is not fluently bilingual, by the translator thereof.

(f)    Nothing contained in this Section 3.1 or elsewhere in this Agreement will require the Transferor and, to the extent applicable, the Prior Transferor to make any agreement, representation or warranty or provide any indemnity in any such document or instrument or otherwise (except with respect to the special title warranty contained in any Receiver's Deed or in any special warranty deed with respect to a Contract for Deed); and in no event is the Transferor or the Prior Transferor (as applicable) obligated to obtain any consent or approval to the sale or transfer of the Assets or the related servicing rights, if any, or the assumption by the Company of the Obligations.

(g)    The Transferor agrees to execute (and cause the Prior Transferor to execute) any additional documents required by applicable Law or necessary to effectively transfer and assign all of the Transferor's right, title and interest in and to any and all Assets to the Company (including as may be required or necessary to reflect the applicable transfer of the Assets from the Prior Transferor to the Transferor). The Transferor will have no obligation to provide, review or execute (or cause the Prior Transferor to execute) any such additional document unless the same is requested of the Transferor within 365 calendar days after the Closing Date. The Transferor in its discretion may satisfy its obligations pursuant to this Section 3.1(g) (generally or in any particular instance) by the execution and delivery of one or more appropriate powers of attorney to the Company authorizing the Company to execute and deliver on behalf of the Transferor (and, as applicable, the Prior Transferor) additional documents that the Transferor is obligated to deliver pursuant to this Section 3.1(g) (except to the extent that documents executed and delivered pursuant to such power of attorney, as opposed to documents executed and delivered directly by the Transferor, will not suffice under applicable Law), and, at the request of the Transferor, the Company will enter into an agreement with the Transferor setting forth any conditions, restrictions, notice and reporting obligations, Transferor (and, as applicable, Prior Transferor) revocation rights and/or other similar terms that the Transferor in its discretion may specify in relation to the use of any such powers of attorney. Nothing in this Section 3.1(g) qualifies or limits the express obligations of the Company under this Section 3.1 above.

(h)    Notwithstanding any provision of this Agreement to the contrary, the Transferor (and the FDIC on behalf of the Prior Transferor, as applicable) grants to the Manager, acting only by and through a duly authorized officer or representative of the Manager, the limited authority and agency to (i) prepare and record any total or partial satisfactions, releases or reconveyances of any Mortgage related to any Loan that was paid off either fully or partially, as applicable, prior to the Closing Date (and has not been so prepared or recorded); and (ii) endorse to the Company any checks or other instruments made payable to the Transferor or the Failed Bank (or the Prior Transferor or the Prior Failed Bank) if such checks or other instruments evidence or relate to amounts otherwise payable to the Company pursuant to this Agreement; provided, however, that

12

any such endorsement must be made to the Company (as is provided elsewhere in this Agreement) without any representation or warranty of, or recourse to, the Transferor or the Failed Bank (or the Prior Transferor or the Prior Failed Bank) whatsoever in a form similar to the form set forth in Attachment E and (y) the Company acknowledges and in any event agrees that neither the Transferor nor the Failed Bank (nor the Prior Transferor nor the Prior Failed Bank) is receiving any consideration for such endorsement (the transfer of the Assets to the Company, to the extent such transfer constitutes a sale, being comprised of a sale of Loans (and of Acquired Property), and not of any particular or other instrument in payment of any such Loan).

(i)     The Company acknowledges that (i) any relevant recorded title or other recorded interest (including as mortgagee) in one or more (or all) Assets may be in the name of the Prior Failed Bank, and that the transfer of such Assets from the Prior Transferor (as receiver for the Prior Failed Bank) to the Failed Bank (or the Transferor) may not have been filed, recorded or otherwise reflected in any relevant recording office or registry, or before any relevant Person, (ii) in no event will the Transferor (or the Prior Transferor) have any liability to the Company on account of the foregoing (or any other missing intervening transfers),  and (iii) the Company's obligations herein with respect to the Transfer Documents and further actions for reflecting or perfecting the transfer of the Assets to the Company include, where applicable, the preparation of all Transfer Documents, and taking of all relevant further actions, including with respect to, and to further reflect or perfect, the prior transfer of the Assets from the Prior Transferor to the Failed Bank (or the Transferor).

Section 3.2.    Recordation of Documents.

(a)     With respect to all recordable Transfer Documents provided to the Company on the Closing Date (or such other applicable date pursuant to Section 3.1(a)) or prepared by the Company pursuant to Section 3.1(d), the Company must submit all such Transfer Documents for recordation or filing in the appropriate real property, deed, land, chattel, Uniform Commercial Code and other records of the appropriate county, state or other jurisdictions (including any Foreign Jurisdiction) as soon as is practicable following the Closing Date but in any event no later than the Transfer Documents Preparation/Submission Deadline.  All Transfer Documents must provide that all recorded documents be returned to the Custodian at its applicable notice address set forth in the Notice Schedule, as such address may be modified in the manner provided in the Custodial and Paying Agency Agreement (and the Notice Schedule).  The Company will be responsible for diligently and promptly following up with respect to any non-conforming Transfer Documents that are returned and not recorded, gaps in the chain of title and the like to ensure that each and all of the Transfer Documents are properly filed or recorded as appropriate.  The Company must include in the reports described in and required pursuant to Section 3.1(d)(iii) all required information concerning the recording and/or filing and return of all recordable Transfer Documents.

(b)     Reasonable and customary expenses paid to third parties and actually incurred by the Company (or the Manager or the Servicer for the benefit of the Company) in complying with the obligations set forth in this Section 3.2 will constitute Pre-Approved Charges; provided, however, that any such expenses with respect to a Transfer Document that is not properly prepared and submitted for recordation or filing by the Transfer Documents Preparation/Submission Deadline will not constitute Pre-Approved Charges (and will constitute Excluded Expenses) and must be borne by the Private Owner alone.  The Transferor will, if such is affirmatively required

under the applicable Law of a relevant Foreign Jurisdiction, take such actions as are necessary in such Foreign Jurisdiction to effect the purposes of this <u>Article III</u>.

Section 3.3.    <u>Transfer of Servicing</u>.

(a)    The Assets are conveyed to the Company on a servicing-released basis.  Effective from and after the Cut-Off Date, as between the Transferor and the Company, all rights, obligations, liabilities and responsibilities with respect to the servicing of the Assets will inure to the benefit of and be assumed by the Company, and the Transferor will be discharged from all responsibility and liability therefor, including any liability arising from any interim servicing provided by the Transferor pursuant to this <u>Section 3.3</u>.  Without limiting the generality of the foregoing, as between the Transferor and the Company, the Company assumes, effective as of the Cut-Off Date, all obligations with respect to special servicing and asset management of the Assets, including any Funding Draws, any advances from the Working Capital Reserve, or any permitted development of any Asset notwithstanding any interim servicing that the Transferor and the Existing Servicers might have performed prior to the Closing Date or might perform on or after the Closing Date and during the Interim Servicing Period; <u>provided</u>, <u>however</u>, that the Company acknowledges and consents that through the Closing Date the Transferor proceeded, and the Company consents and agrees that, from and after the Closing Date, if the Company fails to provide to the Transferor or any Existing Servicer necessary or appropriate direction with respect to any special servicing or asset management of the Assets, the Transferor will have the right to proceed, in compliance with the Transferor's usual and customary servicing and asset management standards and procedures, which servicing and asset management standards and procedures the Company consents to, acknowledges and accepts.

(b)    To provide for the orderly transfer of the servicing to the Company, the Transferor has (during the portion of the Interim Servicing Period through the Closing Date) provided, and will (during the portion of the Interim Servicing Period beginning on the Closing Date (except with respect to the management of any Acquired Property which as provided in <u>clause (h)</u> of this <u>Section 3.3</u> will transfer immediately on the Closing Date)) provide, interim servicing (including special servicing and, subject to the exception set forth above in this <u>Section 3.3(b)</u> with respect to management of Acquired Property, asset management) of the Assets, or has maintained, or will maintain, as applicable, agreements with third party Existing Servicers to provide interim servicing (including special servicing and, subject to the exception set forth above in this <u>Section 3.3(b)</u> with respect to management of Acquired Property, asset management) of the Assets, on the Company's behalf for such Asset during the Interim Servicing Period, including provisions requiring that the Existing Servicers continue:  (i) to receive payments and post them to the system of record; (ii) to maintain records reflecting payments received; (iii) to provide the Company, on request, a schedule of payments processed; (iv) to make payments (whether from its own funds or otherwise) to fund Interim Servicing Expenses and Pre-Approved Charges; and (v) to provide payoff information to the Company and the Servicer regarding particular Assets, as applicable.  The foregoing will not limit the actions that the Transferor may have taken, or may take, with respect to any Asset prior to the respective Servicing Transfer Date, and absent (from and after the Closing Date) necessary or appropriate direction from the Company with respect to the servicing of the Assets, the Transferor may have taken, or may take, as applicable, such actions with respect to any Asset prior to the respective Servicing Transfer Date as was or is, as applicable, in compliance with the

14

Transferor's usual and customary servicing standards and procedures, which servicing standards and procedures the Company consents to, acknowledges and accepts.  In addition, unless the Company and the Transferor agree otherwise, the Transferor will prepare and deliver limited Monthly Reports (containing only such information as determined appropriate by the Transferor) (including the Cash Flow and Distribution Reports) with only certain fields completed for all Due Periods ending on or before the last day of the calendar month in which the last Servicing Transfer Date occurs.  The Transferor may have engaged, and may engage, agents of the Transferor's own choosing to perform such interim servicing.  Each Existing Servicer will be (and hereby is) authorized by the Company to use and withdraw funds from the Collection Account, the Working Capital Reserve Account and the Escrow Accounts and to request Excess Working Capital Advances (if necessary) in the performance of the interim servicing duties pursuant to this Section 3.3 during the Interim Servicing Period if it so chooses (including with respect to the payment and satisfaction of any Interim Servicing Expenses or Pre-Approved Charges in full if the amount of Asset Proceeds it has collected and is retaining is insufficient to pay and satisfy such Interim Servicing Expenses or Pre-Approved Charges in full) for the same purposes that the Company and the Servicer will be so permitted after the corresponding Servicing Transfer Date.  Subject to the provisions of Sections 4.5(a) and 4.6 (and Section 3.3(h)), the Transferor's performance of this interim servicing will cease with respect to each Group of Assets on the Servicing Transfer Date for such Group of Assets.  For the Due Period in which the Servicing Transfer Date with respect to each Group of Assets occurs, the Transferor will provide (or will cause the applicable Existing Servicer to provide) the Company with a statement setting forth for the period beginning on the first day of the Due Period and ending on the applicable Servicing Transfer Date (i) the amount of payments and other amounts received for each Asset to which such Servicing Transfer Date relates and (ii) the amount of payments made to fund Interim Servicing Expenses made but not reimbursed by the applicable Borrower or Obligor (including payments made from the applicable Existing Servicer's own funds), which amounts are to be reimbursed in accordance with Section 2.3(b).  Each such statement also will include any amounts to be paid to the Transferor on the respective Servicing Transfer Date pursuant to Sections 2.3 and 2.4.  This statement will be provided as soon as is reasonably practicable after the Servicing Transfer Date, but in no event later than the due date for the regular Monthly Report for the month in which the Servicing Transfer Date occurs.

(c)     To facilitate communication among the Company, the Transferor and the Existing Servicers, on the Closing Date (i) the Company will designate (and the Private Owner must cause the Company to designate) a principal contact person whom the Transferor and the Existing Servicers will be authorized to contact with inquiries and requests for guidance or direction concerning the Transferor's and the Existing Servicers' interim servicing responsibilities and (ii) the Transferor will designate one or more principal contact persons whom the Company and the Servicer will be authorized to contact with inquiries, guidance or directions concerning the Transferor's and the Existing Servicers' interim servicing responsibilities.

(d)     The Transferor will cause all Asset Proceeds received during any particular Due Period during the Interim Servicing Period (and remaining after reimbursement or payment of Interim Servicing Expenses and Pre-Approved Charges and setoff of servicing fees payable to Existing Servicers as set forth in Section 3.3(e)) to be remitted to the Collection Account not later than two Business Days prior to the Distribution Date with respect to such Due Period.  The Existing Servicers will be (and hereby are) authorized by the Company to use Asset Proceeds with

15

respect to any Group of Assets for which the Servicing Transfer Date has not occurred, prior to the time Asset Proceeds are required to be remitted to the Collection Account, for payment or reimbursement of Interim Servicing Expenses and Pre-Approved Charges (including for the reimbursement of any advances that the Transferor may make during the Interim Servicing Period for payment of Interim Servicing Expenses and Pre-Approved Charges).

(e)    In consideration of the services provided by the Transferor with respect to each Group of Assets pursuant to this Section 3.3, the Company will pay the Interim Servicing Fee to the Transferor for each Due Period in which the Transferor provides interim servicing with respect to such Group of Assets (including the Due Period in which the Servicing Transfer Date with respect to such Group of Assets occurs) in the manner described in the Custodial and Paying Agency Agreement.  The Interim Servicing Fee with respect to each Group of Assets will be calculated, earned and due as of the first day of each Due Period in which the Transferor provides interim servicing with respect to such Group of Assets (and, for the avoidance of doubt, will not be prorated on account of the Servicing Transfer Date with respect to such Group of Assets occurring during such Due Period) and will be payable on each Distribution Date pursuant to the provisions of the Custodial and Paying Agency Agreement.  For the avoidance of doubt, any such Interim Servicing Fee payable prior to the last Servicing Transfer Date will be net of any servicing fees payable to Existing Servicers and such servicing fees will be offset by the Existing Servicers against Asset Proceeds.

(f)    The Company and the Private Owner each hereby ratifies and accepts as its own any and all actions taken by the Transferor in performance of interim servicing activities and functions during the Interim Servicing Period (including prior to the Closing Date), including any oversight of the Existing Servicers and in connection with its role of Existing Servicer with respect to a Group of Assets.  The Company and the Private Owner each acknowledges and agrees that the Transferor is performing interim servicing functions for the Company as an accommodation to the Company and that the Transferor will not have any liability for any acts or omissions taken in connection therewith (other than to correct calculation, allocation or distribution errors).  Without limitation of its applicable rights, if any, to be reimbursed with respect to certain amounts as provided in the LLC Operating Agreement and the Custodial and Paying Agency Agreement, each of the Company and the Private Owner hereby releases and forever discharges the Transferor, the FDIC, the Failed Bank and their respective predecessors-in-interest and all of their respective Related Persons, from any and all claims (including any counterclaim or defensive claim), demands, causes of action, judgments or legal proceedings and remedies of whatever kind or nature that the Company or the Private Owner, as applicable, had, has or may have in the future, whether known or unknown, that are related in any manner whatsoever to the servicing of the Assets at any time prior to the last Servicing Transfer Date.

(g)    The Transferor and the Private Owner will cooperate (i) to cause all Servicing Transfer Dates to occur prior to the date sixty days from the Closing Date to the extent reasonably practicable, unless a later date is consented to by the Transferor or unless the Transferor and the Company agree, with respect to any particular Group of Assets, upon an earlier date, and (ii) without limitation of clause (i), in the event that the Servicing Transfer Date with respect to any particular Group of Assets does not occur prior to the relevant date specified or described in clause (i), as soon as reasonably practicable after such date.

16

(h)    Notwithstanding anything to the contrary set forth above in this Section 3.3, the Company will assume full responsibility for property management of any Acquired Property immediately on the Closing Date.  With respect to such property management, the Servicing Transfer Date will, in all cases, be the Closing Date.

Section 3.4.    Grant of Power of Attorney by Company.  The Company hereby irrevocably appoints the Transferor its lawful attorney-in-fact, with full authority in the place and stead of the Company and in the name of the Company, the Transferor or otherwise, and with full power of substitution in the premises (which power of attorney, being coupled with an interest, is irrevocable for so long as the Company is in existence), from time to time in the Transferor's discretion, following a failure by the Company to satisfy promptly its obligations pursuant to Sections 3.1, 3.2, 4.10, 4.11 or 4.12 of this Agreement as they relate to the preparing, furnishing, executing and/or recording of any of the Transfer Documents or any other relevant matter set forth in any such provision, to prepare, furnish, execute and/or record all relevant Transfer Documents and other documents as might be reasonably necessary to satisfy the transfer and recording obligations of the Company pursuant to Sections 3.1, 3.2, 4.10, 4.11 and 4.12 of this Agreement.  The Company will reimburse the Transferor on demand for all costs and expenses incurred by the Transferor in connection with any exercise of the power of attorney set forth in this Section 3.4.

## ARTICLE IV

## Covenants, Duties and Obligations of the Company

Section 4.1.    Servicing of Assets.  From and after the Servicing Transfer Date (or, to the extent set forth in Section 3.3(h), the Closing Date), the Company must service the Assets in compliance with the LLC Operating Agreement (including the Servicing Annex).

Section 4.2.    Collection Agency/Contingency Fee Agreements.    The Company acknowledges and agrees that it accepts and acquires the Assets subject to any agreements with collection agencies or contingency fee agreements with attorneys (in either case that are outstanding and in effect as of the Servicing Transfer Date) that relate only to the Assets (or any of them) and are assignable, and assumes and agrees to fulfill all Obligations of the Transferor and/or the Failed Bank thereunder (including as may have been reflected thereunder as being of the Prior Transferor and/or the Prior Failed Bank).

Section 4.3.    Insured or Guaranteed Assets.  If any Assets being transferred pursuant to this Agreement are insured or guaranteed by any Governmental Authority, and such insurance or guaranty is not being specifically terminated by the Transferor, the Company acknowledges and agrees that such Assets must be serviced by a servicer, lender or mortgagee approved by such Governmental Authority, if such approval is required.  The Company further acknowledges and agrees that, upon assumption of the Obligations with respect to the Assets, it assumes full responsibility for determining whether or not any such insurance or guarantees are in effect on the date of this Agreement and, with respect to those Assets with respect to which any such insurance or guarantee is in effect on the date of this Agreement, the Company acknowledges and agrees that, upon assumption of the Obligations with respect to the Assets, it assumes full responsibility for taking any and all actions as may be necessary to insure such insurance or guarantees remain

in full force and effect. The Company acknowledges and agrees that, upon assumption of the Obligations with respect to the Assets, it assumes and agrees to fulfill all of the Transferor's and/or the Failed Bank's Obligations under the contracts of insurance or guaranty (including as may have been reflected thereunder as being of the Prior Transferor and/or the Prior Failed Bank). Any out-of-pocket fees due to any insurer or guarantor incurred by the Company (or the Manager or the Servicer for the benefit of the Company) to fulfill its obligations set forth in the preceding sentence will constitute Pre-Approved Charges.

Section 4.4.    <u>Reporting to or for the Applicable Taxing Authorities</u>. With respect to each Asset, the Transferor will be responsible for submitting all tax information returns with all applicable Governmental Authorities for all applicable periods prior to the respective Servicing Transfer Date, and the Company will be responsible for submitting all tax information returns with all applicable Governmental Authorities for all applicable periods commencing with the respective Servicing Transfer Date. Information returns include reports on Internal Revenue Service Forms 1098 and 1099. The Company will be responsible for submitting all information returns required under applicable Law of any Foreign Jurisdiction, to the extent such information returns are required to be filed by the Company or the Transferor under such Law, relating to the Assets, for the calendar or tax year in which the Closing Date falls and thereafter.

Section 4.5.    <u>Assets in Litigation</u>.

(a)    (i)    The Company will have no obligation to substitute its counsel to represent the Company's interests with respect to any Closing Date Asset Litigation which solely constitutes Retained Closing Date Asset Litigation (and does not also constitute (in whole or in part) Assumed Closing Date Asset Litigation). In such case, the Transferor will retain all rights and obligations, and will remain the real party-in-interest, with respect to, and will retain control over, such Retained Closing Date Asset Litigation. With respect to any Closing Date Asset Litigation which constitutes both Assumed Closing Date Asset Litigation and Retained Closing Date Asset Litigation, the Retained Closing Date Asset Litigation will be bifurcated from the Assumed Closing Date Asset Litigation, with the Transferor retaining all rights and obligations, and remaining the real party-in-interest, with respect to, and retaining control over, the Retained Closing Date Asset Litigation and with the Company substituting itself as the real party in interest and taking control of the Assumed Closing Date Asset Litigation as is provided otherwise in this <u>Section 4.5</u>. The Company will be responsible for, and must (upon demand) pay or reimburse the Transferor for, the reasonable fees and expenses of outside counsel retained by the Transferor to defend any Retained Closing Date Asset Litigation (to the extent that such fees and expenses were or are incurred by the Transferor after the Cut-Off Date), and such obligation of the Company in this sentence will constitute Servicing Expenses. The Transferor's determination as to whether or not, and the extent to which, a Closing Date Asset Litigation constitutes a Retained Closing Date Asset Litigation will be conclusive and binding for all purposes with respect to this Agreement.

