UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JOSHUA GOTLIB,

                        Plaintiff,

            v.

FEDERAL DEPOSIT INSURANCE
CORPORATION as RECEIVER FOR
SIGNATURE BANK, N.A., SIGNATURE
BRIDGE BANK, N.A.,

                        Defendant.

---

24-CV-8197 (RA)

OPINION & ORDER

RONNIE ABRAMS, United States District Judge:

Plaintiff Joshua Gotlib brings this action against Defendant Federal Deposit Insurance Corporation (the "FDIC"), in its capacity as receiver for Signature Bank, N.A., and Signature Bridge Bank, N.A., asserting a single claim for breach of contract.  The FDIC moves pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss Gotlib's claim.  For the reasons that follow, the motion is granted.

## BACKGROUND

The following facts are drawn from the allegations set forth in the Complaint ("Compl.") and the documents attached thereto, *see* ECF No. 1, and are taken as true for the purposes of this motion to dismiss.

Gotlib is the principal and sole owner of Black Spruce Management LLC.  Compl. ¶ 16. In mid-2020, when Signature Bank experienced a "wave of defaults" in its multi-family housing loan portfolio, *id.* ¶ 20, Gotlib purchased 48 of the defaulted properties and agreed to assume 35 of the preexisting Signature Bank loans on those properties at face value, *id.* ¶¶ 21–22.  In the fall of 2021, Gotlib purchased 14 more properties that were subject to defaulted Signature Bank loans

and again assumed 13 of the loans on those properties at face value.  *Id.* ¶ 23.  He also acquired

Signature Bank loans for two additional properties (collectively, the "Loans").  *Id.* ¶ 25.  Gotlib

became a guarantor as to each of the Loans by executing a limited guarantee for the benefit of

Signature Bank.  *Id.* ¶ 27.

In exchange for assuming the Loans, Signature Bank agreed to provide Gotlib a right of

first refusal ("ROFR") on each loan.  *Id.* ¶ 28.  The operative note for each loan contains the

following ROFR provision (or substantially similar language):

> Notwithstanding anything contained herein or in the other Loan Documents, in the
> event that the Bank elects to sell, assign, transfer or negotiate this Note and the
> Loan Documents to a bona fide third party unrelated and unaffiliated with [the]
> Bank (hereinafter, a "Sale") by its acceptance of this Note the Bank agrees to
> provide the Guarantor (or its affiliated entity) a right of first option by providing
> the Guarantor with notice of the intended Sale which states the material terms and
> conditions upon which the Bank has agreed to accept for the Sale (the "ROFR
> Notice").  The Guarantor shall notify the Bank . . . that he (or his affiliated entity)
> will meet the terms of the Sale and purchase the Note and Loan Documents on the
> same terms contained therein[.]

*Id.* ¶ 29; *id.* Ex. B.  The operative note for each loan further provides that "[a]ny purchaser,

assignee, transferee or participant shall have the same rights, benefits and obligations under [the

note] as it would have if it were [Signature Bank]."  *Id.* ¶ 30; *id.* Ex. B.

In March 2023, the New York State Department of Financial Services closed Signature

Bank, placed it into receivership, and appointed the FDIC as receiver.  *Id.* ¶ 40.  The FDIC created

Signature Bridge Bank and transferred to it substantially all of Signature Bank's assets, including

the Loans.  *Id.*  Later that month, the Office of the Comptroller of the Currency closed Signature

Bridge Bank, placed it into receivership, and appointed the FDIC as receiver.  *Id.* ¶ 41.  The FDIC

later sold substantially all of Signature Bank's deposits and loans to another bank, but retained

approximately $60 billion in loans in the receivership, including the Loans.  *Id.*

In the fall of 2023, the FDIC announced its intention to market the remnants of Signature

Bank's loan portfolio through a competitive sealed bid sale. *Id.* ¶ 48. Pursuant to that plan, a portfolio of Signature Bank loans on rent stabilized and rent controlled properties, which included the Loans, would be transferred to a new joint venture holding company, and a portion of the equity in that company would be sold to the winning bidder. *Id.* ¶ 50. The winning bidder would be responsible for the management, servicing, and ultimate disposition of the loans. *Id.*

In November and December 2023, after learning that the FDIC had selected a winning bidder for its sale of equity in the joint venture, Gotlib contacted the FDIC in an effort to invoke his ROFR. *Id.* ¶ 52–53, 57. The FDIC declined to issue an ROFR Notice to Gotlib. *Id.* ¶ 54, 58.