(ii)    The Company must provide, no later than thirty days after the last of the Litigation Substitution Deadline Dates with respect to the Assumed Closing Date Asset Litigation, to the Litigation Oversight Attorney for SIG RCRS C MF 2023 Venture LLC,

18

(iii)       Federal Deposit Insurance Corporation, 1601 Bryan Street, Dallas, Texas 75201-4586, a report (in the form attached to this Agreement as <u>Attachment L</u>) on the status of the substitution of the Company as the real party-in-interest in each Assumed Closing Date Asset Litigation, which report must include (A) the name of the attorney selected by the Company to represent the Company's interests in each Assumed Closing Date Asset Litigation and (B) with respect to each such Assumed Closing Date Asset Litigation, the date(s) upon which (1) the Company notified the clerk of the court (or other appropriate official) and all counsel of record that ownership of the related Asset was transferred from the Transferor to the Company and (2) the Company's attorney filed with the court (or other appropriate body) substituting the Company's attorney for the Transferor's attorney, removing the Transferor and the Failed Bank as a party to the Assumed Closing Date Asset Litigation and substituting the Company as the real party-in-interest.  Before the applicable Litigation Substitution Deadline Date, the Company must notify the clerk of the court (or other appropriate official) and all counsel of record that ownership of the related Asset was transferred from the Transferor to the Company.  Subject to the provisions of <u>Sections 4.5(c)</u>, <u>4.5(d)</u> and <u>4.15</u>, the Company must have its attorney file appropriate pleadings and other documents and instruments with the court or other appropriate body before the relevant Litigation Substitution Deadline Date, substituting the Company's attorney for the Transferor's attorney, removing the Transferor and the Failed Bank as a party to the Assumed Closing Date Asset Litigation and substituting the Company as the real party-in-interest.  Nothing contained in this Agreement will preclude the Company from retaining the same attorney retained by the Transferor (or the Failed Bank) to handle such Assumed Closing Date Asset Litigation, <u>provided</u> that, with respect to Closing Date Asset Litigation constituting both Assumed Closing Date Asset Litigation and Retained Closing Date Asset Litigation, and with respect to litigation referred to in <u>Section 4.5(c)</u>, the Company shall not retain the same counsel that represents the Transferor unless the FDIC's Regional Counsel (at 1601 Bryan Street, Dallas, Texas 75201-4586) agrees in writing to such dual representation.  Subject to the provisions of <u>Section 4.5(b)</u> (and the Company's compliance with its obligations therein), in the event the Company fails, prior to the Litigation Substitution Deadline Date, to remove the Transferor and the Failed Bank as parties to the Assumed Closing Date Asset Litigation and substitute the Company as the real party-in-interest as set forth above in this <u>Section 4.5(a)</u>, (x) the Transferor may, but will have no obligation to, continue to pursue or defend such Assumed Closing Date Asset Litigation on behalf of the Company and (y) in the event the Transferor does continue to pursue or defend such Assumed Closing Date Asset Litigation, the Company will be liable for and hereby agrees to pay all costs and expenses incurred by the Transferor in connection therewith (which expenses will constitute Servicing Expenses).

(b)       If the Company is unable, as a matter of applicable Law or due to delays in court procedures and practices outside the control of the Company, to cause the Transferor and the Failed Bank to be replaced by the Company as party-in-interest in any Assumed Closing Date Asset Litigation as required by <u>Section 4.5(a)(ii)</u>, the Company must include the fact of such failure (and state the reasons therefor) in the report to be delivered by the Company pursuant to <u>Section 4.5(a)(ii)</u>.  In any such event, (i) the Company must cause its attorney to conduct such Assumed Closing Date Asset Litigation at the Company's expense, which expense will constitute Servicing Expenses; (ii) the Company must cause the removal of the Transferor and the Failed Bank and substitution of the Company as party-in-interest in such Assumed Closing Date Asset Litigation at the earliest time possible under applicable Law; (iii) the Company must use commercially

19

reasonable efforts to cause such Assumed Closing Date Asset Litigation to be resolved by judgment or settlement in as reasonably efficient a manner as practical; (iv) the Transferor will cooperate with the Company and the Company's attorney as reasonably required in the Transferor's sole judgment to bring such Assumed Closing Date Asset Litigation or any settlement relating thereto to a reasonable and prompt conclusion; and (v) no settlement may be agreed upon by the Company or its agents or counsel without the express prior written consent of the Transferor, unless such settlement includes an irrevocable and complete waiver and release of any and all potential claims against the Transferor and the Failed Bank (and any predecessor thereto) in relation to such Assumed Closing Date Asset Litigation or the subject Assets or Obligations by any Person asserting any claim in the Assumed Closing Date Asset Litigation and any Borrower and any Obligor, and any and all Losses relating thereto must be paid by the Company without recourse of any kind to the Transferor or the Failed Bank (other than to the extent the same constitute Servicing Expenses). The Company must pay all of the costs and expenses incurred by it in connection with the actions required to be taken by it pursuant to Section 4.5(a) and this Section 4.5(b) (which expenses will constitute Servicing Expenses), including all legal fees and expenses and court costs (which expenses will constitute Servicing Expenses), and (in furtherance, and without limitation, of Section 2.2) must reimburse the Transferor, upon demand, for all legal expenses the Transferor incurred or incurs on or after the Cut-Off Date with respect to any such Assumed Closing Date Asset Litigation, including costs incurred with the dismissal thereof or withdrawal therefrom (which costs incurred by the Transferor will constitute Servicing Expenses).

(c)    (i)    The Company will, subject to the rights of the Transferor set forth below in this Section 4.5(c), be responsible for and control and assume the investigation and/or defense of any Excluded Liability Company Claim on behalf of the Company and the Company's interest in the Assets, at the Company's expense and with counsel appointed by the Company. Without limitation of, and subject to the Transferor's rights set forth in, this Section 4.5(c), the Company and the Transferor will cooperate in the defense of any Excluded Liability Company Claim to the extent their interests are not in conflict, and will use commercially reasonable efforts to work together to resolve or settle such Excluded Liability Company Claim in a manner that is mutually agreeable and in their respective best interests. The Company must obtain the prior written approval of the Transferor before ceasing to defend against any Excluded Liability Company Claim.

(ii)    The Company must provide written notice pursuant to the Notice Schedule to the Transferor, with a copy to the FDIC's Regional Counsel at the address set forth in Section 4.5(a)(ii), of (A) any Action against (and which names as a party in such Action) the Transferor or the FDIC in its corporate capacity with respect to any Excluded Liability and (B) any Excluded Liability Company Claim with respect to which (in the case of this clause (B)) the Company has determined there is a reasonable likelihood it will (1) seek to implead the Transferor into the relevant Excluded Liability Company Action or (2) request that the Transferor intervene in the relevant Excluded Liability Company Action and be involved in the defense of such Action in accordance with Section 4.5(c)(iii). Such notice must include all court filings and other relevant documents and, in the case of clause (B), must specify that the Company anticipates seeking to implead the Transferor or requesting the Transferor to intervene (whichever is applicable) and must include a description, in reasonable detail, of each claim that the Company asserts is an Excluded Liability and the basis for making such assertion. Notice pursuant to this Section

20

4.5(c)(ii) must be given within five Business Days of the earlier to occur of service of process of the relevant Action on the Company and the Company's first knowledge of such Action, in the case of any Action described in clause (A), and promptly but in any event no less than fifteen Business Days prior to the date upon which the Company anticipates seeking to implead the Transferor or requesting the Transferor to intervene, in the case of any Excluded Liability Company Claim described in clause (B).

(iii)    If the Transferor intervenes in (or is impleaded into) any Excluded Liability Company Action, the Transferor (A) will have the option, in its sole discretion, (1) to permit the Company's outside counsel to continue to defend any Excluded Liability Company Claim or (2) to retain separate outside counsel of its choosing to defend any Excluded Liability Company Claim and (B) in any event will have the right thereafter to direct the defense of any Excluded Liability Company Claim, and the Company must cause its counsel to comply with all such direction. The Company must cooperate with the Transferor to effect an orderly transition of the defense of any Excluded Liability Company Claim to counsel designated by the Transferor pursuant to this Section 4.5(c)(iii).

(iv)    Subject to the provisions of Section 4.5(d), the costs and expenses incurred by the Company in connection with its defense of any Excluded Liability Company Claim, including (A) reasonable attorneys' fees and expenses incurred to defend against (or investigate) the same or pursue counterclaims or cross-claims against other parties, (B) awards or judgments assessed against the Company with respect to any such Excluded Liability Company Claim or (C) the costs of any settlement described in Section 4.5(d)(ii) of such Excluded Liability Company Claim, will constitute Servicing Expenses. If the Transferor retains separate outside counsel pursuant to Section 4.5(c)(iii)(A)(2), the Company will be responsible for, and must pay or reimburse the Transferor for, the reasonable fees and expenses of such counsel, and the Company's obligations under this sentence will constitute Servicing Expenses. Notwithstanding any provision to the contrary in this Agreement, any costs or expenses incurred by the Company in connection with its defense of any Excluded Liability Company Claim or Excluded Liability Company Action will not constitute Servicing Expenses (and will be deemed "Excluded Expenses") in the event the Company fails to provide any notice required pursuant to this Section 4.5(c) or fails to otherwise comply with any of its obligations herein with respect to such Excluded Liability Company Claim or Excluded Liability Company Action.

(v)    The Transferor's determination of whether any Liability asserted against the Company is an Excluded Liability, and the extent to which any claim or Action relates to both Excluded Liabilities and other Liabilities, will be conclusive and binding for all purposes with respect to this Agreement.

(d)    If, as a result of any Excluded Liability Company Claim in respect of or relating to an Asset (such Asset, the "**Affected Asset**"):

(i)    there is entered against the Company either (A) a final, non-appealable monetary judgment based upon such Excluded Liability Company Claim holding the Company liable for an Excess Damage Liability, or (B) a final monetary judgment based upon such Excluded Liability Company Claim that is appealable, which the Transferor agrees in writing need not be

21

appealed further by the Company, and that imposes an Excess Damage Liability on the Company, or

(ii)    the Company enters into a final settlement agreement with respect to such Excluded Liability Company Claim with the prior written consent of the Transferor (such consent not to be unreasonably withheld), pursuant to which the Company is obligated to pay an Excess Damage Liability,

then, in any such case described in clauses (i) or (ii) above, the Transferor will reimburse the Company for the Excess Damage Liability and the Transferor is entitled, at its option, to repurchase the Affected Asset at its Repurchase Price in accordance with the repurchase provisions of Article VI; provided, however, that the Transferor is not liable pursuant to this sentence for any Liability imposed upon, or otherwise incurred by, the Company (A) that arises as a result of any act or omission of, or on behalf of, the Company, any Ownership Entity, the Private Owner or the Servicer or (B) in the event the Company fails to provide any notice required pursuant to Section 4.5(c) or fails to otherwise comply with any of its obligations herein with respect to such Excluded Liability Company Claim or Excluded Liability Company Action.  Except as expressly set forth in this Section 4.5(d), the Transferor will not have any Liability to the Company for or in respect of any Excluded Liability Company Claim (including for or in respect of any monetary judgment or monetary settlement described in Section 4.5(d)(i) or 4.5(d)(ii)), and the Company hereby irrevocably waives any such Liability to the Company that the Transferor otherwise would have.

(e)    The provisions of Sections 4.5(a), 4.5(b), 4.5(c) and 4.5(d) (i) are subject to the retention by and the related rights of the Transferor with respect to claims described in Section 2.7 of this Agreement, including any such claims as may have been asserted in Assumed Closing Date Asset Litigation, and (ii) do not modify in any manner either the definition of "Obligations" or the definition of "Excluded Liabilities".  At the Transferor's discretion, any Closing Date Asset Litigation (constituting Assumed Closing Date Asset Litigation (in whole or in part)) involving any claims retained pursuant to Section 2.7 will be bifurcated, with the Transferor remaining the real party-in-interest and retaining control over (and being responsible for pursuing and bearing the related costs to pursue) claims retained by it pursuant to Section 2.7, and the Company substituting itself as the real party-in-interest and taking control of (and being responsible for pursuing and bearing the cost of pursuing) the remainder of the Closing Date Asset Litigation (to the extent constituting Assumed Closing Date Asset Litigation).  The Transferor's determination of whether or not (and the extent to which) Closing Date Asset Litigation consists of any such claims will be conclusive and binding for all purposes with respect to this Agreement.

(f)    Notwithstanding any provision to the contrary in this Agreement, any payments by the Company of Servicing Expenses pursuant to Section 4.5(c) will be subject to the obligation of the Private Owner to reimburse the Transferor under Section 4.6 of the LLC Operating Agreement.

(g)    Further notwithstanding any provision to the contrary in this Agreement, in the event that there is instituted any Action challenging the repudiation of any Liability with respect to any Asset by the Transferor and asserting that the Company has any Liability arising from such repudiation, the Transferor will control and defend such Action (including any claims or actions against the Company) and pay all costs and expenses in respect thereof.

Section 4.6.    Assets in Bankruptcy.  In accordance with Bankruptcy Rules 3001 and 3002, the Company must take all actions necessary to file, prior to the respective Servicing Transfer Dates, (i) proofs of claims in pending bankruptcy cases involving any Assets for which the Transferor or the Failed Bank has not already filed a proof of claim, and (ii) all documents required by Rule 3001 of the Federal Rules of Bankruptcy Procedure and to take all such similar actions as may be required in any relevant jurisdiction in any pending bankruptcy or insolvency case or proceeding in such jurisdiction involving any Asset in order to evidence and assert the Company's rights.  The Company must prepare and provide to the Transferor, on or prior to the respective Servicing Transfer Date, an Affidavit and Assignment of Claim in the form attached to this Agreement as Attachment D or any similar forms as may be required in any relevant Foreign Jurisdiction and must be acceptable to the Transferor, for each Asset where a Borrower or an Obligor with respect to such Asset is in bankruptcy as of the Closing Date.  The Company hereby releases the Transferor, the FDIC and the Failed Bank (and the Prior Transferor and the Prior Failed Bank) from any claim, demand, suit or cause of action the Company may have as a result of any action or inaction on the part of the Transferor, the FDIC or the Failed Bank (or the Prior Transferor or the Prior Failed Bank) with respect to such Asset.  In the event the Company fails, prior to the respective Servicing Transfer Date, to take the actions required by this Section 4.6, (a) the Transferor may, but will have no obligation to, file proofs of claim or other documents as the Transferor determines to be necessary or appropriate to evidence and assert the Company's rights and, (b) in the event the Transferor does take any such actions, the Company will be liable for and hereby agrees to pay all costs and expenses incurred by the Transferor in connection therewith (which costs incurred by the Transferor will constitute Servicing Expenses).  The provisions of this Section 4.6 are subject to the right of the Transferor to retain claims pursuant to Section 2.7 of this Agreement, including any such claims as may have been asserted in litigation pending as of the Closing Date.  At the Transferor's discretion, litigation involving any such claims will be bifurcated, with the Transferor remaining the real party-in-interest and retaining control over (and being responsible for pursuing and bearing the related costs to pursue) claims retained by it pursuant to Section 2.7 and the Company substituting itself as the real party-in-interest and taking control of (and being responsible for pursuing and bearing the cost of pursuing) the remaining claims in the litigation.

Section 4.7.    Asset-Related Insurance.  Pursuant to Section 2.1(e), the conveyance and transfer set forth in Section 2.1 includes, to the extent (and only to the extent) assignable and in relation to (and only in relation to) any Asset or the Collateral for any Loan, the rights of the Transferor under existing casualty or title insurance policies in respect of any Asset or the Collateral for any Loan (and such conveyance and transfer otherwise excludes any right, title or interest in, to or under any insurance policy), and the terms of Sections 3.1(f) and (subject to Section 3.1(f)) 3.1(g) will apply to such rights so included in such conveyance and transfer, provided that (i) without limiting the generality of Section 5.1, the Transferor makes no representations or warranties of any kind, nor assumes any liability or responsibility whatsoever, to the Company with respect to any such insurance policy, including with respect to the existence of coverage under any such insurance policy, the effectiveness of any such insurance policy or the amount of coverage under any such insurance policy, (ii) it will be the sole obligation of the Company, at its expense, to determine whether any such insurance policy is in effect, to take such actions as may be necessary or appropriate to obtain or continue coverage under any such insurance policy and to ensure that the issuer of any such insurance policy is notified of the purchase and

23

transfer of the Assets, and (iii) anything in this <u>Section 4.7</u> (or the rest of this Agreement) to the contrary notwithstanding, neither the Transferor (nor, for the avoidance of doubt, any Existing Servicer) will have any obligation, to any extent, to maintain, or to take any action to maintain in effect, any such insurance policy in effect after the Closing Date. On (and from and after) the Closing Date, (x) the Company will be responsible for having itself substituted as loss payee on all Asset-related insurance in which the Failed Bank or the Transferor is currently listed as a loss payee; and (y) the Company must cause to be put into place such insurance for the Assets and the Collateral for the Loans with respect to which the Borrower has failed to maintain required insurance, in accordance with the requirements in the Insurance Schedule (attached as <u>Annex III</u> to the LLC Operating Agreement). Upon the cancellation after the Closing Date of any insurance policy maintained by the Transferor or the Failed Bank with respect to any Asset and the receipt by the Company or the Transferor of any refund of any premiums previously paid with respect thereto, such refunded amount will inure to the benefit of the Borrowers with respect to the affected Assets, and such refunded amount must be remitted to (or retained by) the Company and applied as appropriate to adjust the Escrow Accounts, if any, or other records with respect to such affected Assets.

Section 4.8.    <u>Loans with Escrow Accounts</u>.  Amounts or balances related to the Loans on deposit in Escrow Accounts held or controlled by the Transferor or an Existing Servicer will be transferred to the Company on the respective Servicing Transfer Date. On such date, any positive escrow balances held in the Escrow Accounts, without offset against any negative escrow balances, will be transferred to the Company. The Company agrees to assume, undertake and discharge any and all Obligations of the holder of the Loans with respect to any Escrow Account and the maintenance of such Escrow Account and the Escrow Payments paid by or on account of the related Borrower.

Section 4.9.    <u>Transferor as Lead Lender in Loan Participations</u>.  The Transferor hereby assigns and the Company hereby assumes the role of lead lender for any Loan Participations in which a portion of a Loan was participated to one or more Persons and in which the Transferor or any of its predecessors-in-interest was the lead lender as of the Closing Date. The Company hereby agrees to accept any such Loan Participations subject to all participants' right, title and interest in such Loan Participations.

Section 4.10.    <u>Contracts for Deed</u>.  The Company agrees to comply with all Obligations set forth in any Contract for Deed contained in any Asset subject to this Agreement. Pursuant to the provisions of <u>Section 3.1</u> hereof, the Transferor may require the Company to prepare and furnish special warranty deeds (consistent with the form of Receiver's Deed as attached hereto) for the Transferor's approval, conveying the real property subject to any such contract to the Company. The costs and expenses of the Company (or the Manager or the Servicer for the benefit of the Company) for any title curative work, if required, will constitute Pre-Approved Charges.

Section 4.11.    <u>Acquired Property</u>.  The Company agrees to comply with all Obligations set forth in any Collateral Document relating to Acquired Property unless (subject in any event to <u>Section 7.5</u> hereof), in the opinion of the Company, complying with the Obligations pursuant to such Collateral Documents would not be in the best interest (in terms of maximizing the value of the Asset) of the Company and the Initial Member. Pursuant to the provisions of <u>Section 3.1</u>

24

hereof, the Transferor may require the Company to prepare and furnish Receiver's Deeds, Omnibus Property Assignments, Receiver's Quitclaim Deeds and other applicable Transfer Documents, for the Transferor's approval, to convey the Receiver Acquired Property to an Ownership Entity.

Section 4.12.    Leases.  The Company agrees to comply with all Obligations set forth in any lease related to any Asset unless (subject in any event to Section 7.5 hereof), in the opinion of the Company, complying with the Obligations pursuant to such lease would not be in the best interests (in terms of maximizing the value of the Asset) of the Company and the Initial Member.  Pursuant to the provisions of Section 3.1 hereof, the Transferor may require the Company to prepare and furnish applicable Transfer Documents for the Transferor's approval and execution.

Section 4.13.    Notice to Borrowers**.**  The Company, on a timely basis in accordance with and to the extent (if any) required by any applicable Laws, and pursuant to the Limited Powers of Attorney granted to it pursuant to Section 3.1(d)(i), must prepare and transmit to each Borrower a joint "hello" and "goodbye" letter, at the Company's expense, which letter will be subject to the review and reasonable approval of the Transferor.  With respect to each SFR Loan (if any), the Company must, on a timely basis in accordance with the HFSH Act, prepare and transmit to each Borrower any notice required by the HFSH Act.

Section 4.14.    Notice of Claims.  The Company must immediately notify the Transferor, in accordance with the notice provisions of the Notice Schedule, of any claim, threatened claim or litigation against the Transferor or the Failed Bank arising out of any Asset.

Section 4.15.    Use of the FDIC's Name and FDIC Legal Powers.  Section 12.23 of the LLC Operating Agreement will apply to this Agreement and is hereby incorporated by reference (including for purposes of any reference in any Transaction Document to this Section 4.15), *mutatis mutandis*.

Section 4.16.    Prior Servicer Information.  The Company acknowledges and agrees that the Transferor may not have access to information from servicers of an Asset prior to the appointment of the FDIC as receiver of the Failed Bank and that the Transferor has not requested any information not in the possession of the Transferor or its servicing contractor from any prior servicer of an Asset.  The Company acknowledges and agrees that the Transferor will not be required under the terms of this Agreement to request any information from any prior servicer.