On December 15, 2023, the FDIC announced that it had closed the contemplated transaction on the portfolio that included the Loans. *Id.* ¶ 59. The transaction was completed in four steps. First, the FDIC, in its capacity as receiver, formed a Delaware limited liability company named "SIG RCRS C MF 2023 VENTURE LLC" (the "Joint Venture"), in which it owned a 100% interest as the sole member. *Id.* Ex. K at 1. Second, the FDIC transferred the portfolio that included the Loans to the Joint Venture. *See id.* Ex. G. Third, pursuant to the competitive sealed bid sale, the FDIC sold a five percent interest in the Joint Venture to SIG-23 PRIVATE OWNER LLC (the "Private Owner"), *see id.* Ex. H, an entity owned by The Community Preservation Corporation and Related Real Estate Fund III, L.P., *see id.* Ex. I; *id.* ¶ 71. Fourth, the Joint Venture's operating agreement was amended to (1) reflect the equity sale, and (2) appoint the Private Owner as the manager, with responsibility for servicing the loans held by the Joint Venture. *See id.* Ex. K; *id.* ¶ 74–75.

On December 20, 2023, following the closing of the transaction, the FDIC sent Gotlib an Amended Notice of Discovered Creditor, which advised him that he had until March 12, 2024 to submit an administrative claim to the FDIC. *Id.* ¶ 99. Gotlib timely submitted a Statement of

Claim to the FDIC. *Id.* ¶ 100.  The FDIC disallowed Gotlib's claim on August 30, 2024. *Id.* ¶ 101.

Gotlib commenced this action on October 28, 2024, alleging that the FDIC breached the notes underlying the Loans by selling them without honoring his ROFR. *See* ECF No. 1.  The FDIC filed a motion to dismiss on January 27, 2025, *see* ECF No. 13, which Gotlib has opposed, *see* ECF No. 22 ("Opp'n").

## LEGAL STANDARD

Where the FDIC disallows a timely filed claim, the Court reviews the claim *de novo. See City of New York v. F.D.I.C.*, 40 F. Supp. 2d 153, 160 (S.D.N.Y. 1999).  To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.*[1]  On a Rule 12(b)(6) motion, the question is "not whether [the plaintiff] will ultimately prevail," but "whether his complaint [is] sufficient to cross the federal court's threshold." *Skinner v. Switzer*, 562 U.S. 521, 529–30 (2011).  In answering this question, the Court must "accept as true all factual allegations . . . but [is] not required to credit conclusory allegations or legal conclusions couched as factual allegations." *Dane v. UnitedHealthcare Ins. Co.*, 974 F.3d 183, 188 (2d Cir. 2020).

## DISCUSSION

Gotlib alleges that the series of transactions that culminated in the sale to the Private Owner

---

[1] Unless otherwise indicated, this opinion and order omits all internal quotation marks, citations, footnotes, omissions, emphases, and alterations in quoted text.

of five percent equity in the Joint Venture violated his ROFRs in the Loans.  In its motion to dismiss, the FDIC principally contends that none of the transactions triggered the ROFRs, and that Gotlib thus has failed to state a claim.  The Court agrees.

"In its capacity as receiver, the FDIC steps into the shoes of the failed bank and has a responsibility to marshal the assets of the bank and to distribute them to the bank's creditors and shareholders." *Golden Pac. Bancorp. v. F.D.I.C.*, 375 F.3d 196, 201 (2d Cir. 2004).  When it does so, the FDIC assumes the assets and liabilities of the failed bank, including the rights of the bank that existed prior to receivership.  *See* 12 U.S.C. § 1821(d)(2)(A); *O'Melveny & Myers v. F.D.I.C.*, 512 U.S. 79, 86 (1994); *Hillside Metro Assocs., LLC v. JPMorgan Chase Bank, Nat. Ass'n*, No. 10-CV-1772, 2011 WL 5008368, at *1 (E.D.N.Y. Oct. 20, 2011).  Thus, in its capacity as receiver, the FDIC became "the Bank" as that term is used in the ROFRs.  Compl. Ex. B.

As an initial matter, the placement of Signature Bank in receivership did not trigger the ROFRs.  "A receiver . . . does not voluntarily step into the shoes of the bank; it is thrust into those shoes." *Granville Gold Tr.-Switzerland v. Commissione Del Fullimento/Inter Change Bank*, 924 F. Supp. 397, 407 (E.D.N.Y. 1996), *aff'd sub nom. Granville Gold Tr. v. Commissione Del Fullimento/Inter Change Bank*, 111 F.3d 123 (2d Cir. 1997).  Accordingly, when Signature Bank entered receivership, it did not "*elect*[] to sell, assign, [or] transfer" the Loans.  Compl. ¶ 29; *id.* Ex. B (emphasis added).