Section 4.17.    Release of Transferor, the Prior Transferor, the Prior Failed Bank, FDIC and the Failed Bank.  Except as otherwise specifically provided in Article VI of this Agreement or in the LLC Operating Agreement or any other Transaction Document, the Company hereby releases and forever discharges the Transferor, the Prior Transferor, the Prior Failed Bank, the FDIC, the Failed Bank and all of their respective Related Persons (other than the Company) from any and all claims (including any counterclaim or defensive claim), demands, causes of action, judgments or legal proceedings and remedies of whatever kind or nature that the Company had, has or might have in the future, whether known or unknown, which are related in any manner whatsoever to the Assets, the servicing of the Assets (before or after the Cut-Off Date) by (i) the Transferor, the Failed Bank or their predecessors-in-interest, (ii) the FDIC or (iii) any Person

25

acting on behalf of the Transferor, the FDIC or the Failed Bank or their predecessors-in-interest, or the acquisition of the Assets (other than gross negligence or willful misconduct); <u>provided</u>, <u>however</u>, that nothing contained in this <u>Section 4.17</u> will constitute or be interpreted as a waiver of any express right that the Company has under this Agreement or any of the Transaction Documents.

**ARTICLE V**

**Assets Conveyed "As Is" and Without Recourse**

Section 5.1.    <u>Assets Conveyed "As Is"</u>.    THE ASSETS (INCLUDING ANY INTERESTS IN OWNERSHIP ENTITIES AND RECEIVER ACQUIRED PROPERTY) ARE CONVEYED AND ASSIGNED TO THE COMPANY "AS IS" AND "WITH ALL FAULTS," WITHOUT ANY REPRESENTATION, WARRANTY OR GUARANTY WHATSOEVER, INCLUDING AS TO COLLECTABILITY, ENFORCEABILITY, VALUE OF COLLATERAL, ABILITY OF ANY OBLIGOR TO REPAY, CONDITION, FITNESS FOR ANY PARTICULAR PURPOSE, MERCHANTABILITY OR FITNESS FOR A SPECIFIC PURPOSE, WHETHER EXPRESS OR IMPLIED OR BY OPERATION OF LAW (INCLUDING PURSUANT TO § 3-417 OF THE NY UCC OR § 3-416 OF THE UNIFORM COMMERCIAL CODE), BY ANY PERSON, INCLUDING THE TRANSFEROR, THE FAILED BANK OR THE FDIC, OR ANY PREDECESSORS-IN-INTEREST OR AFFILIATES OF THE TRANSFEROR, THE FAILED BANK OR THE FDIC, OR ANY OF THEIR RESPECTIVE OFFICERS, DIRECTORS, EMPLOYEES, AGENTS OR CONTRACTORS.    THE TRANSFEROR SPECIFICALLY DISCLAIMS ANY WARRANTY, GUARANTY OR REPRESENTATION, ORAL OR WRITTEN, PAST OR PRESENT, EXPRESS, IMPLIED, OR BY OPERATION OF LAW, CONCERNING THE ASSETS, THE COLLATERAL, THE COLLATERAL DOCUMENTS, THE ASSET DOCUMENTS OR THE RELATED AGREEMENTS OR WITH RESPECT TO THE LEGALITY, VALIDITY, EFFECTIVENESS, ADEQUACY OR ENFORCEABILITY OF ANY SWAP AGREEMENT OR ANY DOCUMENTS RELATING THERETO OR TO THE CONDITION, FINANCIAL OR OTHERWISE, OF THE PARTIES TO ANY SWAP AGREEMENT OR ANY OTHER PERSON OR FOR THE PERFORMANCE AND OBSERVANCE BY THE PARTIES TO ANY SWAP AGREEMENT OR ANY OTHER PERSON OF ANY OF ITS OBLIGATIONS PURSUANT TO ANY SWAP AGREEMENT OR ANY DOCUMENTS RELATING THERETO OR WITH RESPECT TO ANY OTHER MATTER WHATSOEVER RELATING TO ANY SWAP AGREEMENT.

Section 5.2.    <u>No Warranties or Representations with Respect to Escrow Accounts</u>. Without limiting the generality of <u>Section 5.1</u>, the Transferor makes no warranties or representations of any kind or nature as to the sufficiency of funds held in any Escrow Account to discharge any obligations related in any manner to an escrow obligation, as to the accuracy of the amount of any monies held in any Escrow Account or as to the propriety of any previous disbursements or payments from any Escrow Account.

Section 5.3.    <u>No Warranties or Representations as to Amounts of Unfunded Principal</u>. Without limiting the generality of <u>Section 5.1</u>, the Transferor makes no warranties or

26

representations of any kind or nature as to the amount of any additional or future advances of principal the Company may be obligated to make pursuant to the Asset Documents.

Section 5.4.    Disclaimer Regarding Calculation or Adjustment of Interest on any Asset. Without limiting the generality of Section 5.1, the Transferor makes no warranties or representations of any kind or nature as to the accuracy of any calculation or adjustment of interest on any Loan, including any adjustable rate Loan, whether such calculation or adjustment is made by the FDIC, the Failed Bank, the Transferor or any Affiliate, agent or contractor of any of the foregoing, or any predecessor-in-interest of the Transferor or any other party.

Section 5.5.    No Warranties or Representations With Regard to Information.    The Transferor makes no warranties or representations of any kind or nature as to the completeness or accuracy of any information provided with respect to any Asset.  The Company acknowledges that, for example, and not by way of limitation, some Asset Files may be missing forms or notices, or may contain incomplete or inaccurate forms or notices, that may be required by one or more federal or state consumer protection statutes.  The Company's exclusive remedies with respect to any inaccurate or incomplete information provided by the Transferor are an adjustment in accordance with Section 2.4 or an option to repurchase pursuant to Article VI, and such exclusive remedies are available only if all other conditions theretofore expressed in this Agreement have been met.

Section 5.6.    Intervening or Missing Assignments.  The Company acknowledges and agrees that the Transferor will have no obligation to secure or obtain any missing intervening Mortgage Assignment or other assignment to the Transferor or the Failed Bank that is not contained in the documents or files delivered to the Company or the Custodian pursuant to Section 3.1(b).  Neither the absence of any intervening Mortgage Assignment or any Mortgage Assignment to the Transferor, the FDIC or the Failed Bank, nor the existence of any Lien on the Asset or its Collateral, nor any defect in the Lien or priority of the Transferor's or the Failed Bank's security interest in the Collateral will give rise to any claim for purchase under Article VI.  The Company must bear all responsibility and expense of securing from the appropriate source any intervening Mortgage Assignment or any other assignment to the Transferor, the FDIC or the Failed Bank that may be missing from the documents or files delivered to the Custodian pursuant to Section 3.1(b), but the costs thereof incurred by the Company (or the Manager or the Servicer for the benefit of the Company) will constitute Pre-Approved Charges.

Section 5.7.    No Warranties or Representations as to Documents.  The Transferor makes no warranties or representations of any kind or nature as to the effectiveness or enforceability in any Foreign Jurisdiction of this Agreement or any other document or instrument delivered or prepared in connection herewith, whether or not prepared and executed in the forms provided herewith, all of such forms being provided for reference only.

Section 5.8.    No Warranties or Representations as to Real Estate Taxes or Other Potential Liens Affecting Collateral.  Without limiting the generality of Section 5.1, the Transferor makes no warranties or representations of any kind or nature as to the existence or amount of any unpaid back real estate Taxes, penalties, interest or other amounts due or overdue and payable or to become due and payable with respect to any Asset or Collateral or related Liens against any Asset

or Collateral which amounts may be subject to payment by the Company in accordance with the terms of the Transaction Documents. The Transferor retains no obligations with respect to payment or discharge of any real estate Taxes, penalties, interest or other amounts or any Liens or other encumbrances resulting from the nonpayment thereof without regard to when such Taxes, penalties, interest or other amounts became due and without regard to when such Liens or other encumbrances arose.

Section 5.9.    No Warranties or Representations as to Assets or Liabilities of Ownership Entities. Without limiting the generality of Section 5.1 or Section 5.8, the Transferor makes no warranties or representations of any kind or nature as to the assets or Liabilities of any Ownership Entity included in the Assets.

# ARTICLE VI

## Repurchase by Transferor

Section 6.1.    Repurchases at Company's Option. The Company, at its option, and upon satisfaction of the procedures and other requirements set forth below, may require the Transferor to repurchase an Asset, if, and only if, (i) (x) prior to the Closing Date, one of the events described in Section 6.1(a), (b), (c), (g) or (h) has occurred, or (y) as of the Closing Date, one of the statements of fact described in Section 6.1(d), (e), (f), (i) or (j) exists, or (ii) after the Closing Date, there is issued by a court of competent jurisdiction with respect to such Asset a final, non-appealable (unless the Transferor has agreed in writing that no appeal need be taken) order or judgment or there is entered into, with the consent of the Transferor, a final settlement of any claim, action or litigation (the "**Order**") that requires the assignment and transfer of such Asset back to the Transferor. IN NO EVENT WILL THE OCCURRENCE OF ANY SUCH EVENT OR THE OBLIGATION TO REPURCHASE AN ASSET PURSUANT TO THIS ARTICLE VI BE EVIDENCE OF ANY BAD FAITH, MISCONDUCT OR FRAUD ON THE PART OF THE TRANSFEROR, THE FDIC OR THE FAILED BANK OR ANY PREDECESSOR-IN-INTEREST OR ANY AFFILIATE THEREOF, OR ANY OF THEIR RESPECTIVE DIRECTORS, EMPLOYEES, OFFICERS, CONTRACTORS OR AGENTS, EVEN IF IT IS SHOWN THAT THE TRANSFEROR, THE FDIC OR THE FAILED BANK OR ANY PREDECESSOR-IN-INTEREST OR ANY AFFILIATE THEREOF, OR ANY OF THEIR RESPECTIVE DIRECTORS, EMPLOYEES, OFFICERS, CONTRACTORS OR AGENTS, (A) KNEW OR SHOULD HAVE KNOWN OF THE EXISTENCE OF ANY FACTS RELATING TO THE OCCURRENCE OF SUCH EVENT, (B) CAUSED SUCH EVENT OR (C) FAILED TO MITIGATE SUCH EVENT OR ANY OF THE LOSSES RESULTING THEREFROM.

(a)    If the Asset is a Loan, the Borrower had been discharged in a no asset bankruptcy proceeding, there is no Collateral securing such Loan and out of which such Loan may be satisfied, and all other Obligors with respect to the Note, if any, or the obligations contained therein, have similarly been discharged in no asset bankruptcies.

(b)    If the Asset is a Loan, a court of competent jurisdiction had entered a final, non-appealable judgment or order (unless the Transferor has agreed in writing that no appeal need be taken other than a bankruptcy decree or judicial foreclosure order) holding that neither the

28

Borrower nor any other Obligors, owe an enforceable obligation to pay the holder of the Note or its assignees.

(c)    If the Asset is a Loan, the Transferor or the Failed Bank had executed and delivered to the Borrower a release of liability from all obligations under the Note.

(d)    A title defect exists in connection with the property that is the subject of a Contract for Deed, which title defect requires a prior order or judgment of a court to enable the Company to convey title to such property in accordance with the terms and conditions set forth in the Contract for Deed.

(e)    The Transferor is not (and, for the avoidance of doubt, neither the Company nor any Ownership Entity is) the owner of the Asset (or, in the case of a Loan Participation, the Transferor is not the owner of the *pro rata* interest in such Loan Participation set forth on the Asset Schedule) and such is not curable by the Transferor so as to permit ownership of the Asset to be transferred to the Company or an Ownership Entity, as applicable (provided that the fact that a Potentially Defectively Foreclosed Receiver Acquired Property is not in fact owned by the Transferor will not be a basis for the re-purchase of such Defectively Foreclosed Receiver Acquired Property or of the related Underlying Loan).

(f)    There exists an Environmental Hazard, in which case the Company's recourse with respect to this Section 6.1(f) will be conditioned upon:  (i) the presence of the Environmental Hazard not being disclosed in the Asset Documents, Asset File or other material provided by the FDIC to the Private Owner  prior to submission of the Bid; (ii) such Asset having an Adjusted Unpaid Principal Balance greater than $250,000.00; and (iii) the Company delivering, along with the notice required by Section 6.2, the following, each of which must be satisfactory in form and substance to the Transferor in its discretion:

(x)    a Phase I environmental assessment, from a qualified and reputable firm, of the Acquired Property or the Mortgaged Property securing such Loan, as the case may be;

(y)    a Phase II environmental assessment or lead-based paint survey of such Acquired Property or Collateral from a qualified and reputable firm, which assessment must confirm (A) the existence of such Environmental Hazard on such Acquired Property or Mortgaged Property and (B) that the regulator is likely to require remediation of such Environmental Hazard; and

(z)    written certification of the Company under penalty of perjury that no action has been taken by or on behalf of the Company, with respect to a Loan, (A) to initiate foreclosure proceedings or (B) to accept a deed-in-lieu-of-foreclosure in connection with such Loan.

(g)    The Transferor or the Failed Bank, or its respective officers, directors or employees, fraudulently caused the Borrower to receive less than all of the proceeds and benefits of a Note. The Company's recourse with respect to this Section 6.1(g) will be conditioned upon the Company delivering, along with the notice required by Section 6.2, written evidence of such fraud, which evidence must be satisfactory in form and substance to the Transferor in its discretion.

29

(h)     There is instituted after the Cut-Off Date any Action that (i) is asserted by more than one Borrower and any Affiliates (with multiple Borrowers with respect to Loans secured by the same Collateral being considered a single Borrower for purposes of this Section 6.1(h)) with respect to more than one Asset (with multiple Loans secured by the same Collateral being considered a single Asset for purposes of this Section 6.1(h)), (ii) includes allegations of fraud on the part of the Transferor or the Failed Bank in connection with the Transferor's or the Failed Bank's origination of such Assets (or the related Underlying Loans) and (iii) names the Transferor or the Failed Bank as a defendant and that asserts liability on the part of the Transferor or the Failed Bank for which the Company is not liable as assignee, as a matter of Law, with respect to such Assets.

(i)     If an Asset is an SFR Loan, such SFR Loan was a "high cost," "threshold," "covered," "abusive" or "predatory" loan or a similar loan under any state, federal or local Law applicable to the originator of such SFR Loan as of the date of origination (or similarly classified loan using different terminology under a Law enacted to combat predatory lending) unless (x) all requirements of applicable Law with respect to such SFR Loan were met or (y) any violation of such Law is susceptible to cure in a manner that does not materially impact the outstanding principal balance of such SFR Loan as established on the Cut-Off Date.

(j)     If an Asset is an SFR Loan, such SFR Loan is void, voidable, subject to a right of rescission or unenforceable due to a material violation of those requirements of Laws applicable to the originator of such SFR Loan.

Section 6.2.    Notice to Transferor.  The Company must notify the Transferor of each Asset with respect to which the Company seeks to exercise its rights pursuant to Section 6.1.  Such notice must be on the Company's letterhead and include the following information: (a) the Company's tax identification number, (b) the Company's wire transfer instructions, (c) the asset number and other identifying information related to the Asset, (d) the subsection of Section 6.1 pursuant to which the Company is seeking to require the Transferor to repurchase the Asset, (e) a summary of the reasons the Company believes that the Asset should be repurchased by the Transferor and (f) a certification by the Company that the request for repurchase is being submitted in good faith and is complete and accurate in all respects to the best of the Company's knowledge. The notice must be accompanied by evidence supporting the basis for the Transferor's repurchase of such Asset.  Promptly upon request by the Transferor, the Company must supply the Transferor with any additional evidence that the Transferor reasonably may request.  The Transferor will have no obligation to repurchase any Asset pursuant to this Article VI for which notice and all supporting evidence reasonably required by the Transferor have not been received by the Transferor at the addresses specified in or pursuant to the Notice Schedule no later than the first Business Day after the expiration of (x) in the case of any purchase demand pursuant to Sections 6.1(a) through (j), one hundred and eighty calendar days after the Closing Date, or in the case of a Contract for Deed, the first Business Day after the expiration of three hundred and sixty calendar days after the Closing Date, and (y) in the case of any purchase demand with respect to the issuance of an Order, thirty days after the issuance of the Order.

Section 6.3.    Repurchases at Transferor's Option.  Upon written notice, given by the Transferor to the Company no later than the first Business Day after the expiration of one hundred

and eighty calendar days after the Closing Date, that such Asset has been determined by the Transferor (a) to be a Loan Participation or SFR Asset, in each case that the Transferor, in its sole and absolute discretion, desires to repurchase; or (b) in the Transferor's sole and absolute discretion, to be essential to the Transferor because it is (i) made to an officer, director, or other person engaging in the affairs of the Failed Bank, its subsidiaries or affiliates or any related entities of any of the foregoing, (ii) the subject of or potentially the subject of any investigation or legal proceedings, (iii) secured by collateral which also secures any asset owned by the FDIC, in any capacity, or sold to a third party by the FDIC, in any capacity, (iv) a loan (or collateral for any such loan) made to a Person who is an obligor on a loan owned by the FDIC, in any capacity, or sold to a third party by the FDIC, in any capacity, or (v) related to any asset or liability of the FDIC, in any capacity, or transferred to a third party by the FDIC, in any capacity; the Company agrees to immediately sell, assign, transfer, convey and deliver to the Transferor all of the Company's right, title and interest in and to such Asset (together with all documents evidencing or pertaining thereto).

      Section 6.4.   Re-delivery of Notes, Files and Documents.  For any Asset that qualifies for re-purchase pursuant to this Article VI, the Company must:  (a) re-endorse and deliver the Note with respect to any Loan or Underlying Loan to the Transferor (or its designee); (b) assign all Collateral Documents associated with such Asset and reconvey any real property subject to a Contract for Deed or any related Receiver Acquired Property or Company Acquired Property, together with such other documents or instruments as may be necessary or appropriate to convey the Asset (including any related Receiver Acquired Property or Company Acquired Property and including any related equity interests in an Ownership Entity) back to the Transferor (or its designee); (c) deliver to the Transferor (or its designee) the Asset File, along with any additional records compiled or accumulated by the Company pertaining to the Asset; (d) take such actions as are necessary, or as the Transferor reasonably may specify, (x) to transfer from the Company to the Transferor any litigation (including any Assumed Closing Date Asset Litigation) or bankruptcy action involving the subject Asset (including to transfer from the Company to the Transferor sole control over such litigation or bankruptcy action), including substituting the duties of the Company for the Transferor and the Transferor for the Company, and with respect to the Affidavit and Assignment of Claim, the form of which is attached to this Agreement as Attachment D, substituting the duties of the Assignor (as such term is defined therein) for the Assignee (as such term is defined therein) and the Assignee for the Assignor, and (y) to re-transfer to the Transferor any rights transferred to the Company pursuant to the first sentence of Section 4.7; (e) transfer to the Transferor any positive escrow balances held in the Escrow Accounts with respect to such Asset, without offset against any negative escrow balances; and (f) deliver to the Transferor (or its designee) a certification, notarized and executed under penalty of perjury by a duly authorized representative of the Company, certifying that (i) as of the date of repurchase by the Transferor none of the conditions relieving the Transferor of its obligation to repurchase the Asset as specified in Section 6.5 has occurred and (ii) the Company has complied with the requirements of clauses (a) through (e) of this sentence.  The documents evidencing the conveyance of the Asset to the Transferor will be substantially the same as those executed pursuant to Article III of this Agreement to convey the Asset to the Company.  In all cases in which the Company recorded or filed among public records any document or instrument evidencing a transfer of the Asset to the Company, the Company must cause to be recorded or filed among such records a similar document or instrument evidencing the reconveyance of the Asset to the Transferor.  Upon compliance by

31

the Company with the provisions of this Section 6.4 above, the Transferor will pay to the Company the Repurchase Price, and the Repurchase Price will be deposited into the Collection Account (and such Repurchase Price will constitute Asset Proceeds for purposes of the Custodial and Paying Agency Agreement). The Company must comply with the last sentence of Section 4.7 (applied *mutatis mutandis*) with respect to any Asset repurchased pursuant to this Section 6.4.

Section 6.5. <u>Waiver of Company's Repurchase Option</u>. The Transferor will be relieved of its obligation to repurchase any Asset for any reason set forth in Section 6.1 if the Company: (a) except in the case of the permanent refinance of a Loan in connection with the final Authorized Funding Draw with respect to such Loan, modifies any of the terms of the Loan (including the terms of any Collateral Document or Contract for Deed); (b) exercises forbearance with respect to any scheduled payment on the Loan; (c) accepts or executes new or modified lease documents assigned by the Transferor to the Company; (d) sells, assigns or transfers the Asset or any interest therein; (e) (i) fails to comply with the LLC Operating Agreement in the maintenance, collection, servicing and preservation of the Asset, including delinquency prevention, collection procedures and protection of collateral as warranted, or (ii) without limiting the generality of clause (i), settles or compromises (without the Transferor's written consent), or fails diligently to conduct (including if relevant to defend), any litigation or bankruptcy action described in Section 6.4(d) with respect to the Asset; (f) initiates any litigation in connection with the Asset or the Mortgaged Property securing the Asset other than litigation to force payment or to realize on the Collateral securing the Asset; (g) completes any action with respect to foreclosure on, or accepts a deed-in-lieu of foreclosure for, any Collateral securing the Asset; (h) causes, by action or inaction, the priority of title to the Asset, Mortgaged Property and other security for the Asset to be less than that conveyed by the Transferor; (i) causes, by action or inaction, the security for the Asset to be different than that conveyed by the Transferor, except as may be required by the terms of the Collateral Documents; (j) causes, by action or inaction, a claim of third parties to arise against the Company that, as a result of purchase under this Agreement, may be asserted against the Transferor; (k) causes to arise, by action or inaction, a Lien of any nature to encumber the Asset; (l) is the Borrower or any other Obligor, or any Affiliate thereof, with respect to such Asset; or (m) makes any disbursement of principal or otherwise incrementally funds any Loan. For the avoidance of doubt, and without limitation of clause (g) of the preceding sentence, it is understood and agreed that the Transferor will not have any obligation pursuant to Section 6.1 to repurchase any Acquired Property that, as of the Closing Date, constituted Collateral (and was not Acquired Property).