Nor did the transfer of the Loans to Signature Bridge Bank implicate the ROFRs.  The FDIC created Signature Bridge Bank pursuant to 12 U.S.C. § 1821(n), which authorizes it to establish bridge depository institutions.  As the FDIC explained when it established Signature Bridge Bank, a bridge bank "assumes the deposits and certain other liabilities and purchases certain assets of a failed bank," and is "designed to 'bridge' the gap between the failure of a bank and the

time when the FDIC can stabilize the institution and implement an orderly resolution." Fed. Deposit Ins. Corp., *FDIC Establishes Signature Bridge Bank, N.A., as Successor to Signature Bank*, https://www.fdic.gov/news/press-releases/2023/pr23018.html (March 12, 2023); *see* Compl. n.4 (citing *id.*). The ROFRs are effective only as to transfers to "a bona fide third party unrelated and unaffiliated with the Bank." Compl. ¶ 29. Gotlib does not plausibly allege—nor could he—that Signature Bridge Bank was such a third party.

For the same reason, Gotlib fails to plausibly allege that the FDIC's transfer of the loans to the Joint Venture triggered the ROFRs. "When allegations contained within the complaint [] are contradicted by documents attached to the complaint, the documents control, and the Court need not accept the allegations contained within the complaint [] as true." *Sotheby's, Inc. v. Stone*, 388 F. Supp. 3d 265, 272 (S.D.N.Y. 2019). The Asset Transfer Agreement between the FDIC and the Joint Venture makes clear that, at the time of the transfer, the Private Owner did not yet own equity in the Joint Venture. *See* Compl. Ex. G at 1. Moreover, the Joint Venture's operating agreement confirms that, prior to the Private Owner's investment, the FDIC owned 100% of the Joint Venture. *See id.* Ex. K at 3. Accordingly, at the time the FDIC transferred the Loans to the Joint Venture, the Joint Venture was not "a bona fide third party unrelated and unaffiliated with the Bank," and thus the transfer did not implicate the ROFRs. *Id.* ¶ 29.

Finally, Gotlib contends that the sale of five percent equity in the Joint Venture to the Private Owner triggered the ROFRs. In support of this argument, he points to the FDIC's repeated description of the transaction as a sale of Signature Bank's assets, *see* Opp'n at 5–6; Compl. ¶¶ 45–49, 54, as well as the fact that, after he initiated administrative proceedings against the FDIC, it retroactively removed that language from its public announcements, *see* Opp'n at 8; Compl. ¶ 66. But the FDIC's use of that language—and its apparent attempt to correct itself after the fact—did

not convert the sale of the Joint Venture's equity into a sale of its underlying assets.  *See Laish, Ltd. v. Jafora-Tabori, Ltd.*, No. 02-CV-1322, 2006 WL 270250, at \*6 (E.D.N.Y. Feb. 1, 2006) ("The conduct of the parties may fix a meaning to words of doubtful import.  It may not change the terms of a contract." (quoting *Nau v. Vulcan Rail & Constr. Co.*, 286 N.Y. 188, 199 (1941))).  Rather, under New York law, which governs the ROFRs, *see id.* Ex. B., the "purchase of a company's stock is distinct from a sale of the company's assets," *New Paradigm Software Corp. v. New Era of Networks, Inc.*, No. 99-CV-12409, 2002 WL 31749396, at \*8 (S.D.N.Y. Dec. 9, 2002) (collecting cases); *see also Matter of Fontana D'Oro Foods, Inc.*, 65 N.Y.2d 886, 888 (1985) ("The well-settled rule is that ownership of capital stock is by no means identical with or equivalent to ownership of corporate property."); *S. Advanced Materials, LLC v. Abrams*, 220 A.D.3d 74, at \*83 (N.Y. App. Div. 2023), *leave to appeal denied,* 42 N.Y.3d 902 (2024) ("[The company] itself did not dispose of any assets when its previous shareholders sold their equity."). Accordingly, the sale of the Joint Venture's equity did not constitute a sale or transfer of the Loans, and thus did not trigger the ROFRs.  *See Torrey Delivery, Inc. v. Chautauqua Truck Sales & Serv., Inc.*, 47 A.D.2d 279, 282–83 (N.Y. App. Div. 1975) ("Ownership of capital stock being distinct from ownership of corporate property, it follows that the sale of such stock is not a sale of corporate property.").