## ARTICLE VII

### Miscellaneous Provisions

Section 7.1. <u>Common Terms</u>. The Common Terms apply to this Agreement, except that (a) Sections 2.1(d) (Binding Effect; Assignment), 2.1(i) (Entire Agreement) and 2.1(k) (Amendments and Waivers) of such Common Terms do not apply to this Agreement, and (b) in the event of a conflict between any provision of the Common Terms and any provision in this Agreement, the terms of this Agreement will prevail.

Section 7.2.    <u>Waivers; Amendment and Assignment</u>.

(a)    No provision of this Agreement may be amended or waived except in writing executed by all of the parties to this Agreement.  This Agreement and the terms, covenants, conditions, provisions, obligations, undertakings, rights and benefits set forth in this Agreement will be binding upon, and will inure to the benefit of, the undersigned parties and their respective heirs, executors, administrators, representatives, successors and permitted assigns, and (except as specified in <u>Section 7.2(f)</u>) no other Person or Persons (including Borrowers or any co-lender or other Person with any interest in or liability under any of the Assets) will have any rights or remedies pursuant to or by reason of this Agreement.  Notwithstanding the foregoing, this Agreement may not be transferred or assigned by the Company without the express prior written consent of the Transferor, and any attempted assignment without such consent will be void *ab initio*.

(b)    [intentionally omitted].

(c)    [intentionally omitted].

(d)    [intentionally omitted].

(e)    [intentionally omitted].

(f)    The FDIC is hereby constituted an express third party beneficiary of this Agreement with respect to any provisions of this Agreement which expressly grant rights or benefits to such Person in accordance with <u>Section 2.1(p)</u> of the Common Terms.

Section 7.3.    <u>Entire Agreement</u>.  This Agreement and the Transaction Documents contain the entire agreement between the Transferor and the Company and its Affiliates with respect to the subject matter hereof and supersede any and all other prior agreements, whether oral or written; <u>provided</u>, <u>however</u>, that any confidentiality agreement between the FDIC and the Private Owner or any Affiliates of the Private Owner (including by way of joinder) with respect to the transaction that is the subject of this Agreement and the Transaction Documents (including the Confidentiality Agreement) will remain in full force and effect to the extent provided therein.  In the event of a conflict between the terms of this Agreement and the terms of any Transfer Document or other document or instrument executed in connection herewith or in connection with the transactions contemplated hereby, including any translation into a foreign language of this Agreement for the purpose of any Transfer Document, or any other document or instrument executed in connection herewith which is prepared for notarization, filing or any other purpose, the terms of this Agreement will control, and furthermore, the terms of this Agreement will in no way be or be deemed to be amended, modified or otherwise affected in any manner by the terms of such Transfer Document or other document or instrument.

Section 7.4.    <u>Right to Specific Performance</u>.    THE COMPANY HEREBY ACKNOWLEDGES AND AGREES THAT THE DAMAGES TO BE INCURRED BY THE TRANSFEROR AS A RESULT OF THE COMPANY'S BREACH OF THIS AGREEMENT WILL BE DIFFICULT, IF NOT IMPOSSIBLE, TO ASCERTAIN, THAT DAMAGES WILL

NOT BE AN ADEQUATE REMEDY AND THAT ANY BREACH OR THREATENED BREACH OF ANY OF THE PROVISIONS OF THIS AGREEMENT BY THE COMPANY MAY CAUSE IMMEDIATE IRREPARABLE HARM FOR WHICH THERE MAY BE NO ADEQUATE REMEDY AT LAW. ACCORDINGLY, THE PARTIES AGREE THAT, IN THE EVENT OF ANY SUCH BREACH OR THREATENED BREACH, THE TRANSFEROR WILL BE ENTITLED TO (I) IMMEDIATE AND PERMANENT EQUITABLE RELIEF (INCLUDING INJUNCTIVE RELIEF AND SPECIFIC PERFORMANCE OF THE PROVISIONS OF THIS AGREEMENT) FROM A COURT OF COMPETENT JURISDICTION (IN ADDITION TO ANY OTHER REMEDY TO WHICH IT MAY BE ENTITLED AT LAW OR IN EQUITY), AND (II) SOLELY IN THE CASE OF A BREACH OF SECTION 4.15 HEREOF, LIQUIDATED DAMAGES IN THE AMOUNT OF $25,000 FOR EACH BREACH OF SUCH SECTION. THE PARTIES AGREE AND STIPULATE THAT THE TRANSFEROR WILL BE ENTITLED TO EQUITABLE (INCLUDING INJUNCTIVE) RELIEF WITHOUT POSTING A BOND OR OTHER SECURITY, AND THE COMPANY FURTHER WAIVES ANY DEFENSE IN ANY SUCH ACTION FOR SPECIFIC PERFORMANCE OR INJUNCTIVE RELIEF THAT A REMEDY AT LAW WOULD BE ADEQUATE AND ANY REQUIREMENT UNDER LAW TO POST SECURITY AS A PREREQUISITE TO OBTAINING EQUITABLE RELIEF. NOTHING CONTAINED IN THIS SECTION WILL BE DEEMED TO LIMIT EITHER PARTY'S RIGHT TO ANY REMEDIES AT LAW, INCLUDING THE RECOVERY OF DAMAGES FOR BREACH OF THIS AGREEMENT.

Section 7.5.    Indemnity.

(a)    The Company must indemnify and hold harmless the Transferor and the FDIC, and their respective Related Persons (all of the foregoing, collectively, the "**Indemnified Parties**"), from and against any and all Losses whatsoever directly or indirectly resulting from, connected with, arising out of or related to (i) any failure by the Company to pay and perform the Obligations when due (including any such failure pursuant to the express provisions of Sections 4.11 and 4.12 hereof permitting the Company to, under circumstances, refrain from performing certain Obligations), (ii) the services (including in any event all Servicing) provided (or caused to be provided) or contemplated to be provided (or to be caused to be provided) by the Transferor and/or any Existing Servicer pursuant to, or as described in, Section 3.3 hereof (including all such services, and in any event all Servicing, provided (or caused to be provided) by the Transferor and/or any Existing Servicer between the Cut-Off Date and the Closing Date) or any action taken or not taken by the Transferor and/or any Existing Servicer, or any Related Person of the Transferor and/or any Existing Servicer, in relation to any of the foregoing, provided that the Company will not be required pursuant to clause (ii) to indemnify or hold harmless any Indemnified Party from any Losses to the extent directly or indirectly resulting from, connected with, arising out of or related to any gross negligence, bad faith or willful misconduct (including any act or omission constituting theft, embezzlement, breach of trust or violation of any Law) on the part of such, or any other, Indemnified Party, (iii) the contents or form of any endorsement or allonge to a Note, Assignment and Lost Instrument Affidavit, Mortgage Assignment, deed, assignment of lease, assignment of Ownership Entity interests, omnibus assignment or other document of assignment, conveyance or transfer used in connection with the transfer to the Company of any Asset, any Collateral or any Collateral Document (or of the Transferor's rights with respect thereto) (x) the form of which was not provided by the Transferor as an attachment hereto (including any Losses

34

whatsoever directly or indirectly resulting from, connected with, arising out of or related to any claim relating to the adequacy or inadequacy of any such document or instrument for the purposes thereof) or (y) that does not comply with the requirements for recordation or filing thereof in the relevant jurisdiction or otherwise is not sufficient under applicable Law to reflect the transfer intended to be effected thereby or otherwise does not comply with applicable Law (regardless of whether or not the form thereof was provided by the Transferor as an attachment hereto), or (iv) any use of any FDIC Power of Attorney (x) in any manner not expressly permitted by the terms of such FDIC Power of Attorney, (y) without limiting the generality of <u>clause (x)</u>, in violation of any restrictions on the use thereof set forth in such FDIC Power of Attorney or any Transaction Document (or any other agreement between the FDIC and the Company) or otherwise communicated to the Company by the FDIC in writing or (z) in any manner constituting, or as part of or otherwise in connection with any conduct or course of conduct constituting, bad faith, willful misconduct, theft, embezzlement, breach of trust or any violation of any Law.  Each Indemnified Party must deliver notice, of any claim or demand made by any Person against such Indemnified Party for which such Indemnified Party may seek indemnification under this <u>Section 7.5(a)</u> (a "**Third Party Claim**"), to the Company promptly after receipt by such Indemnified Party of written notice of the Third Party Claim, describing such Third Party Claim in reasonable detail. The failure or delay to provide such notice, however, will not release the Company from any of its obligations under this <u>Section 7.5(a)</u> except to the extent that it is materially prejudiced by such failure or delay.

(b)    If for any reason the indemnification provided for herein is unavailable or insufficient to hold harmless the Indemnified Parties, the Company must contribute to the amount paid or payable by the Indemnified Parties as a result of the Losses of the Indemnified Parties in such proportion as is appropriate to reflect the relative fault of the Indemnified Parties, on the one hand, and the Company and its Related Persons, on the other hand, in connection with the matters that are the subject of such Losses.

(c)    If the Company confirms in writing to the Indemnified Party within fifteen days after receipt of a Third Party Claim the Company's responsibility to indemnify and hold harmless the Indemnified Party therefor, the Company may elect to assume control over the compromise or defense of such Third Party Claim at the Company's sole expense and with counsel selected by the Company, which counsel must be reasonably satisfactory to the Indemnified Party, <u>provided</u> that (i) the Indemnified Party may, if such Indemnified Party so desires, employ counsel at such Indemnified Party's own expense to assist in the handling (but not control the defense) of any Third Party Claim; (ii) the Company must keep the Indemnified Party advised of all material events with respect to any Third Party Claim; (iii) the Company must obtain the prior written approval of the Indemnified Party before ceasing to defend against any Third Party Claim or entering into any settlement, adjustment or compromise of such Third Party Claim involving injunctive or similar equitable relief being imposed upon the Indemnified Party or any of its Affiliates; and (iv) the Company will not, without the prior written consent of the Indemnified Party, settle or compromise or consent to the entry of any judgment in any pending or threatened action in respect of which indemnification may be sought hereunder (whether or not any such Indemnified Party is a party to such action), unless such settlement, compromise or consent by its terms obligates the Company to satisfy the full amount of the liability in connection with such

35

Third Party Claim and includes an unconditional release of such Indemnified Party from all liability arising out of such Third Party Claim.

(d)    Notwithstanding anything contained herein to the contrary, the Company will not be entitled to control (and if the Indemnified Party so desires, it will have sole control over) the defense, settlement, adjustment or compromise of (but the Company will nevertheless be required to pay all Losses incurred by the Indemnified Party in connection with such defense, settlement or compromise): (i) any Third Party Claim that seeks an order, injunction or other equitable relief against the Indemnified Party or any of its Affiliates; (ii) any action in which both the Company (and/or the Private Owner (in any capacity, including as the Manager)) or any Affiliate of the Company (and/or the Private Owner), on one hand, and the Indemnified Party, on the other hand, are named as parties and either the Company (and/or the Private Owner) (or such Affiliate of the Company (and/or the Private Owner)) or the Indemnified Party determines with advice of counsel that there may be one or more legal defenses available to it that are different from or additional to those available to the other party or that a conflict of interest between such parties may exist in respect of such action; and (iii) any matter that raises or implicates any issue relating to any power, right or obligation of the Transferor or the FDIC under any Law.  In addition to the foregoing, if the Company elects not to assume the compromise or defense of any Third Party Claim, fails to timely and properly notify the Indemnified Party of its election as herein provided, or, at any time after assuming such defense, fails to diligently defend against such Third Party Claim in good faith, the Indemnified Party may pay, settle, compromise or defend against such Third Party Claim (but the Company will nevertheless be required to pay all Losses incurred by the Indemnified Party in connection with such payment, settlement, compromise or defense).  In connection with any defense of a Third Party Claim (whether by the Company or the Indemnified Party), all of the parties hereto must, and must cause their respective Affiliates to, cooperate in the defense or prosecution thereof and to in good faith retain and furnish such records, information and testimony, and attend such conferences, discovery proceedings, hearings, trials and appeals, as may be reasonably requested by a party hereto in connection therewith.

(e)    To the extent that an Indemnified Party is entitled to indemnification both under this Section 7.5 and under Section 4.6 of the LLC Operating Agreement, (i) such Indemnified Party in its discretion may proceed under either or both of such provisions, (ii) to the extent that such Indemnified Party proceeds under this Section 7.5 (whether solely or in addition to proceeding under Section 4.6 of the LLC Operating Agreement), as between the Company and the Private Owner (and solely as between the Company and the Private Owner), the Private Owner will be liable for any amount for which the Company may be liable to such Indemnified Party pursuant to this Section 7.5 with respect to such indemnification claim, (iii) to the extent that such Indemnified Party proceeds under both this Section 7.5 and Section 4.6 of the LLC Operating Agreement, Sections 4.6(c) and (d) of the LLC Operating Agreement will apply, and Sections 7.5(c) and (d) will not apply, to such indemnification claim, and (iv) to the extent that such Indemnified Party proceeds solely under this Section 7.5, the Private Owner will have the right (subject to Section 7.5(d)) to exercise the rights of the Company pursuant to Section 7.5(c) with respect to such indemnification claim (in which event the Private Owner will be obligated to perform all the obligations of the Company pursuant to Section 7.5(c) with respect to such indemnification claim).

(f)      For the avoidance of doubt, each of the Transferor and the FDIC may enforce the provisions of this <u>Section 7.5</u> (and any other indemnity set forth in this Agreement) with respect to any Related Person in relation to itself (in its own name and/or in the name of and/or otherwise on behalf of such other Related Person).

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

37

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed as of the day and year first above written.

**TRANSFEROR**:

**FEDERAL DEPOSIT INSURANCE CORPORATION IN ITS CAPACITY AS RECEIVER FOR SIGNATURE BRIDGE BANK, N.A.**

By: _____

Name: Colette Campagna

Title: Senior Asset Marketing Specialist

**COMPANY**:

**SIG RCRS C MF 2023 Venture LLC**

By: Federal Deposit Insurance Corporation in its capacity as Receiver for Signature Bridge Bank, N.A., as Sole Member and Manager

By: _____

Name: Colette Campagna

Title: Senior Asset Marketing Specialist

[Signature Page to Asset Transfer Agreement]

ATTACHMENT A
**to**
**Asset Transfer Agreement**

**ASSET SCHEDULE AND LOAN PERFORMANCE AT CUT-OFF DATE REPORT**



A-1

ATTACHMENT B
**to**
**Asset Transfer Agreement**

**PRIVATE OWNER INTEREST ASSET VALUE SCHEDULE**

████████████

B-1

ATTACHMENT C
**to**
**Asset Transfer Agreement**

**OWNERSHIP ENTITY AND RECEIVER ACQUIRED PROPERTY SCHEDULE**

1.     **Ownership Entities** (transferred to the Company on the Closing Date): None.

2.     **Owned Real Estate** (to be transferred to the designated Ownership Entity): None.

3.     **Potentially Defectively Foreclosed Receiver Acquired Property**: None.

C-1

ATTACHMENT D$^2$
**to**
**Asset Transfer Agreement**

**(For use with Assets in Bankruptcy)**

*(Note to Preparer: When preparing the actual Affidavit and Assignment, delete this instruction and the reference to Attachment D above.)*

State of _____        §
                                 §
County of _____       §

**AFFIDAVIT AND ASSIGNMENT OF CLAIM**

The undersigned, being first duly sworn, deposes and states as follows:

Federal Deposit Insurance Corporation in its capacity as Receiver for Signature Bridge Bank, N.A. ("Assignor"), acting by and through its duly authorized officers and agents, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged does hereby sell, transfer, assign and set over to SIG RCRS C MF 2023 Venture LLC ("Assignee") of 220 E 42nd St 16th floor, New York, NY 10017, and its successors and assigns, all of the Assignor's interest in any claim in the bankruptcy case commenced by or against *{insert Obligor's name}*("Obligor") in the *{insert appropriate U. S. Bankruptcy Court, including the district of the court, such as for the Western District of Texas,* being designated as Case Number *{insert docket number assigned case}* ("Bankruptcy Claim"), or such part of said Claim as is based on the promissory note of *{insert the names of the makers of the note exactly as they appear on the note}*, dated *{insert the date the note was made}*, and made payable to *{insert the name of the payee on the note exactly as it appears on the note}*; provided, however, that this assignment is made pursuant to the terms and conditions as set forth in that certain Asset Transfer Agreement between the Assignor, the Assignee and others dated December 15, 2023 (the "Agreement").

For purposes of Rule 3001 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rule 3001"), this assignment and affidavit represent the unconditional transfer of the Bankruptcy Claim or such part of the Claim as is based on the promissory note or notes above and constitute the statement of the transferor acknowledging the transfer and stating the consideration therefore as required by Bankruptcy Rule 3001.

This transfer was not for the purpose of the enhancement of any claim in a pending bankruptcy. The transfer of the debt was pursuant to the Agreement, through which numerous

---

$^2$   Form to be adjusted, where relevant, to include, or as a separate form to cover, the transfer from the Prior Transferor to Transferor.

D-1

debts were sold; no specific amount of the total consideration was assigned to the debt that forms the basis of claim.

This assignment also evidences the unconditional transfer of the Assignor's interest in any security held for the claim.

IN WITNESS WHEREOF, the Assignor has caused this Affidavit and Assignment of Claim to be executed this __ day of____, ____.

FEDERAL DEPOSIT INSURANCE
CORPORATION IN ITS CAPACITY AS
RECEIVER FOR SIGNATURE BRIDGE BANK,
N.A. [AND FOR SIGNATURE BANK, NEW
YORK, NEW YORK]

By: _____

Name: _____

Title: _____

**ACKNOWLEDGMENT**

STATE OF _____    §
                                    §
COUNTY OF _____    §

Before me, the undersigned authority, a Notary Public in and for the county and state aforesaid, on this day personally appeared _____, known to me to be the person whose name is subscribed to the foregoing instrument, as Attorney-in-Fact of the Federal Deposit Insurance Corporation in its capacity as Receiver for Signature Bridge Bank, N.A., acting in the capacity stated above, and acknowledged to me that s/he executed the same as the act of the Federal Deposit Insurance Corporation in its capacity as Receiver for Signature Bridge Bank, N.A., for the purposes and consideration therein expressed, and in the capacity therein stated.

Given under my hand and seal of office on this the __ day of____, ____.

_____

Notary Public

[SEAL]                              My Commission expires: _____

D-2

SIG RCRS C MF 2023 Venture LLC
Asset Transfer Agreement
Version 08-2022 (Standard)

ATTACHMENT E[3]
**to**
**Asset Transfer Agreement**


*(Note to Preparer: When preparing an actual Allonge, delete this instruction and the reference to Attachment E above.)*


**ALLONGE**


THIS ALLONGE IS TO BE ATTACHED TO AND MADE AN INTEGRAL PART of the following instrument:

Note [Insert proper name of Note]
Dated:  [Insert Date of Execution of Note]
Payable by _____ [Insert Name of Borrower], a _____
[Insert State of Formation] [Kind of Entity] [If known]
Payable to the Order of: [Insert name of Original Payee]
Original Principal Amount: _____ Dollars [Insert Original Principal
Amount in words] ($_____) [Insert amount in numerals.]

PAY TO THE ORDER OF SIG RCRS C MF 2023 VENTURE LLC, A DELAWARE LIMITED LIABILITY COMPANY, WITHOUT RECOURSE AND WITHOUT REPRESENTATION OR WARRANTY, EXPRESS, IMPLIED OR BY OPERATION OF LAW, OF ANY KIND OR NATURE WHATSOEVER.

**FEDERAL DEPOSIT INSURANCE CORPORATION IN ITS CAPACITY AS RECEIVER FOR SIGNATURE BRIDGE BANK, N.A.**


By: _____
Name: _____
Title: _____

Dated as of [Insert Date]

---

[3]  Form to be adjusted, where relevant, to include, or as a separate form to cover, the transfer from the Prior Transferor to Transferor.

SIG RCRS C MF 2023 Venture LLC
Asset Transfer Agreement
Version 08-2022 (Standard)

ATTACHMENT F[4]
**to**
**Asset Transfer Agreement**

*(Note to Preparer: When preparing the actual Affidavit delete this instruction and the reference to Attachment F above.)*

STATE OF _____        §
                                §
COUNTY OF _____         §

## ASSIGNMENT AND LOST INSTRUMENT AFFIDAVIT

Before me, the undersigned authority, personally appeared  _____, who upon being duly cautioned and sworn, deposes and says, to the best of his/her knowledge, as follows:

1.      That s/he is the _____ for the Federal Deposit Insurance Corporation in its capacity as Receiver for Signature Bridge Bank, N.A., whose address is 1601 Bryan Street, Dallas, Texas 75201 (the "Transferor").

2.      That at the time of the preparation of transfer to SIG RCRS C MF 2023 Venture LLC], (the "Company"), the Transferor was the owner of that certain loan, obligation or interest in a loan or obligation evidenced by a promissory note, evidencing an indebtedness or evidencing rights in an indebtedness (the "Instrument"), as follows:

Loan Number: _____

Name of Maker: _____

Original Principal Balance: _____

Date of Instrument: _____

3.      That the original Instrument has been lost or misplaced.  The Instrument was not where it was assumed to be, and a search to locate the Instrument was undertaken, without results. Prior to the transfer to the Company the Instrument had not been assigned, transferred, pledged or hypothecated.