Gotlib's arguments to the contrary are unpersuasive.  First, he relies on *New York Tile Wholesale Corp. v. Thomas Fatato Realty Corp.* for the proposition that "the sale to a third party of a partial interest in leased premises may, under certain circumstances, trigger a right of first refusal."  13 A.D.3d 425, 428 (N.Y. App. Div. 2004).  In that case, the plaintiff held a right of first refusal with respect to the sale of property it leased from the defendant, and the defendant transferred title to the property to an entity in which an unrelated third party held a 40% interest.

*Id.* at 426–28. The court recognized that "not all transfers of title amount to a 'sale' triggering the right of first refusal," and noted, as an example, that "the sale of the outstanding stock of a corporate landlord to a third party" does not trigger such a right. *Id.* at 427–28. Nonetheless, it reversed the trial court's grant of summary judgment on the grounds that, consistent with the plaintiff's allegations, the record suggested that the defendant may have acted in "bad faith" by "effect[ing] the restructuring in order to redevelop and resell the property to third parties while precluding the plaintiff from acquiring it through the exercise of its right of first refusal." *Id.* By contrast, here, the Complaint does not allege that the FDIC deliberately structured the transaction to avoid triggering Gotlib's ROFRs—or, for that matter, ROFRs in general. Rather, the FDIC sold equity in the Joint Venture as part of a marketing process for a portfolio of thousands of loans, of which the Loans comprised only a small fraction. Compl. ¶ 48. Given the size of the loan portfolio at issue, there is no reasonable inference that the FDIC acted in bad faith specifically to deprive Gotlib of his ROFRs. The Court therefore finds no basis to deviate from the general rule that the "purchase of a company's stock is distinct from a sale of the company's assets." *New Paradigm*, 2002 WL 31749396, at *8.

Second, Gotlib argues that the sale of Joint Venture equity triggered the ROFRs because the Private Owner now "substantially control[s] the management of the Venture and the underlying assets, including the Loans." Compl. ¶ 73. He cites no case law in support of this contention, and the Court finds it to be without merit. Both New York and Delaware law clearly hold that "a member of an LLC has no legal interest in the assets that belong to the LLC." *United States v. Swartz Fam. Tr.*, 67 F.4th 505, 516 (2d Cir. 2023); *see also In re Forfeiture Ord. of Tim Leissner*, No. 23-MC-1505, 2024 WL 4424201, at *5 (E.D.N.Y. Oct. 5, 2024) (collecting cases). In other words, "[a] corporation's property rights are entirely distinct from those of its shareholders."

8

*Glenoit Mills, Inc. v. Miss Bobbie Originals, Inc.*, No. 93-CV-5494, 1994 WL 198763, at *2 (S.D.N.Y. May 18, 1994).  The Private Owner's control over the management and disposition of the Joint Venture's assets therefore does not equate to ownership of the assets.  To the extent that the Joint Venture's operating agreement permits the sale or transfer of the Loans to a third party, such sale or transfer may indeed trigger the ROFRs, but that question is not before the Court.

Finally, Gotlib urges the Court to consider the various transactions culminating in the Private Owner's equity purchase as a whole greater than the sum of its parts.  The Court declines that invitation.  As the New York Court of Appeals has made clear, where an equity transfer is at issue, a court may not "disregard[] the form of the transaction . . . and treat the transaction instead as a sale of . . . assets."  *Matter of Fontana D'Oro Foods*, 65 N.Y.2d at 888.  Thus, "[g]iven the form of [the] transaction," whether the FDIC and the Private Owner "might really have intended to transfer control of [the Loans], rather than [equity], can have no bearing" on the Court's conclusion.  *Id.*

Accordingly, the Court concludes that the ROFRs have not been triggered, and the FDIC thus had no obligation to provide notice to Gotlib.  He has therefore failed to state a claim for breach of contract.

9

**CONCLUSION**

For the foregoing reasons, the motion to dismiss is granted, albeit without prejudice.  If

Gotlib has a good faith basis to amend his Complaint, he may do so no later than thirty (30) days

from the date of this Order.  The Clerk of Court is respectfully directed to terminate the motion

pending at ECF No. 13.

SO ORDERED.

Dated:        August 11, 2025
              New York, New York

_____
Ronnie Abrams
United States District Judge