4.      That if the Transferor subsequently locates the Instrument, the Transferor must use reasonable efforts to provide written notice to the Company and deliver and endorse the Instrument

---

[4]    Form to be adjusted, where relevant, to include, or as a separate form to cover, the Prior Transferor.

F-1

to the Company in accordance with written instructions received from the Company (or such other party designated in writing by the Company).

5.    That the purpose of this affidavit is to establish such facts. This affidavit does not confer any rights or benefits, causes or claims, representations or warranties (including, without limitation, regarding ownership or title to the Instrument or the obligations evidenced thereby) upon the Company, its successors or assigns.   All such rights, benefits, causes or claims, representations and warranties (if any) are as set forth in the Asset Transfer Agreement between the Company and the Transferor dated as of December 15, 2023 (the "Transfer Agreement").

6.    That pursuant to the terms and conditions of the Transfer Agreement, the Instrument (including, without limitation, any and all rights the Transferor might have to enforce payment and performance of the Instrument, including any such rights under § 3-309 or § 3-804, as applicable, of the Uniform Commercial Code) is hereby assigned effective as of the date hereof, without recourse, representation or warranty, to the Company.  A copy of the Instrument is attached to this affidavit, if available.

FEDERAL DEPOSIT INSURANCE CORPORATION  IN ITS CAPACITY AS RECEIVER FOR SIGNATURE BRIDGE BANK, N.A.


By: _____
Name: _____
Title: _____


Signed and sworn to before me this _____day of _____, 20_____.



_____
Notary Public

[SEAL]                                          My Commission expires: _____

F-2

ATTACHMENT G-1[5]
**to**
**Asset Transfer Agreement**

Upon recordation, return to:
[Insert name and address of Person to whom recorded original Assignment is to be returned.  *Note to preparer, delete this instruction and the reference to Attachment G-1 above upon completion of documentation and prior to submission for execution.*]

Name:
Address:

_____

_____

Tax Map No. or Tax Parcel Identification No.:  _____
[Insert if local recording office requires.] *[Note to preparer, delete the instruction upon completion of documentation and prior to submission for execution.]*

## ASSIGNMENT OF REAL ESTATE MORTGAGE
### (Book _____, Page ____)

### RECITALS

[On March 12, 2023, Signature Bank, New York, New York ("Signature Bank") was closed by the New York State Department of Financial Services, and the Federal Deposit Insurance Corporation (acting in any capacity, the "FDIC") was appointed as receiver for Signature Bank ("FDIC as Receiver of Signature Bank").  By operation of law, FDIC as Receiver of Signature Bank assumed from the closed Signature Bank the Transferred Assets (as defined below).

The Transferred Assets were transferred by FDIC as Receiver for Signature Bank to Signature Bridge Bank, N.A. ("Signature Bridge Bank" or the "Failed Bank", as the context may require), which assumed the Transferred Assets.]

On March 20, 2023, Signature Bridge Bank[, N.A. ("Signature Bridge Bank" or the "Failed Bank", as the context may require)] was closed by the Office of the Comptroller of the Currency, and the FDIC was appointed as receiver for Signature Bridge Bank ("FDIC as Receiver of Signature Bridge Bank").  By operation of law, FDIC as Receiver of Signature Bridge Bank assumed the Transferred Assets [(as defined below)].

_____

[5]    Options to be selected, and form to be adjusted, as applicable, to include (or, if necessary, to create a separate form to cover) the transfer from the Prior Transferor to Transferor.

G-1-1

NOW, THEREFORE, in consideration of the foregoing, it is agreed as follows:

THE FDIC, AS RECEIVER FOR THE FAILED BANK, at 1601 Bryan Street, Dallas, Texas 75201 (hereinafter referred to as "Assignor"), for value received, does by these presents, grant, bargain, sell, assign, transfer and set over to SIG RCRS C MF 2023 Venture LLC, a Delaware limited liability company, its successors and assigns, at 220 E 42nd St 16th floor, New York, NY 10017, all right, title and interest in and to those documents listed immediately below (the "Transferred Assets"), which relate to the property described on the attached Exhibit A:

Note and Real Estate Mortgage, each dated [Insert Date], executed by [Insert Name of Borrower], a [Insert Kind of Entity], each being in the original principal sum of [Write out amount] and __/100 Dollars ($[Insert Numerals]) and which Note was made payable to [Insert name of original lender] and which Mortgage was recorded on [Insert Date], in Book _____, Page _____ with the [Register of Deeds, [Insert] County, State of [Insert]] ("Register's Office"), as the same may have been assigned, amended, supplemented, restated or modified.

[Insert the following paragraph, and repeat if applicable, only if original real estate mortgage was originated by and executed in favor of another lender and then transferred to Signature Bridge Bank or Signature Bank, New York, New York. *Note to preparer, delete this instruction upon completion of documentation and prior to submission for execution*:

Such Note and Mortgage were assigned by [Name of original lender] to [Signature Bank, New York, New York/Signature Bridge Bank, N.A.] pursuant to that certain Assignment of Real Estate Mortgage dated [Insert Date] and recorded on [Insert Date] in Book _____, Page _____ in the Register's Office ("Assignment").]

[Insert the following paragraph only if the Real Estate Mortgage was modified or amended and a document was recorded to reflect the modification and amendment. *Note to preparer, delete this instruction upon completion of documentation and prior to submission for execution:*

Such Note and Real Estate Mortgage were modified pursuant to that certain [Insert Correct Name of Document, e.g., Modification and Ratification of Note and Real Estate Mortgage Agreement] dated [Insert Date] and recorded on [Insert Date] in Book _____, Page _____ in the Register's Office ("Modification").]

TO HAVE AND TO HOLD THE SAME UNTO SAID SIG RCRS C MF 2023 Venture LLC, ITS SUCCESSORS AND ASSIGNS.

THIS ASSIGNMENT IS MADE WITHOUT RECOURSE, AND WITHOUT REPRESENTATION OR WARRANTY, EXPRESS, IMPLIED, OR BY OPERATION OF LAW, OF ANY KIND OR NATURE WHATSOEVER, BY THE FDIC IN ITS CAPACITY AS RECEIVER FOR SIGNATURE BRIDGE BANK, N.A.[, AS RECEIVER FOR SIGNATURE BANK, NEW YORK, NEW YORK] OR IN ITS CORPORATE CAPACITY. THE LOAN IS

G-1-2

CONVEYED "AS IS" AND "WITH ALL FAULTS," WITHOUT ANY REPRESENTATION OR WARRANTY WHATSOEVER, INCLUDING AS TO COLLECTABILITY, ENFORCEABILITY, VALUE OF COLLATERAL, ABILITY OF ANY OBLIGOR TO REPAY, CONDITION, FITNESS FOR ANY PARTICULAR PURPOSE, MERCHANTABILITY OR ANY OTHER WARRANTY, EXPRESS, IMPLIED OR BY OPERATION OF LAW, BY ANY PERSON, INCLUDING THE FDIC OR ITS OFFICERS EMPLOYEES, AGENTS OR CONTRACTORS.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

G-1-3

IN WITNESS WHEREOF, the Federal Deposit Insurance Corporation in its capacity as Receiver for [Signature Bridge Bank, N.A.] has caused this instrument to be executed this _____ day of _____, 20____, effective as of the _____ day of _____, 20____.


ASSIGNOR:

Signed, sealed and delivered                       FEDERAL DEPOSIT INSURANCE
in the presence of:                                CORPORATION IN ITS CAPACITY AS
                                                   RECEIVER FOR [SIGNATURE BRIDGE
                                                   BANK, N.A.]


ATTEST: _____          By:
Print Name:_____          _____
Title:_____          Name:
                                         _____

                                         Title:
                                         _____

                                         _____

_____          SEAL
Witness #1
Print Name:_____


_____
Witness #2
Print Name:_____


*Note: State law has various execution requirements, including attestations or witnesses or both. Preparer delete foregoing note once local requirements are determined.*


G-1-4

<u>ACKNOWLEDGMENT</u>

**[UNIVERSAL FORM OF ACKNOWLEDGMENT]** [*Note to Preparer, delete the designation, Universal Form of Acknowledgement prior to execution.  Use only one of the two acknowledgements:  this designation or the California form.*]

STATE OF _____                    )
                                                )     SS:
COUNTY OF _____                     )


On this _____ day of _____, 20__, before me personally appeared _____, known to me or proved to me on the basis of satisfactory evidence to be the person(s) who executed the foregoing instrument, and he/she thereupon duly acknowledged to me that he/she executed the same to be his/her free act and deed.

WITNESS my hand and official seal.


_____
Name of Notary:_____
My commission expires:_____

G-1-5

**[CALIFORNIA FORM OF ACKNOWLEDGMENT]** *Note to Preparer, delete the designation, California Form of Acknowledgement prior to execution if you use this acknowledgement. Use only one of the two acknowledgements: this designation or the Universal form.*]

STATE OF CALIFORNIA            )
                                          )     SS:
COUNTY OF _____    )

On _____ before me, (here insert name and title of the officer), personally appeared _____ who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)

G-1-6

**EXHIBIT A**
**(Legal Description)**

SIG RCRS C MF 2023 Venture LLC
Asset Transfer Agreement
Version 08-2022 (Standard)

ATTACHMENT G-2[6]
**to**
**Asset Transfer Agreement**

Upon recordation, return to:
[Insert name and address of Person to whom of recorded original Assignment is to be returned. *Note to preparer, delete this instruction and the reference to Attachment G-2 above upon completion of documentation and prior to submission for execution.*]

Name:_____

Address:

_____

_____

Tax Map No. or Tax Parcel Identification No.: _____
[Insert if local recording office requires.] *[Note to preparer, delete the instruction upon completion of documentation and prior to submission for execution.]*

**ASSIGNMENT OF REAL ESTATE DEED OF TRUST**
**(Book _____, Page ____)**

RECITALS

[On March 12, 2023, Signature Bank, New York, New York ("Signature Bank") was closed by the New York State Department of Financial Services, and the Federal Deposit Insurance Corporation (acting in any capacity, the "FDIC") was appointed as receiver for Signature Bank ("FDIC as Receiver of Signature Bank").  By operation of law, FDIC as Receiver of Signature Bank assumed from the closed Signature Bank the Transferred Assets (as defined below).

The Transferred Assets were transferred by FDIC as Receiver for Signature Bank to Signature Bridge Bank, N.A. ("Signature Bridge Bank" or the "Failed Bank", as the context may require), which assumed the Transferred Assets.]

On March 20, 2023, Signature Bridge Bank [, N.A. ("Signature Bridge Bank" or the "Failed Bank", as the context may require)] was closed by the Office of the Comptroller of the Currency, and the FDIC was appointed as receiver for Signature Bridge Bank ("FDIC as Receiver of Signature Bridge Bank").  By operation of law, FDIC as Receiver of Signature Bridge Bank assumed the Transferred Assets [(as defined below)].]

---

[6]  Options to be selected, and form to be adjusted, as applicable, to include (or, if necessary, to create a separate form to cover) the transfer from the Prior Transferor to Transferor.

G-2-1

NOW, THEREFORE, in consideration of the foregoing, it is agreed as follows:

THE FDIC, AS RECEIVER FOR THE FAILED BANK, at 1601 Bryan Street, Dallas, Texas 75201 (hereinafter referred to as "Assignor"), for value received, does by these presents, grant, bargain, sell, assign, transfer and set over to SIG RCRS C MF 2023 Venture LLC, a Delaware limited liability company, its successors and assigns, at [_____], all right, title and interest in and to those documents listed immediately below (the "Transferred Assets"), which relate to property described on the attached Exhibit A:

> Real Estate Deed of Trust executed by [Insert name of Borrower], a [Insert Kind of Entity], organized and existing under the laws of [Insert State], dated [Insert Date of Execution], in the original principal sum of [Insert Amount in words] and __/100 Dollars ($[Insert Numbers]) of Deed of Trust in favor of [Name of Trustee], a resident of _____, _____ [if more than one Trustee and [Name of Trustee], a resident of _____, _____,] Trustee [or Trustees] for, and on behalf of, Signature Bank, New York, New York (the "Mortgage") which Mortgage was recorded on [Insert Date], in the Clerk's Office [of the Circuit Court of the City of _____, or of the Court of _____] [State] ("Clerk's Office") in Book _____, Page _____, as the same may have been assigned, amended, supplemented, restated or modified.

> [Insert the following paragraph, and repeat if applicable, only if original real estate deed of trust was originated by and executed in favor of another lender and then transferred to Signature Bridge Bank or Signature Bank, New York, New York. *Note to preparer, delete this instruction upon completion of documentation and prior to submission for execution*:

> Such Mortgage was assigned by [original lender] to [Signature Bank, New York, New York/ Signature Bridge Bank, N.A.] pursuant to that certain Assignment of Real Estate Deed of Trust dated [Insert Date] ("Assignment"), which Assignment was recorded on [Insert Date] in the Clerk's Office in Book _____, Page _____.]

> [Insert the following paragraph only if the Real Estate Deed of Trust was modified or amended and a document was recorded to reflect the modification and amendment. *Note to preparer, delete this instruction upon completion of documentation and prior to submission for execution*:

> The Mortgage was modified by that certain [Insert Correct Name of Document, e.g., Modification and Ratification of Note and Real Estate Deed of Trust] dated _____ ("Modification"), which Modification was recorded on _____ in the Clerk's Office in Book _____, Page _____.]

TO HAVE AND TO HOLD THE SAME UNTO SAID SIG RCRS C MF 2023 Venture LLC], ITS SUCCESSORS AND ASSIGNS.

G-2-2

THIS ASSIGNMENT IS MADE WITHOUT RECOURSE, AND WITHOUT REPRESENTATION OR WARRANTY, EXPRESS, IMPLIED OR BY OPERATION OF LAW, OF ANY KIND OR NATURE WHATSOEVER, BY THE FDIC IN ITS CAPACITY AS RECEIVER FOR SIGNATURE BRIDGE BANK, N.A.[, AS RECEIVER FOR SIGNATURE BANK, NEW YORK, NEW YORK] OR IN ITS CORPORATE CAPACITY.  THE LOAN, AS ASSIGNED AND MODIFIED, IS CONVEYED "AS IS" AND "WITH ALL FAULTS," WITHOUT ANY REPRESENTATION OR WARRANTY WHATSOEVER, INCLUDING AS TO COLLECTABILITY, ENFORCEABILITY, VALUE OF COLLATERAL, ABILITY OF ANY OBLIGOR TO REPAY, CONDITION, FITNESS FOR ANY PARTICULAR PURPOSE, MERCHANTABILITY OR ANY OTHER WARRANTY, EXPRESS, IMPLIED OR BY OPERATION OF LAW, BY ANY PERSON, INCLUDING THE FDIC OR ITS OFFICERS, EMPLOYEES, AGENTS OR CONTRACTORS.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

SIG RCRS C MF 2023 Venture LLC
Asset Transfer Agreement
Version 08-2022 (Standard)

IN WITNESS WHEREOF, FEDERAL DEPOSIT INSURANCE CORPORATION IN ITS CAPACITY AS RECEIVER FOR SIGNATURE BRIDGE BANK, N.A. has caused this instrument to be executed this _____ day of _____, 20____, to be effective as of the _____ day of _____, 20____.

<u>ASSIGNOR</u>:

Signed, sealed and delivered
in the presence of:

FEDERAL DEPOSIT INSURANCE
CORPORATION IN ITS CAPACITY AS
RECEIVER FOR SIGNATURE BRIDGE BANK,
N.A.

ATTEST: _____

By: _____

Print Name:_____

Title:_____

Name: _____

_____

Title: _____

_____

_____

_____
Witness #1
Print Name:_____

SEAL

_____
Witness #2
Print Name:_____

*Note: State law has various execution requirements, including attestations or witnesses or both.*

*Prepare delete foregoing note once local requirements are determined.*

G-2-4

<u>ACKNOWLEDGMENT</u>

**[UNIVERSAL FORM OF ACKNOWLEDGMENT]**  [*Note to Preparer, delete the designation, Universal Form of Acknowledgement prior to execution. Use only one of the two acknowledgements:  this designation or the California form.*]

STATE OF _____                              )
                                                                                  )      SS:
COUNTY OF _____                              )


On    this    _____    day    of    _____,    20____,    before    me    personally    appeared _____, known to me or proved to me on the basis of satisfactory evidence to be the person(s) who executed the foregoing instrument, and he/she thereupon duly acknowledged to me that he/she executed the same to be his/her free act and deed.


WITNESS my hand and official seal.


_____
Name of Notary:_____
My commission expires:_____

G-2-5

**[CALIFORNIA FORM OF ACKNOWLEDGMENT]** [*Note to Preparer, delete the designation, Universal Form of Acknowledgement prior to execution. Use only one of the two acknowledgements: this designation or the Universal form.*]

STATE OF CALIFORNIA                    )
                                       )        SS:
COUNTY OF _____         )

On _____ before me, (here insert name and title of the officer), personally appeared _____ who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)

G-2-6

**EXHIBIT A**
**(Legal Description)**

G-2-7

ATTACHMENT G-3[7]
**to**
**Asset Transfer Agreement**

*(Note to Preparer: When preparing the actual Omnibus Loan Assignment, delete this instruction and the reference to Attachment G-3 above.)*

**OMNIBUS LOAN ASSIGNMENT**

RECITALS

[On March 12, 2023, Signature Bank, New York, New York ("Signature Bank") was closed by the New York State Department of Financial Services, and the Federal Deposit Insurance Corporation (acting in any capacity, the "FDIC") was appointed as receiver for Signature Bank ("FDIC as Receiver of Signature Bank"). By operation of law, FDIC as Receiver of Signature Bank assumed from the closed Signature Bank the Loan Documents described herein.

The Transferred Assets were transferred by FDIC as Receiver for Signature Bank to Signature Bridge Bank, N.A. ("Signature Bridge Bank"), which assumed such Loan Documents.]

[On March 20, 2023, Signature Bridge Bank [, N.A. ("Signature Bridge Bank")] was closed by the Office of the Comptroller of the Currency, and the FDIC was appointed as receiver for Signature Bridge Bank ("FDIC as Receiver of Signature Bridge Bank"). By operation of law, FDIC as Receiver of Signature Bridge Bank assumed [the Loan Documents described herein].]

NOW, THEREFORE, in consideration of the foregoing, it is agreed as follows:]

The **FEDERAL DEPOSIT INSURANCE CORPORATION** (acting in any capacity, the "FDIC") **IN ITS CAPACITY AS RECEIVER FOR SIGNATURE BRIDGE BANK, N.A.**, at 1601 Bryan Street, Dallas, Texas 75201 (hereinafter referred to as "Assignor"), for value received, does by these presents, grant, bargain, sell, assign, transfer and set over *"as-is", "where-is", without recourse, covenant, representation or warranty* of any kind or nature, express or implied to SIG RCRS C MF 2023 Venture LLC, a Delaware limited liability company its successors and assigns, at 220 E 42nd St 16th floor, New York, NY 10017, all of Assignor's right, title and interest in and to the loan documents (the "Loan Documents") associated with that certain loan made to:

[Insert name of Borrower], a [Insert Kind of Entity], organized and existing under the laws of [Insert State], dated [Insert Date of Execution], in the original principal sum of [Insert Amount

---

[7]  Options to be selected, and form to be adjusted, as applicable, to include (or, if necessary, to create a separate form to cover) the transfer from the Prior Transferor to Transferor.

G-3-1

in words] and __/100 Dollars ($[Insert Numbers]), as same may have been modified or amended (the <u>Loan</u>");

TO HAVE AND TO HOLD THE SAME UNTO SAID SIG RCRS C MF 2023 VENTURE LLC, ITS SUCCESSORS AND ASSIGNS.

THIS ASSIGNMENT IS MADE WITHOUT RECOURSE, REPRESENTATION OR WARRANTY, EXPRESS OR IMPLIED, WRITTEN OR ORAL, BY THE FDIC IN ITS CAPACITY AS RECEIVER FOR SIGNATURE BRIDGE BANK, N.A.[, AS RECEIVER FOR SIGNATURE BANK, NEW YORK, NEW YORK] OR IN ITS CORPORATE CAPACITY. THE LOAN DOCUMENTS ARE CONVEYED "AS IS" AND "WITH ALL FAULTS," WITHOUT ANY REPRESENTATION OR WARRANTY WHATSOEVER, INCLUDING AS TO COLLECTABILITY, ENFORCEABILITY, VALUE OF COLLATERAL, ABILITY OF ANY OBLIGOR TO REPAY, CONDITION, FITNESS FOR ANY PARTICULAR PURPOSE, MERCHANTABILITY OR ANY OTHER WARRANTY, EXPRESS, IMPLIED, OR BY OPERATION OF LAW, BY ANY PERSON, INCLUDING THE FDIC OR ITS OFFICERS, EMPLOYEES, AGENTS OR CONTRACTORS.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

IN WITNESS WHEREOF, this Omnibus Loan Assignment is executed as of this _____ day of
_____, _____.

ASSIGNOR:

FEDERAL DEPOSIT INSURANCE
CORPORATION IN ITS CAPACITY AS
RECEIVER FOR SIGNATURE BRIDGE
BANK, N.A.


By: _____
Name: _____
Title: _____

G-3-3

ATTACHMENT H[8]
**to**
**Asset Transfer Agreement**

Upon recordation, return to:
[Insert name and address of Person to whom recorded original Assignment is to be returned. *Note to preparer, delete this instruction and the reference with Attachment H above upon completion of documentation and prior to submission for execution.*]

Name:
Address:_____

_____

_____

Tax Map No. or Tax Parcel Identification No.: _____
[Insert if local recording office requires.] *[Note to preparer, delete the instruction upon completion of documentation and prior to submission for execution.]*

**ASSIGNMENT OF ASSIGNMENT OF LEASES AND RENTS AND OTHER LOAN DOCUMENTS**
[*Note to Preparer, insert correct name of instrument here and in body of Assignment below. Delete this instruction prior to execution.*]

RECITALS

[On March 12, 2023, Signature Bank, New York, New York ("Signature Bank") was closed by the New York State Department of Financial Services, and the Federal Deposit Insurance Corporation (acting in any capacity, the "FDIC") was appointed as receiver for Signature Bank ("FDIC as Receiver of Signature Bank").  By operation of law, FDIC as Receiver of Signature Bank assumed from the closed Signature Bank the Transferred Assets (as defined below).

The Transferred Assets were transferred by FDIC as Receiver for Signature Bank to Signature Bridge Bank, N.A. ("Signature Bridge Bank" or the "Failed Bank", as the context may require), which assumed the Transferred Assets.]

[On March 20, 2023, Signature Bridge Bank [N.A., ("Signature Bridge Bank" or the "Failed Bank", as the context may require)] was closed by the Office of the Comptroller of the Currency, and the FDIC was appointed as receiver for Signature Bridge Bank ("FDIC as Receiver of Signature Bridge Bank").  By operation of law, FDIC as Receiver of Signature Bridge Bank assumed the Transferred Assets.]

_____

[8]    Options to be selected, and form to be adjusted, as applicable, to include (or, if necessary, to create a separate form to cover) the transfer from the Prior Transferor to Transferor.

H-1

SIG RCRS C MF 2023 Venture LLC
Asset Transfer Agreement
Version 08-2022 (Standard)

NOW, THEREFORE, in consideration of the foregoing, it is agreed as follows:

THE FDIC, AS RECEIVER FOR THE FAILED BANK, at 1601 Bryan Street, Dallas, Texas 75201 (hereinafter referred to as "Assignor"), for value received, does by these presents, grant, bargain, sell, assign, transfer and set over to SIG RCRS C MF 2023 Venture LLC,  LLC, a Delaware limited liability company, its successors and assigns, at SIG RCRS C MF 2023 Venture LLC,  all right, title and interest in and to those documents listed immediately below (the "Transferred Assets"), which relate to property described on the attached Exhibit A:

1.      Assignment of Leases and Rents, dated [Insert Date] ("Assignment of Leases"), made by [Insert Name of Borrower], a [Insert Kind of Entity], in favor of [Insert name of original lender] and which Assignment of Leases was recorded on [Insert Date], in Book _____, Page _____ with [the Register of Deeds, [Insert] County, State of [Insert] ("Register's Office") as Document No. _____;], as the same may have been assigned, amended, supplemented, restated or modified; and

[2.]      [Insert similar description, with recording information, for each additional recorded Asset Document, with definition][*note to preparer, delete the instruction upon completion of documentation and prior to submission for execution.*]; and

[3.]      Any notes and or other agreements evidencing the indebtedness and/or the obligations secured by the Assignment of Leases and the other recorded loan documents identified in Paragraph 2 through ___ above; and

[4.]      Any and all other documents and instruments evidencing, securing and or relating to the indebtedness and or obligations secured by the Assignment of Leases and the other recorded loan documents identified in Paragraph 2 through ___ above.

[Insert the following paragraph, and repeat if applicable, only if original assignment of leases and rents was originated by and executed in favor of another lender and then transferred to Signature Bridge Bank or Signature Bank, New York, New York.  *Note to preparer, delete this instruction upon completion of documentation and prior to submission for execution:*

The Assignment of Leases was assigned by [Name of original lender] to Signature Bank, New York, New York/ Signature Bridge Bank, N.A. pursuant to that certain Assignment of Assignment of Leases and Rents dated [Insert Date] and recorded on [Insert Date] in Book _____, Page _____ in the Register's Office as Document No._____.]

[Insert the following paragraph only if the original Assignment of Leases and Rents Mortgage was modified or amended and a document was recorded to reflect the modification and amendment.  *Note to preparer, delete this instruction upon completion of documentation and prior to submission for execution:*

H-2

The Assignment of Leases and Rents was modified pursuant to that certain [Modification of Assignment of Leases] [Insert Correct Name of Document] dated [Insert Date] and recorded on [Insert Date] in Book _____, Page _____ in the Register's Office as Document No. _____("Modification").]

[Insert similar additional paragraphs for each additional recorded loan document as necessary. *Note to preparer, delete this instruction upon completion of documentation and prior to submission for execution*.]

THIS ASSIGNMENT IS MADE WITHOUT RECOURSE, AND WITHOUT REPRESENTATION OR WARRANTY, EXPRESS, IMPLIED OR BY OPERATION OF LAW, OF ANY KIND OR NATURE WHATSOEVER, BY THE FDIC IN ITS CAPACITY AS RECEIVER FOR SIGNATURE BRIDGE BANK, N.A.[, AS RECEIVER FOR SIGNATURE BANK, NEW YORK, NEW YORK] OR IN ITS CORPORATE CAPACITY.  THE LOAN IS CONVEYED "AS IS" AND "WITH ALL FAULTS," WITHOUT ANY REPRESENTATION OR WARRANTY WHATSOEVER, INCLUDING AS TO COLLECTABILITY, ENFORCEABILITY, VALUE OF COLLATERAL, ABILITY OF ANY OBLIGOR TO REPAY, CONDITION, FITNESS FOR ANY PARTICULAR PURPOSE, MERCHANTABILITY OR ANY OTHER WARRANTY, EXPRESS, IMPLIED OR BY OPERATION OF LAW, BY ANY PERSON, INCLUDING THE FDIC OR ITS OFFICERS EMPLOYEES, AGENTS OR CONTRACTORS.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

H-3

IN WITNESS WHEREOF, FEDERAL DEPOSIT INSURANCE CORPORATION IN ITS CAPACITY AS RECEIVER FOR SIGNATURE BRIDGE BANK, N.A. has caused this instrument to be executed this _____ day of _____, 20____, effective as of the _____ day of _____, 20____.


ASSIGNOR:

Signed, sealed and delivered
in the presence of:

FEDERAL DEPOSIT INSURANCE CORPORATION IN ITS CAPACITY AS RECEIVER FOR [SIGNATURE BRIDGE BANK, N.A.]


ATTEST: _____        By: _____
Print Name: _____
Title: _____        Name: _____

        _____

        Title: _____

        _____


_____
Witness #1
Print Name: _____

        SEAL


_____
Witness #2
Print Name: _____


*Note: State law has various execution requirements, including attestations or witnesses or both. Preparer delete foregoing note once local requirements are determined.*


H-4

<u>ACKNOWLEDGMENT</u>

**[UNIVERSAL FORM OF ACKNOWLEDGMENT]** [*Note to Preparer, delete the designation, Universal Form of Acknowledgement prior to execution.  Use only one of the two acknowledgements:  this designation or the California form.* ]

STATE OF _____          )
                                                                       )          SS:
COUNTY OF _____          )


On   this   _____   day   of   _____,   20_____,   before   me   personally   appeared _____, known to me or proved to me on the basis of satisfactory evidence to be the person(s) who executed the foregoing instrument, and he/she thereupon duly acknowledged to me that he/she executed the same to be his/her free act and deed.

WITNESS my hand and official seal.


_____
Name of Notary:_____
My commission expires:_____

H-5

**[CALIFORNIA FORM OF ACKNOWLEDGMENT]** *Note to Preparer, delete the* *designation, California Form of Acknowledgement prior to execution if you use this* *acknowledgement. Use only one of the two acknowledgements:  this designation or the Universal* *form.*]

STATE OF CALIFORNIA                                    )
                                                                        )         SS:
COUNTY OF _____              )


On _____ before me, (here insert name and title of the officer), personally appeared _____ who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.


Signature _____ (Seal)

H-6

**EXHIBIT A**
**(Legal Description)**

H-7

ATTACHMENT I[9]
**to**
**Asset Transfer Agreement**

*(Note to Preparer: When preparing the actual Assignment and Acceptance of Limited Liability Company Interest, delete this instruction and the reference to Attachment I above.)*

**ASSIGNMENT AND ACCEPTANCE OF LIMITED LIABILITY COMPANY INTEREST**

      **FOR VALUE RECEIVED**, pursuant to the terms and conditions set forth in that certain Asset Transfer Agreement, dated as of December 15, 2023, between **THE FEDERAL DEPOSIT INSURANCE CORPORATION IN ITS CAPACITY AS RECEIVER FOR SIGNATURE BRIDGE BANK, N.A.**, at 1601 Bryan Street, Dallas, Texas 75201 ("Assignor"), **SIG RCRS C MF 2023 VENTURE LLC,** a Delaware limited liability company, its successors and assigns, at 220 E 42nd St 16th floor, New York, NY 10017 ("Assignee"), and others, Assignor, being the sole member of [Insert Name of Subsidiary Entity], a [Insert State of Formation] limited liability company (the "Limited Liability Company"), by these presents grants, bargains, sells, assigns, transfers and sets over to Assignee all right, title and interest in and to Assignor's entire interest in the Limited Liability Company (the "Limited Liability Company Interest"), which Limited Liability Company Interest includes, without limitation, Assignor's capital and profits interest, capital account balance, distributions and liquidation rights and voting and any management rights and powers in the Limited Liability Company.

      Assignee accepts the Limited Liability Company Interest, assumes all covenants, conditions, obligations, liabilities and responsibilities required to be kept, performed and fulfilled by Assignor with respect to the Limited Liability Company Interest and agrees to be bound by all the terms and conditions of the [Operating Agreement/Limited Liability Company Agreement] *{Note to preparer, delete "Operating Agreement" or "Limited Liability Company Agreement" as appropriate}* of the Limited Liability Company (the "Operating Agreement"), a copy of which Operating Agreement is attached to this Assignment and Acceptance of Limited Liability Company Interest as Exhibit A and made a part of this Assignment and Acceptance of Limited Liability Company Interest by reference.

      This Assignment and Acceptance of Limited Liability Company Interest is made, delivered and effective as of the date first noted above.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

---

[9]   Form to be adjusted, where relevant, to include, or as a separate form to cover, the transfer from the Prior Transferor to Transferor.

      **IN WITNESS WHEREOF**, Assignor and Assignee have caused this Assignment and Acceptance of Limited Liability Company Interest to be executed and delivered as of the _____ day of _____, 202_.

                  **ASSIGNOR:**

                  **FEDERAL DEPOSIT INSURANCE CORPORATION IN ITS CAPACITY AS RECEIVER FOR SIGNATURE BRIDGE BANK, N.A.**

                  By:_____

                  Name:

                  Title:

                  **ASSIGNEE:**

                  **SIG RCRS C MF 2023 VENTURE LLC**

                  By:     [_____], its Manager

                        By:     [_____], its [_____]

                        By: _____

                        Name:

                        Title:

[[Insert the following consent for [_____], [_____] and [_____] to address Operating Agreement prohibitions against transfer.] {*Note to preparer, delete this instruction upon completion of documentation and prior to submission for execution.*}

Acknowledged, consented to, approved and agreed to by the Limited Liability Company as of the _____ day of _____, 20__, which confirms that Assignee, pursuant to the attached Assignment and Acceptance of Limited Liability Company Interest, has become and at all times hereafter will be the substitute member of the Limited Liability Company, with all right, title and interest in the Limited Liability Company provided in the Operating Agreement and any and all rights and limitations of Assignor pursuant to the Operating Agreement.

**[_____], LLC**

By:     **FEDERAL DEPOSIT INSURANCE CORPORATION in its capacity as Receiver for Signature Bridge Bank, N.A., as Sole Member**

By: _____
Name:
Title:

I-3

**Exhibit A**

**Copy of Operating Agreement**

[Attached]

ATTACHMENT J-1[10]
**to**
**Asset Transfer Agreement**

*[Note to preparer: The below form of Receiver's Deed must in each instance be conformed to the laws of the state wherein the applicable Receiver Acquired Property is located, including, without limitation, those necessary to cause it to be recorded in the county in which such Receiver Acquired Property is located. No other changes are to be made thereto, <u>except</u> that this "Note" and the bracketed instructions in bold in the text of the Receiver's Deed (including <u>Exhibit B</u> thereto) must be deleted from the form of the completed Receiver's Deed. Delete this instruction prior to execution.]*

Recording requested by                                         Asset No. _____
and when recorded return to:

_____
_____
_____

_____
(Space above this line reserved for Recorder of Deeds)

**SPECIAL WARRANTY DEED**

STATE OF _____        §
                                 §
COUNTY OF _____        §

RECITALS

WHEREAS, Signature Bank, New York, New York ( "<u>Signature Bank</u>"), acquired the Property by that certain _____ **[insert the style of the deed into the failed institution, e.g., General or Special Warranty Deed, Deed in Lieu of Foreclosure, or simply Deed]** dated _____, and recorded in Volume _____, Page _____ of the records of _____ County, _____, on _____;

WHEREAS, Signature Bank was closed by the New York State Department of Financial Services, and the Federal Deposit Insurance Corporation (acting in any capacity, the "<u>FDIC</u>") was appointed as receiver for Signature Bank ("<u>FDIC as Receiver of Signature Bank</u>"). As a matter of federal law, 12 U.S.C. § 1821(d)(2)(A)(i), FDIC as Receiver of Signature Bank succeeded to all of the right, title, and interest of Signature Bank in and to, among other things, the Property;

_____

[10]   Form to be adjusted, where relevant, to include, or as a separate form to cover, the transfer from the Prior Transferor to Transferor.

J-1-1

WHEREAS, all such right, title and interest to the Property, among other things, was transferred by the FDIC as Receiver of Signature Bank to Signature Bridge Bank, N.A. ("Signature Bridge Bank" or the "Failed Bank", as the context may require);

WHEREAS, Signature Bridge Bank was closed by the Office of the Comptroller of the Currency, and the FDIC was appointed as receiver for Signature Bridge Bank _____(in such capacity, the "Receiver"); and

WHEREAS, as a matter of federal law, 12 U.S.C. § 1821(d)(2)(A)(i), the Receiver succeeded to all of the right, title, and interest of the Failed Bank in and to, among other things, the Property.

NOW, THEREFORE, the Receiver (hereinafter, "Grantor"), whose address is 1601 Bryan Street, Dallas, Texas 75201, for and in consideration of the sum of TEN AND NO/100 DOLLARS ($10.00) and other good and valuable consideration to said Grantor paid by Grantee named herein, the receipt of which is hereby acknowledged, has GRANTED, SOLD and CONVEYED and by these presents does GRANT, SELL and CONVEY unto _____ _____ **[if a legal entity, include type and state in which formed]** ("Grantee"), whose mailing address is _____ _____, that certain real property situated in _____ County, _____, described on Exhibit A attached hereto and made a part hereof for all purposes, together with any and all improvements thereto and all and singular the rights and appurtenances pertaining thereto, including, but not limited to, any right, title and interest of Grantor in and to adjacent streets, alleys or rights-of-way (collectively, the "Property"), **subject** however **to** all standby fees, real estate taxes, and assessments on or against the Property (which fees, taxes and assessments shall be subject to any applicable provisions in the Transfer Agreement defined below), as well as zoning, building, and other laws, regulations, and ordinances of municipal and other governmental authorities, if any, affecting the Property, and all matters set forth on Exhibit B attached hereto and made a part hereof for all purposes (all of the foregoing being collectively referred to as the "Permitted Exceptions");

TO HAVE AND TO HOLD the Property, together with all and singular the rights and appurtenances thereto in any wise belonging to Grantor, unto Grantee, its legal representatives, successors and assigns forever, and Grantor does hereby bind itself, its successors and assigns, to WARRANT SPECIALLY AND FOREVER DEFEND all and singular the Property unto Grantee, its legal representatives, successors and assigns, against every person whomsoever lawfully claiming or to claim the same or any part thereof, by, through, or under Grantor, but not otherwise, **subject**, however, **to** the Permitted Exceptions.

Grantee, by its execution and acceptance of delivery of this Special Warranty Deed, assumes and agrees to perform any and all obligations of Grantor, the Failed Bank or Signature Bank under the Permitted Exceptions.

FURTHER, GRANTEE, BY ITS EXECUTION AND ACCEPTANCE OF DELIVERY OF THIS SPECIAL WARRANTY DEED, ACKNOWLEDGES AND AGREES THAT (i) EXCEPT FOR THE SPECIAL (OR LIMITED) WARRANTY OF TITLE CONTAINED HEREIN,

GRANTOR HAS NOT MADE, DOES NOT MAKE, AND SPECIFICALLY NEGATES AND DISCLAIMS ANY REPRESENTATIONS, WARRANTIES, PROMISES, COVENANTS, AGREEMENTS, OR GUARANTIES OF ANY KIND OR CHARACTER WHATSOEVER, WHETHER EXPRESS OR IMPLIED, ORAL OR WRITTEN, PAST, PRESENT, OR FUTURE, OF, AS TO, CONCERNING, OR WITH RESPECT TO (A) THE VALUE, NATURE, QUALITY, OR CONDITION OF THE PROPERTY, INCLUDING, WITHOUT LIMITATION, THE WATER, SOIL, AND GEOLOGY, (B) ANY INCOME TO BE DERIVED FROM THE PROPERTY, (C) THE SUITABILITY OF THE PROPERTY FOR ANY AND ALL ACTIVITIES AND USES WHICH GRANTEE MAY CONDUCT OR HOPE TO CONDUCT THEREON, (D) THE COMPLIANCE OF OR BY THE PROPERTY OR ITS OPERATION WITH ANY LAWS, RULES, ORDINANCES, OR REGULATIONS OF ANY APPLICABLE GOVERNMENTAL AUTHORITY OR BODY, (E) THE HABITABILITY, MERCHANTABILITY, MARKETABILITY, PROFITABILITY, OR FITNESS FOR A PARTICULAR PURPOSE OF THE PROPERTY OR ANY PART THEREOF, (F) THE MANNER OR QUALITY OF THE CONSTRUCTION OR MATERIALS, IF ANY, INCORPORATED INTO THE PROPERTY, (G) THE MANNER, QUALITY, STATE OF REPAIR, OR LACK OF REPAIR OF THE PROPERTY OR ANY PART THEREOF OR ANY IMPROVEMENTS THERETO, (H) THE EXISTENCE, QUALITY, NATURE, ADEQUACY, OR PHYSICAL CONDITION OF ANY UTILITIES SERVING THE PROPERTY, OR (I) ANY OTHER MATTER WITH RESPECT TO THE PROPERTY, AND SPECIFICALLY, THAT GRANTOR HAS NOT MADE, DOES NOT MAKE, AND SPECIFICALLY DISCLAIMS ANY REPRESENTATIONS REGARDING COMPLIANCE WITH ANY ENVIRONMENTAL PROTECTION, POLLUTION, OR LAND USE LAWS, RULES, REGULATIONS, ORDERS, OR REQUIREMENTS, INCLUDING, WITHOUT LIMITATION, THE DISPOSAL OR EXISTENCE, IN OR ON THE PROPERTY OR ANY PART THEREOF, OF ANY HAZARDOUS MATERIALS; (ii) GRANTEE HAS FULLY INSPECTED THE PROPERTY AND THAT THE CONVEYANCE HEREUNDER OF THE PROPERTY IS "AS IS" AND "WITH ALL FAULTS," AND GRANTOR HAS NO OBLIGATION TO ALTER, REPAIR, OR IMPROVE THE PROPERTY OR ANY PART THEREOF OR ANY IMPROVEMENTS THERETO; AND (iii) NO WARRANTY HAS ARISEN THROUGH TRADE, CUSTOM, OR COURSE OF DEALING WITH GRANTOR, AND ALL STATUTORY, COMMON LAW, AND CUSTOMARY COVENANTS AND WARRANTIES, IF ANY, OF WHATEVER KIND, CHARACTER, NATURE, PURPOSE, OR EFFECT, WHETHER EXPRESS OR IMPLIED OR ARISING BY OPERATION OF LAW, ARE HEREBY EXPRESSLY, UNCONDITIONALLY, AND IRREVOCABLY WAIVED, DISCLAIMED, AND EXCLUDED FROM THIS SPECIAL WARRANTY DEED, NOTWITHSTANDING ANY CUSTOM OR PRACTICE TO THE CONTRARY, OR ANY STATUTORY, COMMON LAW, DECISIONAL, HISTORICAL, OR CUSTOMARY MEANING, IMPLICATION, SIGNIFICANCE, EFFECT, OR USE OF CONTRARY IMPORT OF ANY WORD, TERM, PHRASE OR PROVISION HEREIN.

Further, by its acceptance of delivery of this Special Warranty Deed, Grantee or anyone claiming by, through, or under Grantee, hereby fully releases Grantor, the Failed Bank, Signature Bank, and the FDIC in any and all of its various other capacities, and their respective employees, officers, directors, representatives, and agents from any and all claims, costs, losses, liabilities, damages, expenses, demands, actions, or causes of action that it or they may now have or hereafter

J-1-3

acquire, whether direct or indirect, known or unknown, suspected or unsuspected, liquidated or contingent, arising from or related to the Property in any manner whatsoever. This covenant releasing Grantor, the Failed Bank, Signature Bank, and the FDIC in any and all of its various other capacities is a covenant running with the Property and will be binding upon Grantee, its successors, and assigns.

The fact that certain encumbrances, limitations, or other matters or conditions may be mentioned, disclaimed, or excepted in any way herein, whether specifically or generally, is not a covenant, representation, or warranty of Grantor as to any encumbrances, limitations, or any other matters or conditions not mentioned, disclaimed, or excepted. Notwithstanding anything herein to the contrary, however, nothing herein will be construed or deemed as an admission by Grantor or Grantee to any third party of the existence, validity, enforceability, scope, or location of any encumbrances, limitations, or other matters or conditions mentioned, disclaimed, or excepted in any way herein, and nothing will be construed or deemed as a waiver by Grantor or Grantee of its respective rights, if any, but without obligation, to challenge or enforce the existence, validity, enforceability, scope, or location of same against third parties.

By its execution and acceptance of delivery of this Special Warranty Deed, Grantee hereby assumes the payment of all *ad valorem* taxes, standby fees, and general and special assessments of whatever kind and character affecting the Property which are due, or which may become due, including, without limitation, taxes or assessments becoming due by reason of a change in usage or ownership, or both, of the Property or any portion thereof, in each case subject to any applicable provisions set forth in that certain Asset Transfer Agreement between Grantor, SIG RCRS C MF 2023 Venture LLC,  a Delaware limited liability company, and others, dated as of  December 15, 2023 (the "Transfer Agreement").

IN WITNESS WHEREOF, this Special Warranty Deed is executed on this _____ day of _____, _____.

GRANTOR:

FEDERAL DEPOSIT INSURANCE
CORPORATION IN ITS CAPACITY AS
RECEIVER FOR SIGNATURE BRIDGE BANK, N.A.

By: _____
Name: _____
Title: _____

GRANTEE:

_____ **[print name of legal entity, including type of**
_____ **entity and state in which it was formed]**

J-1-4

SIG RCRS C MF 2023 Venture LLC
Asset Transfer Agreement
Version 08-2022 (Standard)

By: _____

Name: _____

Title: _____

J-1-5

ACKNOWLEDGMENTS

STATE OF _____        §
                                      §
COUNTY OF _____            §

      This instrument was acknowledged before me on the _____ day of _____, _____, by _____, Attorney-in-Fact of the Federal Deposit Insurance Corporation, as Receiver for _____, on behalf of said entity.

                               _____

                               Notary Public, State of _____

STATE OF _____        §
                                      §
COUNTY OF _____            §

      This instrument was acknowledged before me on the _____ day of _____, _____, by _____, _____ of _____ _____, on behalf of said entity.

                               _____

                               Notary Public, State of _____

J-1-6

## EXHIBIT A

[Legal Description of the Property]

*[<u>NOTE TO PREPARER</u>: This legal description should be, except in unique circumstances, the legal description of the Property as found in the conveyancing instrument into Grantor or into the Failed Bank named in the first recital hereinabove.  Delete this instruction prior to execution.]*

J-1-7

EXHIBIT B

[Permitted Exceptions]

*[Note to preparer: <u>List hereon</u> (i) the standard printed exceptions contained in Schedule B of the Title Policy or as otherwise set forth in said Schedule B, and (ii) all matters or conditions affecting title to the Property, including those reflected on the Title Commitment or the Survey. Delete this instruction prior to execution.]*

1. Restrictive covenants recorded in Volume _____, Page _____, and Volume _____, Page _____, all in the _____ Records of _____ County, _____ **[the standard exception as to restrictive covenants should be deleted in its entirety unless recorded restrictive covenants are specified, in which event the recording information thereof must be listed under such exception]**.

2. Any discrepancies, conflicts, or shortages in area or boundary lines, or any encroachments or protrusions, or any overlapping of improvements.

3. Any title or rights asserted by anyone, including, but not limited to, persons, the public, corporations, governments or other entities, to tidelands, or lands comprising the shores or beds of navigable or perennial rivers and streams, lakes, bays, gulfs or oceans, or to lands beyond the line of the harbor or bulkhead lines as established or changed by any government, or to filled-in lands, or artificial islands, or to statutory water rights, including riparian rights, or to the area extending from the line of mean low tide to the line of vegetation, or the rights of access to that area or easement along and across that area.

4. Rights of tenants and/or lessees in possession under any recorded and/or unrecorded leases and/or rental agreements.

5. **[e.g., Drainage easement as recorded in Volume _____, Page _____ of the Deed and Plat Records of _____ County, _____, and as shown on that certain survey prepared by _____, surveyed on _____, and updated on _____, with certification executed by _____, Registered Professional Land Surveyor No. _____, on _____, Project No. _____ (herein, the "Survey")]**.

6. **[e.g., Consequences, if any, arising from the encroachment of Building – 1 and Building – 3 over or into the twenty-five foot (25') building setback line pursuant to Zoning B-3, as shown on the Survey]**.

7. **[CONTINUE NUMBERING AS NEEDED TO LIST ALL ITEMS REQUIRED BY THE ABOVE INSTRUCTIONS.]**

J-1-8

ATTACHMENT J-2[11]
**to**
**Asset Transfer Agreement**

*[Note to preparer:  When preparing an actual Omnibus Property Assignment, delete this instruction and the reference to Attachment J-2 above.]*

**GENERAL ASSIGNMENT AND ASSUMPTION**
**(Omnibus Property Assignment)**

THIS GENERAL ASSIGNMENT AND ASSUMPTION (this "Assignment") is made and entered into as of the _____ day of _____ 20_ (the "Effective Date"), by and between the **FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver for Signature Bridge Bank, N.A.** (herein referred to as "Assignor"), whose address is 1601 Bryan Street, Dallas, Texas 75201, and _____, **LLC**, a _____ limited liability company (herein referred to as "Assignee"), whose address and principal place of business is _____.

RECITALS:

A.      [On March 12, 2023, Signature Bank, New York, New York ("Signature Bank") was closed by the New York State Department of Financial Services, and the Federal Deposit Insurance Corporation (acting in any capacity, the "FDIC") was appointed as receiver for Signature Bank ("FDIC as Receiver of Signature Bank").  By operation of law, FDIC as Receiver of Signature Bank assumed from the closed Signature Bank all of its right, title and interest to the Real Property (as defined below) and, as applicable (as predecessor-in-interest), the Subject Property (as defined below).

B.      All such right, title and interest to the Real Property and Subject Property was transferred by FDIC as Receiver for Signature Bank, and assumed by, Signature Bridge Bank, N.A. ("Signature Bridge Bank").

C.      On March 20, 2023, Signature Bridge Bank was closed by the Office of the Comptroller of the Currency, and Assignor was appointed as receiver for Signature Bridge Bank. By operation of law, Assignor assumed from the closed Signature Bridge Bank all of its right, title and interest to the Real Property and, as applicable (as predecessor-in-interest), the Subject Property (as defined below).]

---

[11]   Form to be adjusted, where relevant, to include, or as a separate form to cover, the transfer from the Prior Transferor to Transferor.

J-2-1

D.    Contemporaneously with the execution of this Assignment, pursuant to that certain Receiver's Deed dated of even date herewith between Assignor and Assignee, Assignor has sold and conveyed to Assignee the lands (being real property) located in _____ County, _____, that are specifically described in the schedule that is marked <u>Exhibit A</u>, and that is attached hereto and made a part hereof for all purposes (the "<u>Land</u>"), together with any buildings, facilities, structures, improvements, and fixtures that are located thereon or attached or affixed thereto (the "<u>Improvements</u>"), and together with any rights and appurtenances thereto, and any rights, titles and interests in and to adjacent streets, roads, alleys and rights-of-way (all the foregoing, collectively, the "<u>Real Property</u>").

E.    This Assignment is executed pursuant to that certain Asset Transfer Agreement between Assignor, SIG RCRS C MF 2023 Venture LLC, LLC, a Delaware limited liability company, and others, dated as of December 15, 2023 (the "<u>Transfer Agreement</u>").  As required therein, this Assignment is made without recourse, and without representation or warranty, express or implied, or by operation of law, of any kind or nature whatsoever by the Federal Deposit Insurance Corporation, in any capacity, or the Failed Bank.  Terms used herein, which are not otherwise defined herein, have the same meaning as set forth in the Transfer Agreement.

AGREEMENT:

1.    <u>Assignment</u>.  For Ten and No/100 Dollars in hand paid and other good and valuable consideration that Assignee has paid to Assignor, the receipt and sufficiency of which are hereby acknowledged, Assignor hereby assigns, transfers and conveys to Assignee **WITHOUT COVENANT, REPRESENTATION, OR WARRANTY** of any kind or nature, express or implied, or by operation of law, of any kind or nature whatsoever, all of Assignor's right, title and interest in, to and under (a) any Related Agreement pertaining to the Real Property to which Assignor is a party or in which Assignor has obtained an interest, (b) any governmental licenses, permits and approvals, utility contracts, certificates of occupancy in favor of or owned by Assignor, and other rights or franchises relating to the zoning, land use, entitlements, ownership, operation, occupancy, development, construction or maintenance of the Real Property running to or in favor of Assignor, the Improvements or the Land, but expressly excluding any and all deposits (including utility deposits) made by Assignor with Governmental Authorities relating to the Improvements or the Land, (c) any existing warranties, guaranties and sureties of manufacturers, suppliers and contractors received in connection with the construction of, or equipment on, the Real Property or given by other third parties with respect to the Real Property, (d) any site plans, surveys, floor plans, architectural plans and specifications and engineering plans (whether "as built", conceptual or design) relating to the Real Property, (e) any claims and rights of action against third parties with respect to the Real Property, except as provided in <u>Section 2.7</u> of the Transfer Agreement, (f) subject to <u>Section 4.15</u> of the Transfer Agreement, any other intangible property owned by Assignor in connection with the Land and Improvements and (g) any furniture, personal property, machinery, appliances, tools, building materials, hardware, carpeting, apparatus and equipment owned by Assignor and currently used in the operation, repair and maintenance of the Land and Improvements and situated thereon, but expressly excluding any of the foregoing and all other personal property owned by tenants of the Improvements or public or private utilities or contractors working at the Property (all the foregoing, collectively, the "<u>Subject Property</u>").

J-2-2

2.     <u>Assumption</u>.  Assignee hereby assumes and agrees to keep, perform and fulfill all of the Obligations under or with respect to the Real Property and the Subject Property, including, without limitation, all of Assignor's obligations under the Related Agreements, whether arising or accruing before, on or after the Effective Date.  Assignee hereby agrees to indemnify and defend Assignor (and its Affiliates) against, and hold Assignor (and its Affiliates) harmless from, any and all claims, demands, causes of action, losses, damages, liabilities and costs, including, without limitation, reasonable attorneys' fees, expenses and costs (collectively, "<u>Losses</u>") asserted against, imposed upon or incurred by Assignor (or any Affiliate thereof) by reason of or arising out of claims of unrelated thirty parties (<u>i.e.</u>, parties other than Assignor and its Affiliates) relating to or arising out of (a) the ownership, management, leasing, operation, construction, maintenance, repair, marketing and/or sale of the Real Property or the Subject Property before, on and after the Effective Date, and/or (b) personal injury, death or property damage relating to the Real Property or the Subject Property with respect to the period before, on and after the Effective Date, except to the extent that such Losses are attributable to the acts or omissions of Assignor (and its Affiliates) prior to the Effective Date.

3.     <u>No Representation or Warranty</u>.  ASSIGNEE, BY ITS EXECUTION AND ACCEPTANCE OF DELIVERY OF THIS ASSIGNMENT, ACKNOWLEDGES AND AGREES THAT: (I) THE SUBJECT PROPERTY IS CONVEYED AND ASSIGNED TO THE ASSIGNEE "AS IS" AND "WITH ALL FAULTS," WITHOUT ANY REPRESENTATION, WARRANTY OR GUARANTY WHATSOEVER, INCLUDING, WITHOUT LIMITATION, (A) AS TO THE OWNERSHIP OF, OR STATE OR CONDITION OF TITLE TO, THE REAL PROPERTY OR THE SUBJECT PROPERTY, OR THE PRESENCE OR ABSENCE OF ANY LIENS OR ENCUMBRANCES THEREON, AND ANY COVENANTS OR WARRANTIES OF TITLE THAT MIGHT OTHERWISE ARISE OR BE IMPLIED BY COMMON LAW, STATUTE OR OTHERWISE ARE EXPRESSLY DISCLAIMED AND NEGATED, OR (B) AS TO THE VALUE, MARKETABILITY, MERCHANTABILITY, FITNESS FOR ANY PARTICULAR PURPOSE, OR CONDITION OF, OR THE INCOME (IF ANY) TO BE DERIVED FROM, THE REAL PROPERTY OR THE SUBJECT PROPERTY, WHETHER EXPRESS OR IMPLIED OR BY OPERATION OF LAW, BY ANY PERSON, INCLUDING THE ASSIGNOR OR ANY PREDECESSORS-IN-INTEREST OR AFFILIATES OF THE ASSIGNOR, OR ANY OF THEIR RESPECTIVE OFFICERS, DIRECTORS, EMPLOYEES, AGENTS OR CONTRACTORS; (II) THE ASSIGNOR SPECIFICALLY DISCLAIMS ANY WARRANTY, GUARANTY OR REPRESENTATION, ORAL OR WRITTEN, PAST OR PRESENT, EXPRESS OR IMPLIED, CONCERNING THE REAL PROPERTY OR THE SUBJECT PROPERTY OR WITH RESPECT TO THE LEGALITY, VALIDITY, EFFECTIVENESS, ADEQUACY OR ENFORCEABILITY OF ANY RELATED AGREEMENTS OR OTHER DOCUMENTS RELATING THERETO OR FOR THE PERFORMANCE AND OBSERVANCE BY THE PARTIES TO ANY RELATED AGREEMENTS OR OTHER DOCUMENTS OR ANY OTHER PERSON OF ANY OF ITS OBLIGATIONS PURSUANT TO ANY RELATED AGREEMENTS OR OTHER DOCUMENTS OR WITH RESPECT TO ANY OTHER MATTER WHATSOEVER RELATING TO THE REAL PROPERTY OR THE SUBJECT PROPERTY, INCLUDING WITHOUT LIMITATION, as to (a) environmental matters relating to the Real Property or the Subject Property, including, without limitation, the presence of any Environmental Hazard in, on,

J-2-3

under and around the Real Property or other properties in the vicinity of the Real Property; (b) the presence of mold or other microbial agents in the Subject Property or the Real Property; (c) topographical, geological or seismic conditions with respect to the Real Property, including, without limitation, subsidence, subsurface conditions, water table, underground water reservoirs, and limitations regarding the withdrawal of water therefrom, and faulting; (d) whether or not and the extent to which the Real Property or any portion thereof is affected by any stream (surface or underground), body of water, flood prone area, flood plain, floodway, or special flood hazard; (e) drainage and soil conditions of the Real Property; (f) the existence of or availability of any entitlements or development rights with respect to the Real Property; (g) zoning requirements (including any special use permits) to which the Real Property may be subject or the status of compliance with such requirements; (h) the availability, adequacy, capacity or physical condition of any utilities to the Real Property or any portion thereof, including, without limitation, water, sewage, gas and electricity; (i) existing or permitted usages of the Real Property or any properties adjoining the Real Property; (j) access to the Real Property or any portion thereof; (k) the value, compliance with specifications, size, location, age, use, merchantability, quality, quality of construction or materials, description, state of repair or condition of the Real Property or the Subject Property or any portion thereof, or suitability of the Real Property or the Subject Property or any portion thereof for any specific purposes, or fitness for any use or purpose whatsoever; (l) the compliance of the Real Property or the Subject Property with applicable Laws; (m) enforceability of any contract, lease, ground lease or other Related Agreement affecting the Real Property or the Subject Property; (n) the physical condition of the Real Property or the Subject Property, including, without limitation, the existence of any latent or patent defects; or (o) the scope or extent of any potential or threatened taking of all or part of the Real Property or the Subject Property and the impact thereof on the remainder of the Real Property or the Subject Property; (III) ASSIGNEE HAS HAD AMPLE OPPORTUNITY TO INSPECT, AND HAS FULLY INSPECTED, THE REAL PROPERTY AND THE SUBJECT PROPERTY AND THAT THE CONVEYANCE AND DELIVERY HEREUNDER OF THE SUBJECT PROPERTY IS "AS IS" AND "WITH ALL FAULTS", AND ASSIGNOR HAS NO OBLIGATION TO ALTER, REPAIR, REMEDIATE OR IMPROVE THE REAL PROPERTY OR THE SUBJECT PROPERTY OR ANY PORTION THEREOF; AND (IV) NO WARRANTY HAS ARISEN THROUGH TRADE, CUSTOM, OR COURSE OF DEALING WITH ASSIGNOR, AND ALL STATUTORY, COMMON LAW, AND CUSTOMARY COVENANTS AND WARRANTIES, IF ANY, OF WHATEVER KIND, CHARACTER, NATURE, PURPOSE, OR EFFECT, WHETHER EXPRESS OR IMPLIED OR ARISING BY OPERATION OF LAW OR OTHERWISE, ARE HEREBY EXPRESSLY, UNCONDITIONALLY, AND IRREVOCABLY WAIVED, DISCLAIMED, AND EXCLUDED FROM THIS ASSIGNMENT, NOTWITHSTANDING ANY CUSTOM OR PRACTICE TO THE CONTRARY, OR ANY STATUTORY, COMMON LAW, DECISIONAL, HISTORICAL, OR CUSTOMARY MEANING, IMPLICATION, SIGNIFICANCE, EFFECT, OR USE OF CONTRARY IMPORT OF ANY WORD, TERM, PHRASE OR PROVISION HEREIN.

Further, by its execution and acceptance of delivery of this Assignment, Assignee or anyone claiming by, through, or under Assignee, hereby fully releases Assignor, Signature Bank, Signature Bridge Bank, and the FDIC in any capacity, and their respective employees, officers, directors, representatives, and agents, from any and all claims, costs, losses, liabilities, damages, expenses, demands, actions, or causes of action that it may now have or hereafter acquire, whether direct or

J-2-4

indirect, choate or inchoate, known or unknown, suspected or unsuspected, liquidated or contingent, arising from or related to this conveyance and/or the Real Property or the Subject Property in any manner whatsoever. This covenant releasing Assignor is a covenant running with the Real Property and will be binding upon Assignee, its successors and assigns.

4.     <u>Transfer Agreement</u>.  To the extent of any conflict between this Assignment and the Transfer Agreement, the Transfer Agreement will control.

5.     <u>Successors and Assigns</u>.  This Assignment will inure to the benefit of, and be binding upon, the successors, executors, administrators, legal representatives and assigns of the parties hereto.

6.     <u>Counterparts</u>.  This Assignment may be executed in any number of counterparts. All counterparts together will constitute an original agreement.

7.     <u>Governing Law</u>.  This Assignment will be construed under and enforced by the laws of the State of [Insert Property Location].

[Signature Page Follows]

SIG RCRS C MF 2023 Venture LLC
Asset Transfer Agreement
Version 08-2022 (Standard)

IN WITNESS WHEREOF, this Assignment is executed by Assignor and Assignee on the dates set forth below their respective signatures hereinbelow, but to be effective for all purposes, however, as of the date first above written.

**ASSIGNOR**:

**FEDERAL DEPOSIT INSURANCE
CORPORATION IN ITS CAPACITY
AS RECEIVER FOR SIGNATURE BRIDGE BANK, N.A.**

By: _____

Name: _____

Title: _____

Date: _____, 20__

**ASSIGNEE**:

_____, **LLC**,
a _____ limited liability company

By: _____

Name: _____

Title: _____

Date: _____, 20__

J-2-6

**EXHIBIT A**
**TO GENERAL ASSIGNMENT AND ASSUMPTION**

**<u>Description of the Land</u>**

[to be attached]

J-2-7

ATTACHMENT J-3[12]
**to**
**Asset Transfer Agreement**

*[Note to preparer: The below form of Receiver's Quitclaim Deed must in each instance be conformed to the laws of the state wherein the applicable Potentially Defectively Foreclosed Receiver Acquired Property is located, including, without limitation, those necessary to cause it to be recorded in the county in which such Potentially Defectively Foreclosed Receiver Acquired Property is located. No other changes are to be made thereto, <u>except</u> that this "Note" and the bracketed instructions in bold in the text of the Receiver's Quitclaim Deed (including <u>Exhibit B</u> thereto) must be deleted from the form of the completed Receiver's Quitclaim Deed.  Delete this instruction prior to execution.]*

Recording requested by                                                    Asset No. _____
and when recorded return to:

_____

_____

_____


_____
(Space above this line reserved for Recorder of Deeds)

**QUITCLAIM DEED**

STATE OF _____          §
                                                          §
COUNTY OF _____          §

RECITALS

WHEREAS, Signature Bank, New York, New York ( "<u>Signature Bank</u>") was closed by the New York State Department of Financial Services, and the Federal Deposit Insurance Corporation (acting in any capacity, the "<u>FDIC</u>") was appointed as receiver for Signature Bank ("<u>FDIC as Receiver of Signature Bank</u>").  The FDIC as Receiver of Signature Bank may have obtained an interest in or to the Property, either directly or as a matter of federal law, 12 U.S.C. § 1821(d)(2)(A)(i), as successor in interest to Signature Bank;

WHEREAS, any such interest of the FDIC as Receiver of Signature Bank in or to the Property, among other things, was transferred by the FDIC as Receiver of Signature Bank to

_____

[12]  Form to be adjusted, where relevant, to include, or as a separate form to cover, the transfer from the Prior Transferor to Transferor.

J-3-1

Signature Bridge Bank, N.A. ("<u>Signature Bridge Bank</u>" or the "<u>Failed Bank</u>", as the context may require).

WHEREAS, Signature Bridge Bank was closed by the Office of the Comptroller of the Currency, and the FDIC was appointed as receiver for Signature Bridge Bank (in such capacity, the "<u>Receiver</u>"); and

WHEREAS, the Receiver, as successor-in-interest to the Failed Bank, obtained all interest of the Failed Bank (whatever it may be) in or to the hereinafter described Property, either directly or as a matter of federal law, 12 U.S.C. § 1821(d)(2)(A)(i);

NOW, THEREFORE, the Receiver (hereinafter, "<u>Grantor</u>"), whose address is 1601 Bryan Street, Dallas, Texas 75201, for and in consideration of the sum of TEN AND NO/100 DOLLARS ($10.00) and other good and valuable consideration to said Grantor paid by Grantee named herein, the receipt of which is hereby acknowledged, has remised, released and QUITCLAIMED, and by these presents does remise, release, and forever QUITCLAIM unto _____ **[if a legal entity, include type and state in which formed]** ("<u>Grantee</u>"), whose mailing address is _____, all of Grantor's right, title and interest, if any, in and to that certain real property situated in _____ County, _____, described on <u>Exhibit A</u> attached hereto and made a part hereof for all purposes, together with any improvements thereto and any rights and appurtenances pertaining thereto (collectively, the "<u>Property</u>"), **subject, without limitation, to** all standby fees, real estate taxes, and assessments on or against the Property (which fees, taxes and assessments shall be subject to any applicable provisions in the Transfer Agreement defined below), as well as zoning, building, and other laws, regulations, and ordinances of municipal and other governmental authorities, if any, affecting the Property, and all matters set forth on <u>Exhibit B</u> attached hereto and made a part hereof for all purposes (all of the foregoing being collectively referred to as the "<u>Permitted Exceptions</u>");

TO HAVE AND TO HOLD the Property, together with all and singular the rights and appurtenances thereto in any wise belonging to Grantor, unto Grantee, its legal representatives, successors and assigns forever, **subject, without limitation to, to** the Permitted Exceptions. Neither Grantor nor Grantor's successors or assigns may have, claim, or demand any right or title to the Property or any part thereof.

Grantee, by its execution and acceptance of delivery of this Quitclaim Deed, assumes and agrees to perform any and all obligations of Grantor, Signature Bank or the Failed Bank under the Permitted Exceptions.

**GRANTEE, BY ITS EXECUTION AND ACCEPTANCE OF DELIVERY OF THIS QUITCLAIM DEED, ACKNOWLEDGES AND AGREES THAT GRANTOR HAS NOT MADE, DOES NOT MAKE, AND SPECIFICALLY NEGATES AND DISCLAIMS ANY AND ALL REPRESENTATIONS, WARRANTIES, PROMISES, COVENANTS, AGREEMENTS, OR GUARANTIES OF ANY KIND OR CHARACTER WHATSOEVER, WHETHER EXPRESS OR IMPLIED (INCLUDING, WITHOUT LIMITATION, ANY**

J-3-2

**WARRANTIES THAT MIGHT OTHERWISE BE IMPLIED BY STATUTE OR LAW), ORAL OR WRITTEN, PAST, PRESENT, OR FUTURE, OF, AS TO, CONCERNING, OR WITH RESPECT TO TITLE TO THE PROPERTY.**

FURTHER, GRANTEE, BY ITS EXECUTION AND ACCEPTANCE OF DELIVERY OF THIS QUITCLAIM DEED, ACKNOWLEDGES AND AGREES THAT (i) GRANTOR HAS NOT MADE, DOES NOT MAKE, AND SPECIFICALLY NEGATES AND DISCLAIMS ANY REPRESENTATIONS, WARRANTIES, PROMISES, COVENANTS, AGREEMENTS, OR GUARANTIES OF ANY KIND OR CHARACTER WHATSOEVER, WHETHER EXPRESS OR IMPLIED, ORAL OR WRITTEN, PAST, PRESENT, OR FUTURE, OF, AS TO, CONCERNING, OR WITH RESPECT TO (A) THE VALUE, NATURE, QUALITY, OR CONDITION OF THE PROPERTY, INCLUDING, WITHOUT LIMITATION, THE WATER, SOIL, AND GEOLOGY, (B) ANY INCOME TO BE DERIVED FROM THE PROPERTY, (C) THE SUITABILITY OF THE PROPERTY FOR ANY AND ALL ACTIVITIES AND USES WHICH GRANTEE MAY CONDUCT OR HOPE TO CONDUCT THEREON, (D) THE COMPLIANCE OF OR BY THE PROPERTY OR ITS OPERATION WITH ANY LAWS, RULES, ORDINANCES, OR REGULATIONS OF ANY APPLICABLE GOVERNMENTAL AUTHORITY OR BODY, (E) THE HABITABILITY, MERCHANTABILITY, MARKETABILITY, PROFITABILITY, OR FITNESS FOR A PARTICULAR PURPOSE OF THE PROPERTY OR ANY PART THEREOF, (F) THE MANNER OR QUALITY OF THE CONSTRUCTION OR MATERIALS, IF ANY, INCORPORATED INTO THE PROPERTY, (G) THE MANNER, QUALITY, STATE OF REPAIR, OR LACK OF REPAIR OF THE PROPERTY OR ANY PART THEREOF OR ANY IMPROVEMENTS THERETO, (H) THE EXISTENCE, QUALITY, NATURE, ADEQUACY, OR PHYSICAL CONDITION OF ANY UTILITIES SERVING THE PROPERTY, OR (I) ANY OTHER MATTER WITH RESPECT TO THE PROPERTY, AND SPECIFICALLY, THAT GRANTOR HAS NOT MADE, DOES NOT MAKE, AND SPECIFICALLY DISCLAIMS ANY REPRESENTATIONS REGARDING COMPLIANCE WITH ANY ENVIRONMENTAL PROTECTION, POLLUTION, OR LAND USE LAWS, RULES, REGULATIONS, ORDERS, OR REQUIREMENTS, INCLUDING, WITHOUT LIMITATION, THE DISPOSAL OR EXISTENCE, IN OR ON THE PROPERTY OR ANY PART THEREOF, OF ANY HAZARDOUS MATERIALS; (ii) GRANTEE HAS FULLY INSPECTED THE PROPERTY AND THAT THE CONVEYANCE HEREUNDER OF THE PROPERTY IS "AS IS" AND "WITH ALL FAULTS," AND GRANTOR HAS NO OBLIGATION TO ALTER, REPAIR, OR IMPROVE THE PROPERTY OR ANY PART THEREOF OR ANY IMPROVEMENTS THERETO; AND (iii) NO WARRANTY HAS ARISEN THROUGH TRADE, CUSTOM, OR COURSE OF DEALING WITH GRANTOR, AND ALL STATUTORY, COMMON LAW, AND CUSTOMARY COVENANTS AND WARRANTIES, IF ANY, OF WHATEVER KIND, CHARACTER, NATURE, PURPOSE, OR EFFECT, WHETHER EXPRESS OR IMPLIED OR ARISING BY OPERATION OF LAW, ARE HEREBY EXPRESSLY, UNCONDITIONALLY, AND IRREVOCABLY WAIVED, DISCLAIMED, AND EXCLUDED FROM THIS QUITCLAIM DEED, NOTWITHSTANDING ANY CUSTOM OR PRACTICE TO THE CONTRARY, OR ANY STATUTORY, COMMON LAW, DECISIONAL, HISTORICAL, OR CUSTOMARY MEANING, IMPLICATION, SIGNIFICANCE, EFFECT, OR USE OF CONTRARY IMPORT OF ANY WORD, TERM, PHRASE OR PROVISION HEREIN.

SIG RCRS C MF 2023 Venture LLC
Asset Transfer Agreement
Version 08-2022 (Standard)

Further, by its acceptance of delivery of this Quitclaim Deed, Grantee or anyone claiming by, through, or under Grantee, hereby fully releases Grantor, the Failed Bank, Signature Bank, and the FDIC in any and all of its various other capacities, and their respective employees, officers, directors, representatives, and agents from any and all claims, costs, losses, liabilities, damages, expenses, demands, actions, or causes of action that it or they may now have or hereafter acquire, whether direct or indirect, known or unknown, suspected or unsuspected, liquidated or contingent, arising from or related to the Property in any manner whatsoever.  This covenant releasing Grantor, the Failed Bank, Signature Bank, and the FDIC in any and all of its various other capacities is a covenant running with the Property and will be binding upon Grantee, its successors, and assigns.

The fact that certain encumbrances, limitations, or other matters or conditions may be mentioned, disclaimed, or excepted in any way herein, whether specifically or generally, is not a covenant, representation, or warranty of Grantor as to any encumbrances, limitations, or any other matters or conditions not mentioned, disclaimed, or excepted.  Notwithstanding anything herein to the contrary, however, nothing herein will be construed or deemed as an admission by Grantor or Grantee to any third party of the existence, validity, enforceability, scope, or location of any encumbrances, limitations, or other matters or conditions mentioned, disclaimed, or excepted in any way herein, and nothing will be construed or deemed as a waiver by Grantor or Grantee of its respective rights, if any, but without obligation, to challenge or enforce the existence, validity, enforceability, scope, or location of same against third parties.

By its execution and acceptance of delivery of this Quitclaim Deed, Grantee hereby assumes the payment of all *ad valorem* taxes, standby fees, and general and special assessments of whatever kind and character affecting the Property which are due, or which may become due, including, without limitation, taxes or assessments becoming due by reason of a change in usage or ownership, or both, of the Property or any portion thereof, in each case subject to any applicable provisions set forth in that certain Asset Transfer Agreement between Grantor, SIG RCRS C MF 2023 Venture LLC, a Delaware limited liability company, and others, dated as of  December 15, 2023 (the "Transfer Agreement").

IN  WITNESS  WHEREOF,  this  Quitclaim  Deed  is  executed  on  this  _____  day  of _____, _____.

GRANTOR:

**FEDERAL DEPOSIT INSURANCE
CORPORATION IN ITS CAPACITY
AS RECEIVER FOR SIGNATURE BRIDGE BANK, N.A.**

By: _____
Name: _____
Title: _____

GRANTEE:

_____ **[print name of legal entity, including type of**
_____ **entity and state in which it was formed]**

By: _____
Name: _____
Title: _____

J-3-5

ACKNOWLEDGMENTS

STATE OF _____    §
                             §
COUNTY OF _____    §

      This instrument was acknowledged before me on the _____ day of _____, _____, by _____, Attorney-in-Fact of the Federal Deposit Insurance Corporation, as Receiver for _____, on behalf of said entity.

                                    _____
                                      Notary Public, State of _____

STATE OF _____    §
                             §
COUNTY OF _____    §

      This instrument was acknowledged before me on the _____ day of _____, _____, by _____, _____ of _____ _____, on behalf of said entity.

                                      _____
                                      Notary Public, State of _____

SIG RCRS C MF 2023 Venture LLC
Asset Transfer Agreement
Version 08-2022 (Standard)

EXHIBIT A

[Legal Description of the Property]

*[<u>NOTE TO PREPARER</u>: This legal description should be, except in unique circumstances, the legal description of the Property as found in the conveyancing instrument into Grantor or into the Failed Bank named in the first recital hereinabove.  Delete this instruction prior to execution.]*

J-3-7

<u>EXHIBIT B</u>

[Permitted Exceptions]

*[Note to preparer: <u>List hereon</u> (i) the standard printed exceptions contained in Schedule B of the Title Policy as otherwise set forth in said Schedule B, and (ii) all matters or conditions affecting title to the Property, including those reflected on the Title Commitment or the Survey.  Delete this instruction prior to execution.]*

1. Restrictive covenants recorded in Volume _____, Page _____, and Volume _____, Page _____, all in the _____ Records of _____ County, _____ **[the standard exception as too restrictive covenants should be deleted in its entirety unless recorded restrictive covenants are specified, in which event the recording information thereof must be listed under such exception]**.

2. Any discrepancies, conflicts, or shortages in area or boundary lines, or any encroachments or protrusions, or any overlapping of improvements.

3. Any title or rights asserted by anyone, including, but not limited to, persons, the public, corporations, governments or other entities, to tidelands, or lands comprising the shores or beds of navigable or perennial rivers and streams, lakes, bays, gulfs or oceans, or to lands beyond the line of the harbor or bulkhead lines as established or changed by any government, or to filled-in lands, or artificial islands, or to statutory water rights, including riparian rights, or to the area extending from the line of mean low tide to the line of vegetation, or the rights of access to that area or easement along and across that area.

4. Rights of tenants and/or lessees in possession under any recorded and/or unrecorded leases and/or rental agreements.

5. **[e.g., Drainage easement as recorded in Volume _____, Page _____ of the Deed and Plat Records of _____ County, _____, and as shown on that certain survey prepared by _____, surveyed on _____, and updated on _____, with certification executed by _____, Registered Professional Land Surveyor No. _____, on _____, Project No. _____ (herein, the "Survey")]**.

6. **[e.g., Consequences, if any, arising from the encroachment of Building – 1 and Building – 3 over or into the twenty-five foot (25') building setback line pursuant to Zoning B-3, as shown on the Survey]**.

7. **[CONTINUE NUMBERING AS NEEDED TO LIST ALL ITEMS REQUIRED BY THE ABOVE INSTRUCTIONS.]**

J-3-8

ATTACHMENT K[13]
to
**Asset Transfer Agreement**


*[Note to FDIC Preparer:  When preparing the actual Limited Power of Attorney, delete this instruction and the reference to Attachment K above.]*

### LIMITED POWER OF ATTORNEY
### SIG RCRS C MF 2023 VENTURE LLC


KNOW ALL PERSONS BY THESE PRESENTS that the FEDERAL DEPOSIT INSURANCE CORPORATION, a corporation organized and existing under an Act of Congress, hereafter called the "FDIC," pursuant to the applicable resolutions of the Board of Directors of the FDIC, and redelegations thereof, hereby designates the individuals set forth on Exhibit A, attached hereto and made a part hereof (the "Attorneys-in-Fact"), to act on behalf of (a) the FDIC acting in its capacity as receiver for Signature Bridge Bank, N.A. (the FDIC, acting in its capacity as receiver for Signature Bridge Bank, N.A., the "Receiver of Signature Bridge Bank"), and, upon termination of the Receiver of Signature Bridge Bank, to act on behalf of the FDIC in its corporate capacity as successor to the Receiver of Signature Bridge Bank, and (b) the FDIC acting in its capacity as receiver for Signature Bank, New York, New York (the FDIC, acting in its capacity as receiver for Signature Bank, New York, New York, the "Receiver of Signature Bank"), and, upon termination of the Receiver of Signature Bank, to act on behalf of the FDIC in its corporate capacity as successor to the Receiver of Signature Bank, in each case for the sole purpose of executing the documents outlined below; and

WHEREAS the undersigned has full authority to execute this Limited Power of Attorney on behalf of the FDIC;

NOW THEREFORE, the FDIC grants to the Attorneys-in-Fact the authority, subject to the limitations herein, as follows:

1.      To execute, acknowledge, seal and deliver on behalf of the FDIC, individually and not jointly by and through the FDIC, acting in any capacity, any and all deeds of trust/mortgage note endorsements, assignments of deeds of trust/mortgages and other recorded documents, partial or total satisfaction/release/reconveyances of deeds of trust/mortgages, UCC transfer documents, subordinations, tax authority notifications and declarations, deeds, bills of sale, and other instruments of sale, transfer and conveyance, appropriately completed, with all ordinary or necessary endorsements, acknowledgments, affidavits and supporting documents as may be necessary or appropriate to evidence the sale and transfer of any asset pursuant to that certain Asset

---

[13]     Form to be adjusted to include, or for having a separate form, a relevant Limited Power of Attorney granted by the Prior Transferor.

Transfer Agreement dated as of December 15, 2023 between SIG RCRS C MF 2023 Venture LLC, and the Receiver of Signature Bridge Bank.

The form which the Attorney(s)-in-Fact must use for endorsing promissory notes or preparing allonges to promissory notes is as follows:

Pay to the order of
SIG RCRS C MF 2023 Venture LLC Without Recourse and Without Representation or Warranty, Express, Implied or By Operation of Law, of any Kind or Nature Whatsoever

**FEDERAL DEPOSIT INSURANCE CORPORATION IN ITS CAPACITY AS RECEIVER FOR SIGNATURE BRIDGE BANK, N.A. [AND AS RECEIVER FOR SIGNATURE BANK, NEW YORK, NEW YORK]**

By: _____
Name: _____
Title:  Attorney-in-Fact

All documents of assignment, conveyance or transfer must contain this sentence: "This assignment is made without recourse, and without representation or warranty, express, implied or by operation of law, of any kind and nature whatsoever, by the Federal Deposit Insurance Corporation in any capacity."

2.       To grant to each Attorney-in-Fact full power and authority to do and perform all acts necessary to carry into effect the powers granted by this Limited Power of Attorney as fully as the FDIC in any capacity might or could do with the same validity as if all and every such act had been herein particularly stated, expressed and especially provided for.

This Limited Power of Attorney is effective from _____, 20___ and will continue in full force and effect through _____ [INSERT DAY IMMEDIATELY PRIOR TO THE DATE OCCURRING EIGHTEEN MONTHS AFTER CLOSING DATE], unless otherwise terminated by an official of the FDIC or its successors and assigns authorized to do so ("Revocation"). At such time this Limited Power of Attorney will be automatically revoked.  Any third party may rely upon this document as the named individual(s)' authority to continue to exercise the powers herein granted unless (1) a Revocation has been recorded in the public records of Office of the County Clerk of Dallas County, Texas; (2) Notice of the Receivership Termination has been published in the *Federal Register*; or (3) a third party has received actual notice of a Revocation.

K-2

IN WITNESS WHEREOF, the FDIC by its duly authorized officer empowered to act on its behalf by appropriate resolution of its Board of Directors, or redelegations thereof, has caused these presents to be executed and subscribed in its name this __ __, 20___.

**FEDERAL DEPOSIT INSURANCE CORPORATION**

By:_____

Name: _____

Title:  _____

Signed in the presence of the following witnesses by means of an interactive two-way audio and video communication:

By:_____

Name:_____

     Witness

By:_____

Name:_____

     Witness

**STATE OF TEXAS**

**COUNTY OF** _____

Before me, _____, on this day personally appeared by means of an interactive two-way audio and video communication _____, duly authorized officer for the FDIC, who is known to me to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that they executed the same for the purposes and consideration therein expressed. This notarial act was an online notarization.

Given under my hand and seal of office on _____.

_____

Name: _____

Notary Public in and for the State of Texas

My Commission expires: _____

K-3

SIG RCRS C MF 2023 Venture LLC
Asset Transfer Agreement
Version 08-2022 (Standard)

Exhibit A
## TO LIMITED POWER OF ATTORNEY

### Attorneys-in-Fact

*[list names and organizations of Attorney(s)-in-Fact]*

**THIS EXHIBIT A TO LIMITED POWER OF ATTORNEY HAS BEEN PREPARED BY THE FDIC AND MAY NOT BE AMENDED, REVISED, ALTERED OR SUBSTITUTED IN ANY WAY WITHOUT THE EXPRESS WRITTEN CONSENT OF THE FDIC.**

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

K-4

## CERTIFICATE OF CONFORMITY OF ACKNOWLEDGMENT
## NYS RPL § 299-a

STATE OF TEXAS          :
                        : ss.:
COUNTY OF DALLAS        :


      The undersigned does hereby certify that s/he is an attorney-at-law duly admitted to practice in the State of Texas and residing at _____, State of Texas; that s/he is a person duly qualified to make this certificate of conformity pursuant to Section 299-a of the Real Property Law of the State of New York; that s/he is fully acquainted with the laws of the State of Texas pertaining to the acknowledgment or proof of deeds of real property to be recorded therein; that the foregoing acknowledgment by _____ named in the foregoing instrument taken before _____, a notary public (or other officer) was taken in the manner prescribed by such laws of the State of Texas, being the state in which it was taken; and that it duly conforms with such laws and is in all respects valid and effective in such state.

      Witness my signature this _____ day of _____ 20___.


_____
_____
Attorney-at-law for the State of Texas,
residing in the State of Texas

K-5

SIG RCRS C MF 2023 Venture LLC
Asset Transfer Agreement
Version 08-2022 (Standard)

ATTACHMENT L
to
**Asset Transfer Agreement**

**FORM OF LITIGATION SUBSTITUTION REPORT**

| Sale Key | Fund No | 4C Loan No | Asset Name | Case Name | Court | Docket | Date Matter Opened Filed | Foreclosure Type | Bankruptcy Chapter | Other Litigation | FDIC Responsible ATTY Name | FDIC Responsible Attorney E-Mail | FDIC Responsible Attorney Phone | Outside Counsel Firm Name | Outside Counsel Attorney Name | Outside Counsel Attorney Email | Outside Counsel Attorney Phone Number | Next Critical or Significant Date | Action Required Desc | Description of Litigation |
|------|------|------|------|------|------|------|------|------|------|------|------|------|------|------|------|------|------|------|------|------|
| | | | | | | | | | | | | | | | | | | | | |

L-1

SIG RCRS C MF 2023 Venture LLC
Asset Transfer Agreement
Version 08-2022 (Standard)